1
2
3
4

**CALDARELLI HEJMANOWSKI & PAGE LLP**
William J. Caldarelli (SBN #149573)
12340 El Camino Real, Suite 430
San Diego, CA 92130
Telephone: (858) 720-8080
Facsimile: (858) 720-6680
wjc@chplawfirm.com

5
6
7
8

**FABIANO LAW FIRM, P.C.**
Michael D. Fabiano (SBN #167058)
12526 High Bluff Drive, Suite 300
San Diego, CA 92130
Telephone: (619) 742-9631
mdfabiano@fabianolawfirm.com

9
10
11
12

**OSBORNE LAW LLC**
John W. Osborne (Appointed *Pro Hac Vice*)
33 Habitat Lane
Cortland Manor, NY  10567
Telephone:  (914) 714-5936
josborne@osborneipl.com

13
14
15
16

**WATTS LAW OFFICES**
Ethan M. Watts (SBN #234441)
12340 El Camino Real, Suite 430
San Diego, CA  92130
Telephone:  (858) 509-0808
Facsimile:  (619) 878-5784
emw@ewattslaw.com

17

Attorneys for Plaintiff Ameranth, Inc.

18

[SEE SIGNATURE PAGE FOR DEFENDANTS' COUNSEL]

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

19
20
21
22
23
24
25

| | |
|---|---|
| AMERANTH, INC.<br><br>                              Plaintiff,<br><br>             v.<br><br>PIZZA HUT, INC., ET AL.<br><br>                              Defendants. | Civil Action No.: 3:11-cv-01810-JLS-NLS<br><br>**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1**<br><br>Complaint Filed:  August 15, 2011<br><br>**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER** |

26
27
28

Pursuant to the Court's November 15, 2012 Order Following Initial Case Management Conference [Doc. No. 306], Plaintiff and Defendants have met-and-conferred in an attempt to resolve their dispute regarding the scope of any required source code production.  The parties have been unable to reach an agreement and therefore submit their respective positions in an effort to help the Court resolve the dispute.

## PLAINTIFF'S POSITION

The Court's Order asked the parties to meet and confer regarding "the issue of whether the entire source code tree as it has been maintained under a revision control system needs to be produced."

During the meet-and-confer, it became clear that the central dispute is over defendants' obligations under Patent Local Rule 3.4(a), which requires each defendant "to produce or make available for inspection and copying… source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of each Accused Instrumentality identified by the patent claimant in its Patent L.R. 3.1.c chart."  Ameranth contends, consistent with this Court's decisions interpreting this rule, that each defendant must produce the required materials for "each Accused Instrumentality identified by the patent claimant".  Defendants, in contrast, take a very cramped view of this rule, a view not supported by this Court's decisions: Defendants argue that they need produce only materials related to specific "aspects or elements" that narrowly correspond to the claim elements a plaintiff contends have been infringed upon.  This misinterpretation would permit Defendants to produce only fractions of their source code sets, while tactically withholding the rest, leaving Ameranth to try and piece together a complete picture of each Accused Instrumentality while having only a few pieces of each defendant's "jigsaw puzzle".  This is very problematic as to the patent claims at issue here, which are 'system' claims in which the 'synchronization' between the components/modules of a system, and how the various pieces of the system work together, are very important in the infringement analysis.  If defendants selectively produce only portions of their source code, that will lead to unnecessary delays to the case timeline, and costly and repetitive source code reviews upon receipt of the withheld code.

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

1   The Court should accordingly reject Defendants' flawed, unsupported interpretation of
2   PLR 3.4(a), and hold that, consistent with the rule, each defendant is obligated to produce or
3   make available the source code and other materials sufficient to show the operation of the entire
4   Accused Instrumentality, and not just a few "aspects or elements" thereof.   This correct
5   application of PLR 3.4(a) means that each defendant, under the rule, will produce the entire
6   source code tree for each Accused Instrumentality, along with the corresponding materials to
7   facilitate meaningful source code review, including both a complete list of all software tools used
8   to create and maintain the source code, and copies of any such software tools that are not
9   publicly available for use or purchase.   Further, all source code and other materials produced
10  must, consistent with the Federal Rules of Civil Procedure, be produced in the format and in the
11  manner that the materials were created and maintained by the producing party.

12      Defendants wrongly argue that it would be too expensive to comply with these
13  requirements.   Defendants and their declarants are greatly overexaggerating what would be
14  required.   The question posed by the Court, and answered by Ameranth in the affirmative, is
15  whether the entire source code tree must be produced.   Defendants seek to divert the Court to a
16  different question of whether all of their hardware, in addition to software, must be produced,
17  and defendants' wildly inflated cost estimates are based on their own "question", not the Court's
18  question.   Also, even if a defendant asserts undue burden in complying with its discovery
19  obligations, *each defendant must make its own showing of burden based on its own facts*, and
20  cannot "piggyback" on whichever defendant alleges the largest burden.   Finally, if a defendant
21  asserts undue burden as a reason for producing less than all of its source code, the proper
22  procedure is:   (a) Defendant produces what they contend is not unduly burdensome,
23  accompanied by an accurate diagram or diagrams of their entire system (such as StubHub's
24  diagram, submitted by Defendants as Exhibit 1 to the Reynolds Declaration), and a list of what
25  they produced and what they withheld, along with a declaration explaining why they chose to
26  produce what they produced and withheld what they withheld, and (b) Plaintiff, if they believe
27  that is inadequate, meets and confers with that Defendant, and either resolves the dispute or a
28  joint motion is filed.

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

I.      **PATENT LOCAL RULE 3.4(a) REQUIRES PRODUCTION OF THE ENTIRE SOURCE CODE TREE FOR THE ACCUSED INSTRUMENTALITIES.**

PLR 3.4(a) requires each defendant to produce source code and other materials corresponding to its Accused Instrumentalities.  Thus, each defendant must produce its source code in a "source code tree" or other mutually-acceptable format in order to permit examination of all "aspects or elements" of the Accused Instrumentality.  Defendants cannot be permitted to produce only a few pieces of the jigsaw puzzle while hiding the rest, and their proposal to do so should be firmly rejected by the Court.

PLR 3.4(a) obligates each party opposing a claim of patent infringement "to produce or make available for inspection and copying . . . source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of each Accused Instrumentality identified by the patent claimant in its Patent L.R. 3.1.c chart."  Production of the entire source code tree in its native format, as created and maintained by the producing party, is consistent with this obligation and accomplishes several purposes that streamlines the litigation.  (A "source code tree" is not some mysterious, giant physical apparatus.  It is simply an organized, hierarchical collection of files and directories that holds the source code, i.e., a standard means for organizing and retaining all of the relevant files and directories, which can be stored on typical media for storing software such as a hard drive. See Effertz Decl., ¶ 4(b).)

First, production of the entire source code tree allows the receiving party to examine the operation of the software as a functioning, executable version of the Accused Instrumentality. (Effertz Decl. ¶ 4(b).)  The receiving party's ability to examine the operation of software as a whole is crucial to fully assess the infringing nature of any Accused Instrumentality.  By definition, a functioning, executable version of the Accused Instrumentality requires production of the entire source code tree.  Lydia Pallas Loren & Andy Johnson-Laird, Computer Software-Related Litigation: Discovery and the Overly-Protective Order, 2012 Fed. Cts. L. Rev. 6, at 15 (September 2012) [hereinafter "Loren Article"].  It also permits the reviewing party's analysts to more readily review the materials produced, in the format in which they were created and

maintained by the producing party, and to check the materials for completeness.  Id., see also Effertz Decl., ¶ 4(a).

A second and related point is that production of the entire source code tree avoids the difficulties and unnecessary expenses that are associated with partial source code production. (Effertz Decl. ¶ 4(d).) Much time can be unnecessarily consumed trying to determine whether the source code produced is actually complete or not.  (Effertz Decl. ¶ 4(d).)  Without production of the source code tree, "[t]he receiving party has to piece together a jigsaw puzzle uninformed by what the final picture must look like."  Loren Article at 11.  This unnecessary time/expense can be avoided if the producing party verifies completeness of its production; one way is by recreating an executable version of the software produced and providing the means for the reviewing consultant(s) to replicate the process.  (Effertz Decl. ¶ 4(d).)

Defendants also mistakenly claim that source code production and review in the initial phase of this case proceeded smoothly – but nothing could be further from the truth.  As set forth in the Declaration of Steven Effertz, a consultant who reviewed source code herein for Ameranth, difficulties included: Some defendants frustrated source code review by producing code in non-native formats (in violation of the F.R.Civ.P.); many produced source code files that were curiously and inexplicably missing the comments and notations that software developers routinely write into their code to annotate their work and assist in review, revision, debugging, and similar tasks; none of the source code produced included all relevant versions; none were produced with any means to check completeness; and many defendants made source code available for review only at very limited times.  (Effertz Decl., ¶¶ 3(a)-(e)).

Defendants wrongly interpret PLR.3.4(a) to only require production of source code and materials related to a few "aspects or elements" of an Accused Instrumentality.  Defendant's narrow and mistaken interpretation of PLR 3.4(a) is not supported by the language of the rule, nor is it supported by the case law from the Southern District of California interpreting the rule and case law from other districts with similar rules.

This dispute is centered on the phrase "sufficient to show the operation of any aspects or elements of any Accused Instrumentality identified by the patent claimant in its Patent L.R. 3.1.c

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

chart . . . ."  Defendants, contrary to the Southern District case law applying PLR 3.4(a), contend that the clause "identified by the patent claimant in its Patent L.R. 3.1.c chart" modifies the preceding clause consisting of "any aspects or elements of any Accused Instrumentality."  Thus, defendants argue, the only source code or documentation that they must produce under PLR 3.4(a) is only that corresponding to narrow "aspects and elements" of the Accused Instrumentalities specifically identified by Ameranth in its PLR 3.1(c) chart.

Defendants' mistaken interpretation, however, is not supported by case law interpreting PLR 3.4(a) and its equivalents in other districts.  These cases all interpret PLR 3.4(a) as requiring production of documents related to the entire Accused Instrumentality, and not just limited aspects and elements of the Accused Instrumentality.

In Weiland Sliding Doors and Windows, Inc. v. Panda Windows and Doors, LLC, 2011 WL 318046 (S.D. Cal. Jan. 31, 2011) Judge Sammartino described the requirements under Rule 3.4(a), "In practice, this requires the alleged infringer to turn over **any and all documents describing the operation or structures of the accused infringer's accused devices**."  Id. at *2.  (citing IXYS Corp v. Advanced Power Tech., Inc., 2004 WL 1368860 (N.D. Cal. 2004)) (emphasis added.)

In I-Flow Corp. v. Apex Medical Techs., 250 F.R.D. 508 (S.D. Cal. 2008), I-Flow moved to compel defendant to produce additional materials under PLR 3.4(a).  I-Flow claimed that the documents defendant produced were not sufficient because the documents "do not detail the specifics of the accused device, provide no detail of the internal structure, provide no technical specifications describing the components or materials used to manufacture the accused device, and do not identify the dimensions of the structural components."  Id. at 510.

In granting the motion, Judge Stormes emphasized that a prior ruling on the scope of PLR 3.4(a) held that "that Rule 3.4(a) requires the alleged infringer to produce '**any and all documents describing the operation or structures of [the] accused devices** . . . .'" Id. at 511.  (quoting NessCap Co., Ltd. v. Maxwell Techs., Inc., 2008 WL 152147 (S.D. Cal. 2008)) (emphasis added.)

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

The Northern District of California, with a rule is identical to PLR 3.4(a), has held similarly.  In <u>IXYS Corp. v. Advanced Power Tech, Inc.</u>, 2004 WL 1368860 (N.D. Cal. June 16, 2004), the court granted IXYS's motion to preclude certain untimely produced documents.  The court stated that its local rule, Patent Local Rule 3-4(a), "requires APT turn over to IXYS **<u>any and all documents describing the operation or structures of APT's accused devices</u>**, but does not mention other devices that have not been accused." <u>Id.</u> at *3 (emphasis added).  Thus, "[b]y consequence, it is documents describing those **devices** that APT was obligated to produce…." <u>Id.</u> (emphasis added).  Accordingly, the court precluded APT from introducing into evidence untimely produced documents that "reference or describe **any of the products** IXYS has already accused of infringing its patents." <u>Id.</u> (emphasis added.)

In <u>In re Google Litigation</u>, 2011 WL 286173 (N.D. Cal. Jan. 27, 2011), the court granted plaintiff's motion to compel production of the entirety of Google's source code and other documents.  Like Defendants here, Google argued that production of source code and other documents unrelated to the accused aspects of its systems was unwarranted.  <u>Id.</u> at *4.  Google also argued that "[plaintiff's] demands for the entire source code base for its search engine calls for many millions of lines of code written by hundreds of engineers over the last 14 years and includes competitively sensitive trade secrets to areas not relevant to this case." <u>Id.</u>  Rejecting these arguments, the court granted plaintiff's motion and focused its analysis on the relevance of the requested materials to an analysis under <u>Georgia-Pacific Corp. v. United States Plywood Corp.</u>, 318 F. Supp. 1116 (S.D.N.Y. 1970):

> But even if the court's ultimate claim construction establishes that non-link analyses do not practice any limitation of any asserted claim, the operation of such analyses may nevertheless be material for purposes of comparing the relative value of infringing and non-infringing analyses within Google's search functionality under a *Georgia–Pacific* reasonable royalty analysis.

<u>In re Google Litigation</u>, at *5. <u>See also</u> <u>Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n</u>, 2005 WL 1787421 at *2 (N.D. Cal. July 27, 2005) (holding "[a] more reasonable reading of the rule is that Visa must provide enough documentation to sufficiently show the operation of any aspects or elements of an Accused Instrumentality.")

Additionally, the Northern District of Georgia, which has a rule similar to Patent L.R. 3.4(a), described its rule as: "The requirement that the alleged infringing party provide **whatever information is 'sufficient to show the operation' of the accused device or method carries with it a good faith obligation to provide the types of information that will enable the party asserting infringement to reasonably determine the operation of the accused device or method without undue burden or expense**."   McKesson Info. Solutions LLC v. Epic Sys. Corp., 495 F.Supp.2d 1329, 1334 (N.D. Ga. 2007).

Defendants' reliance on Nazomi Comm's, Inc. v. Samsung Telecomms., Inc., 2012 WL 1980807 (N.D. Cal. June 1, 2012) is misguided because the Nazomi case did not construe the scope of production required under the Northern District of California's Patent L.R. 3-4(a). Further, in that case Samsung objected to producing source code *for products not specifically identified in Nazomi's infringement contentions*, not for the products that were identified in the infringement contentions.  Here, the dispute is different; here the question is whether Defendants must produce the source code tree for accused products identified in Ameranth's infringement contentions.

Defendants' reliance on the Kelora case is also erroneous.  The court's order therein held only that "The court finds that a departure from the district's model protective order is unwarranted because the benefits of making it easier for Kelora to evaluate the accused Infringers' source code do not outweigh the burden associated with the proposal." Kelora, 2011 WL 6000759 at *3.  But the court did not say precisely what scope of source code had to be produced, it only declined to incorporate Kelora's proposed language in a protective order.  Most importantly, *Ameranth's proposal in this case (production of each defendant's source code tree, as described in the Loren Article) is far different in scope from what Kelora sought in its case.* Additionally, the Kelora case is inapplicable because it is construing a model protective order, and not PLR 3.4(a) or the Northern District's analogous rule.

The Geotag v. Aromatique order cited by Defendants (No. 2:10-cv-00570-MHS, ECF No. 582) is also inapplicable because the issue therein was whether defendant was to produce code in compilable form.  That court held that FRCP 34(b)(2)(E)(ii)-(iii) only required native

---

7

format production, but the Court did not comment on or endorse defendants' complaint about producing all of its source code. (It's ironic that Defendants here cite <u>Geotag</u>, given that many of the original defendants here flagrantly violated the FRCivP, and deliberately made source code review difficult, by giving Ameranth only PDF or TIFF "printouts" of source code in a non-native, non-searchable format, as discussed above, see Effertz Decl., ¶ 3.)

Defendants' mistaken interpretation of PLR 3.4(a) would wrongly allow defendants to produce only a few "pieces" of their own choosing out of the entire "jigsaw puzzle" that is Defendants' source code and related materials, while tactically withholding the rest – making it much more difficult to fully examine the operation of the accused instrumentalities without undue burden or expense.  That is particularly so in this case, in which the patent claims at issue are 'system' claims in which the 'synchronization' between the components/modules of a complete system, and how the various pieces of the system work together, are very important in the infringement analysis.[1] Selective production of only portions of a defendant's source code will lead to unnecessary delays to the case timeline, and costly and repetitive source code reviews upon receipt of the initially-withheld code.

The Court should thus reject Defendants' approach, and not adopt an interpretation of this rule that (1) has no basis in prior rulings of this Court and (2) appears to have the intent, and would definitely have the result, of frustrating Plaintiff's ability to effectively, and cost-effectively, review all "aspects or elements" of each Accused Instrumentality.

## II.      PATENT L.R. 3.4(a) REQUIRES PRODUCTION OF OTHER MATERIALS NECESSARY FOR MEANINGFUL SOURCE CODE REVIEW.

In addition to production of the source code tree, production must include all materials necessary for meaningful and effective source code review, including the materials that would be typically included in a software escrow account, containing all products, in human readable and electronically searchable form when possible, needed to design, code, assemble, compile, link,

---

[1] As two of many examples in the claims-at-issue, see, U.S. Patent 6,384,850 claim 12 ("applications and data are synchronized between the central data base, at least one wireless handheld computing device, at least one Web server and at least one Web page"); U.S. Patent 8,146,077 claim 13 ("…substantially the same information comprising the hospitality application information is capable of being displayed on the wireless handheld computing device, at least one web page and other display screens of the synchronized system").

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

load, install, integrate, test, distribute, and maintain the Accused Instrumentalities, including, but not limited to: software documentation, build scripts, header files, make files, source code, assemblers, compilers, linkers, loaders, libraries, databases, installers, and utilities.  That should include both (1) A complete list of all software tools used to create and maintain the source code, and (2) Copies of any such software tools that are not publicly available for use or purchase. (Effertz Decl. ¶ 4(c); see also Loren Article, pp. 24-25.)

A fully-enabled "test environment", such as that in which a defendant would test/run/revise/debug their own system, is also an acceptable means of production.  The provisions of subparagraphs a, b, and e-h on pages 23-25 in the Loren Article are acceptable means for directing the scope of source code production.  (See also Effertz Decl. ¶¶ 3, 4.)

## III.   ALL MATERIALS MUST BE PRODUCED IN THE FORMAT AND MANNER IN WHICH THE MATERIALS WERE CREATED AND MAINTAINED BY THE PRODUCING PARTY.

All source code, software, and related materials must be produced in the format and in the manner that the materials were created and maintained by the producing party, consistent with Fed.R.Civ.P. 34(b)(2)(E)(ii).  Production in non-native formats is unacceptable unless an alternate format is mutually agreed upon in advance of production.  "While purposefully engaging in conduct merely to increase the cost and inconvenience of discovery is expressly prohibited by the Federal Rules of Civil Procedure, computer source code productions in any form other than the original source code tree does just that."  Loren Article at 19.  Removing or altering file names, comments, header files, makefiles, source code files, object code files, etc., in any way, prior to production, is not permissible under the Federal Rules.  (As noted above, the Geotag v. Aromatique case also holds that this is what F.R.Civ.P. 34(b)(2)(E)(ii)-(iii) require for source code production.)

All relevant versions of source code must be produced along with the capability for analysts to readily see all revisions and revision history. The recommendation in the Loren Article, pp. 23-25 (see, in particular, subparagraph a) would accomplish this and is therefore acceptable.  The producing party must also verify the completeness of its source code production

by a means that is acceptable to the receiving party. The recommendation on pp. 24-25, at (e), of the Loren Article, is acceptable.  (See Effertz Decl., ¶¶  4(c) and (d).)

## IV.    SECURITY CONSIDERATIONS.

Any software/source code produced to the custody of Ameranth's counsel or to any third-party custodian should be encrypted using TrueCrypt or another mutually-acceptable form of encryption, and kept in a locked container, cabinet, or room whenever not being reviewed.  See Loren Article at 21.  Provisions already in the protective order regarding persons who review the source code and paper copies of source code are sufficient.

## CONCLUSION

For the reasons set forth herein, the Court should resolve this Joint Discovery Motion by entering an order holding that PLR 3.4(a) requires each defendant to produce its source code (and other materials) sufficient to show the operation of "any aspects or elements" of an Accused Instrumentality, and not merely snippets of source code that a defendant might argue are narrowly relevant to a few "aspects or elements" of their Accused Instrumentality; that therefore PLR 3.4(a) requires production of each entire source code tree and a complete list of all software tools used to create and maintain the source code, and copies of any such software tools that are not publicly available for use or purchase; and that all source code and other materials produced must, consistent with the Federal Rules of Civil Procedure, be produced in the format and manner that the materials were created and maintained by the producing party unless a different format is mutually agreed upon.  In the event that any Defendant asserts undue burden as a reason for producing less than all of its source code tree, then (a) Defendant must timely produce what they contend is not unduly burdensome, accompanied by an accurate diagram or set of diagrams of their entire system (such as StubHub's diagram, submitted by Defendants as Exhibit 1 to the Reynolds Declaration), and a list of what they produced and what they withheld, along with a declaration explaining why they chose to produce what they produced and withheld what they withheld, and (b) Plaintiff, if they believe that is inadequate, then meets and confers with that Defendant and either resolves the dispute or a joint motion is filed.

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

**DEFENDANTS' POSITION**

I.     **Amerranth Has Not Met Its Burden to Show Why Source Code Beyond What Is Called for by Patent L.R. 3.4.a Is Relevant and Necessary**

For many of the Defendants, their source code is their most valuable and protected trade secret.  Given the highly confidential and valuable nature of Defendants' source code, it is Amerranth's burden to show that the code is relevant and necessary to the prosecution of its case. *See Hartley Pen Co. v. United States Dist. Ct. for the So. Dist. of Cal.*, 287 F.2d 324, 330-31 (9th Cir. 1961) ("[T]he burden rests upon the party seeking disclosure to establish that the trade secret sought is relevant and necessary to the prosecution or defense of the case before a court is justified in ordering disclosure.").

In patent cases in this District, the determination of what source code is "relevant and necessary" to the prosecution of the plaintiff's case is governed in the first instance by the Patent Local Rules, which require defendants to produce or make available for inspection and copying "[s]ource code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation **of any aspects or elements of any Accused Instrumentality identified by the patent claimant in its Patent L.R. 3.1.c chart**."  Patent L.R. 3.4.a. (emphasis added).  This Court has interpreted those words to require "'the responding party to provide the raw data (source code, schematics, formulas, etc.) sufficient to show the operation of the **accused aspects** of the products . . . .'"  *I-Flow Corp. v. Apex Med. Techs., Inc.*, 250 F.R.D. 508, 511 (S.D. Cal. 2008) (Stormes, J.) (*quoting NessCap Co., Ltd. v. Maxwell Technologies, Inc.*, No. 3:07-cv-00704-JLS-BLM, 2008 U.S. Dist. LEXIS 3357, 2008 WL 152147, at *3 (S.D. Cal. 2008) (Majors, J.)) (emphasis added).

Thus, Patent L.R. 3.4.a deems relevant and necessary only those portions of source code that show the operation of the system aspects identified in Amerranth's Patent L.R. 3.1.c charts.  In seeking a blanket provision requiring Defendants to produce all of their source code[2] (and

---

[2] The Court's November 15, 2012 Order Following Initial Case Management Conference [Doc. No. 306] used the phrase "the entire source code tree."  Based on the usage of that phrase in the *Federal Courts Law Review* article by Loren & Johnson-Laird that is referenced in the Court's October 12, 2012 Order [Doc. No. 284], Defendants understand the phrase to refer to all of the source code that would be required to compile and build fully-functioning versions of the accused websites and mobile applications.

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

1  other materials[3]) such that Ameranth can compile and build fully-functioning versions of the

2  accused websites and mobile applications, Ameranth seeks source code far beyond what is

3  deemed relevant and necessary by the Patent Local Rules.  And yet, Ameranth has not met—and

4  cannot meet—its burden to show that source code beyond what is called for by Patent L.R. 3.4.a

5  is relevant and necessary to the prosecution of Ameranth's case.

6        As the attached declaration from Defendants' expert Ray Larson explains, there is

7  nothing to be gained (other than significantly increased consulting fees) from having an expert in

8  a patent case analyze source code that has no relevance to the accused aspects or functionality.

9  Larson Decl. at ¶ 25.  The *Federal Courts Law Review* article by Loren & Johnson-Laird

10 confirms Dr. Larson's opinion by conceding that a "significant portion" of the source code for an

11 accused system will have "no relevance" and will be "useless" in a patent case.  *Id.*  (quoting

12 Loren & Johnson-Laird at II.A.2).  And as Dr. Larson's analysis of the patents-in-suit confirms,

13 most of the source code for the accused systems in this case is unlikely to have any relevance to

14 the claims of the patents-in-suit, as is typical for patent cases involving complex e-commerce

15 systems.  *Id.* at ¶¶ 25-26.  Furthermore, as Dr. Larson explains, production and review of "the

16 'entire source code tree' would unnecessarily add an additional step in the process, with

17 significant potential for increased expert fees and delay."  *Id.* at ¶ 28.

18       Ameranth  urges a procedure that is contrary to that adopted by courts having Patent

19 Local Rules substantially similar to those of this district.  For example, the Northern District of

20 California recently addressed similar demands, namely a "complete copy of the source code

21 compiled onto each accused device," which the plaintiff alleged would enable it "to fully

22 understand the operation of [the accused] products and to determine whether relevant source

23 code is in the exclusive possession of one or more third parties."  *Nazomi Commc'ns, Inc. v.*

24 *Samsung Telecommc'ns, Inc.*, No. C-10-05545 RMW, 2012 U.S. Dist. LEXIS 76468, at *11

25 (N.D. Cal. Jun. 1, 2012).  The court denied the plaintiff's motion to compel, finding that the

---

26
27      [3] As Defendants understand Ameranth's position, they are seeking to have Defendants produce not just the "entire source code tree" for each of the accused websites and mobile applications, but also any other materials that would be necessary to compile and build fully-functioning versions of the accused websites and mobile applications. Depending on the accused system, such "other materials" could potentially include, among other things, build scripts, make files, databases, utilities, hardware, and third party software and code.
28

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

plaintiff "has not demonstrated the necessity of 'fully understand[ing] the operation of [the accused] products' as opposed to understanding **the portion that is covered by its infringement claims**." *Id.* (emphasis added).  The court further stated that "[g]iven the sensitivity of source code, the court is not inclined to order broad disclosure absent a more specific showing." *Id.*  Notably, the rejected demands in *Nazomi* concerned only the source code compiled onto a single mobile phone, rather than all of the source code for a complex e-commerce system such as those involved in this action.  *See id.*; Larson Decl. at ¶¶ 14-18 (describing complexities of e-commerce systems).

## II.   Requiring Defendants to Produce Fully-Functioning Versions of the Accused Systems Would Be Unduly Burdensome

Even incorrectly assuming that Ameranth could demonstrate a legitimate need for obtaining all of Defendants' source code (and other materials) such that Ameranth can compile and build fully-functioning versions of the accused websites and mobile applications, that need would be significantly outweighed by the burden and expense associated with such a production. Because relevant information can be efficiently provided in the form of source code files in native format with original file names, Defendants' burden is a paramount consideration in the evaluation of this issue, as depicted in another recent patent case in the Northern District of California. *See Kelora Sys., LLC v. Target Corp.*, No. C 11-01548 CW (LB), 2011 U.S. Dist. LEXIS 96724, at *8-10 (N.D. Cal. Aug. 29, 2011).

Much like Ameranth, the plaintiff in *Kelora* sought to include a provision in the protective order requiring production of "a complete, functional build environment for the source code of its accused instrumentalities, including build instructions, scripts and/or other information used in the ordinary course of business to develop, build, test and debug the source code." *Id.* at *8.  The plaintiff argued that a complete, functional build environment was needed because "compiling the source code into object code and running the resulting software on a computer may assist [the plaintiff's] counsel and experts in evaluating the Accused Instrumentalities." *Id.*  The defendants argued that the plaintiff's proposal "would effectively require each Accused Infringer to provide source code for the entire accused website even

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

though the vast majority of the source code for each accused website is completely unrelated to the accused functionality."  *Id*. at *9.  The court sided with the defendants, finding that "a departure from the district's model protective order is unwarranted because the benefits of making it easier for [the plaintiff] to evaluate the Accused Infringers' source code **do not outweigh the burdens associated with the proposal**."  *Id*. (emphasis added).

The attached declaration from Defendants' expert Ray Larson explains generally the potential burdens associated with requiring Defendants to produce all of their source code (and other materials) such that Ameranth can compile and build fully-functioning versions of the accused websites and mobile applications.  As Dr. Larson explains, because the accused e-commerce systems are not stand-alone software products that can be installed and executed on a single laptop, producing a "full build environment" for some or all of the accused systems is potentially a monumental task.  Larson Decl. at ¶ 19.  The challenges range from simply collecting all of the source code for an accused system (which could take substantial man-hours to complete), to obtaining additional licenses for any third-party software that is utilized to provide certain functionality in an accused system (which could cost tens of thousands of dollars), to acquiring access to any third party systems that may supply functionality, content, or data for an accused system (e.g., a third party airline ticket inventory system, a third party payment system, or a third party shipping system), to actually setting up the full build environment at the source code review location (which could require one or more employees of the producing party to travel to the source code review location and spend several days or weeks setting up the system).  *Id*. at ¶¶ 20-24.

The attached declarations from representative Defendants' technical personnel confirm that the potential burdens discussed by Dr. Larson would come to bear if Defendants are required to produce a full build environment.  *See* Korabelnikov Decl. (on behalf of Orbitz) at ¶¶ 4-9; Reynolds Decl. (on behalf of StubHub) at ¶¶ 5-7; Russo Decl. (on behalf of MICROS) at ¶¶ 13-25.

In the case of Orbitz, the burdens include, but are not limited to, the following:

- ███████████████████████████████████
███████████████████████████████████
████████
██ ███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
██████████████████████
██ ███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
██████████████████████████
██ ███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
██████████████

In the case of StubHub, the burdens include, but are not limited to, the following:

- ███████████████████████████████████
███████████████████████████████████
███████████████████████████████
██ ███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

- ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████

In the case of MICROS, a competitor of Ameranth's for which <u>eight</u> different systems are accused of infringement, the burdens include, but are not limited to, the following:

- ████████████████████████████████████
████████████████████████████████████
██████████████████████
█ ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████

As the declarations establish, producing a full build environment for each accused system would be extremely burdensome for Defendants, in some cases to the point of being practically impossible. These companies have never been required to make such a production in a patent case. *See* Korabelnikov Decl. at ¶ 10; Reynolds Decl. at ¶ 5.g.; Russo Decl. Decl. at ¶ 26.

Many of the issues discussed by Dr. Larson and the Orbitz, StubHub, and MICROS declarants were recently considered by a court in the Eastern District of Texas. The plaintiff in that patent case sought to include a provision in the protective order requiring the defendants to produce their source code "in compilable form." *See Geotag, Inc. v. Aromatique, Inc.*, No. 2:10-cv-00570-MHS, ECF No. 582, slip. op. at 7-8 (E.D. Tex. Jan. 8, 2013). The defendants contended that such a production would be unduly burdensome because it would require them to produce all of the code related to their websites. *Id.* at 8. The defendants further argued that the

JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS

plaintiff would be unable to observe proper execution of the code because the accused functionality "work[s] in conjunction with third-party websites." *Id*. at 7.  The court sided with the defendants, finding that "disclosing source code in native format is sufficient in this case" and that there was "no compelling reason" to order production of the source code "in compilable form." *Id*. at 8.

### III.   Defendants Should Only Be Required to Produce the Source Code Called for by Patent L.R. 3.4.a

Because any benefits to Ameranth from obtaining a full build environment for the accused systems are far outweighed by the burdens and security risks associated with such a production, a departure from the Patent Local Rules for source code production in this case is unwarranted.  Defendants should only be required to produce the amount of source code that is called for by Patent L.R. 3.4.a, i.e., only the source code that is "sufficient to show the operation of" those system aspects identified in Plaintiff's Patent L.R. 3.1.c charts, as is normal practice in patent infringement actions.  A source code production of that form would be much less burdensome and much more feasible for Defendants.  *See* Korabelnikov Decl. at ¶ 10; Reynolds Decl. at ¶ 8; Russo Decl. at ¶ 26.

The *Federal Courts Law Review* article by Loren & Johnson-Laird takes the position that a plaintiff should be entitled to review the "entire source code tree" because "only hindsight can determine which were those parts of the source code relevant to the asserted claims of the patent." Loren & Johnson-Laird are wrong.  *See* Larson Decl. at ¶ 27 (quoting Loren & Johnson-Laird at II.A.2).  As Dr. Larson explains in his declaration, it is wasteful and unnecessary for a patent litigation plaintiff to have its expert or consultant review the "entire source code tree" to independently determine which parts of the source code are relevant to the asserted claims of the patent.  *Id*. at ¶¶ 27-28.  This is especially true in a case with as many defendants as this one, particularly because it might take the plaintiff's experts several months per defendant to review the "entire source code tree" for each defendant, thereby causing significant delay in the case. *Id*. at ¶ 28.

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

As demonstrated by Dr. Larson, it would be much more efficient in this case to have the defendants' technical employees, who are very familiar with their own source code, identify and provide the portions of source code that specifically relate to the aspects or functionality identified by Ameranth in its infringement contentions.  *Id*. at ¶¶ 11 and 27.  If Ameranth's expert or consultant has questions after reviewing the produced source code, those questions can be addressed and answered through questioning of the defendants' technical employees via interrogatories, requests for admission, or deposition questions that an expert or consultant can assist counsel in formulating.  *Id*.

Loren & Johnson-Laird's position (that a plaintiff should be permitted to independently determine which parts of the source code are relevant to the asserted claims of the patent) conflicts with the manner in which document discovery typically proceeds in American civil cases.  Counsel served with a document request are entrusted, as officers of the court, to work with their client to identify and produce documents responsive to the request.  Counsel for the requesting party are not permitted to conduct their own independent review of a responding party's entire universe of potentially responsive documents.  Ameranth has provided no compelling reason to deviate from that traditional discovery model for source code production in this case.  Defendants' counsel must be entrusted, as officers of the court, to work with their clients to identify and produce the portions of source code that specifically relate to the aspects or functionality identified by Ameranth in its infringement contentions.

Certain Defendants in the earlier filed cases already produced source code to Ameranth under Patent L.R. 3.4.a in response to Ameranth's infringement contentions.  These productions largely followed what defendants advocate as an appropriate form of production.  Ameranth has filed no motions to compel related to the form of those productions, despite having had several months to do so.  Ameranth should not now be permitted to use an amendment to the protective order or a blanket source code production order as an end-run around presumptively reasonable Patent Local Rules and model protective orders and the normal protocol for discovery disputes. This is particularly true given the unnecessary and substantial burden that the demanded source code production would entail.

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**

**IV.    Defendants' Rebuttal to Plaintiff's Portion**

Rather than substantively address the Court's question of why Ameranth needs the entire source code tree from each defendant, Ameranth complains about past productions and provides conclusory arguments regarding (1) "examin[ing] the operation of the software as a whole" and (2) "avoid[ing] the difficulties and unnecessary expenses . . . associated with partial source code production."   These alleged "needs" relate, at best, to Ameranth's convenience and are outweighed by the immense burdens demonstrated by Defendants, and Ameranth's complaints about past productions are addressed by Defendants' proposal.   Moreover, Ameranth now demands "all relevant versions" and "all revisions and revision history," without any attempt to identify what aspects or versions are even accused or potentially relevant.   Indeed, continually changing advertisements and products in e-commerce systems demonstrate the unreasonableness of Ameranth's demands.

Unable to provide the Court with a patent case ordering the production of an entire source code tree and/or a full build or test environment, Ameranth repeatedly (1) provides misleading quotes that purport to support its position and (2) ignores holdings in these same cases that reject or undercut its position.   For example, Ameranth quotes this Court's decision in *I-Flow* but omits the next sentence of the decision that adopts Defendants' position that PLR 3.4(a) requires production of documents sufficient to show the operation of the "accused aspects."   250 F.R.D. at 511 (quoting *NessCap*, 2008 WL 152147, at *3).   Similarly, rather than order the production of information sufficient to show the operation of "any aspects," as Ameranth implies, the court in *Cryptography* ordered the production of "information . . . , falling under Patent L.R. 3-4, relating to **any aspect or element of the claims identified by [the plaintiff] in its Patent Local Rule 3-1(c) disclosures** . . . ."   2005 WL 1787421, at *4 (emphasis added).

Ameranth also incorrectly states that the court in *Google* "granted plaintiff's motion to compel production of the entirety of Google's source code."   In that case, even after the plaintiff "limited its request to production of all source code relating to the Google accused analyses," the court recognized the "potential harm from the disclosure of a firm's proprietary source code, even with the safeguards offered by a protective order," and ordered production of an even

19

further narrowed portion of Google's source code, stating that "no source code [other than that portion] need be produced at this time."   2011 WL 286173, at *4-5.   The *Google* opinion supports Defendants' position, not Ameranth's.

The additional cases cited by Ameranth also fail to support its position.   The only question the court in *Weiland* was asked to decide regarding the scope of this district's Patent L.R.  3.4(a) was whether the rule applies to the disclosure of prior art references.   2011 WL 318046, at *2.   Similarly, the only question the court in *IXYS* was asked to decide regarding the scope of the Northern District of California's Patent L.R. 3-4(a) was whether that rule applies to the disclosure of devices that have not been accused.   2004 WL 1368860, at *3.   The language quoted by Ameranth from those cases does not address the question—nor was it intended to—of whether this district's Patent L.R. 3.4(a) (or the Northern District's analogue) requires the production of technical documents relating to "any aspects" of the Accused Instrumentality or only the "accused aspects."   The *McKesson* decision cited by Ameranth is even less supportive of Ameranth's position because (1) the local patent rule at issue in that case (the Northern District of Georgia's LPR 4.2) does not refer to "aspects or elements" of the Accused Instrumentality, unlike this district's Patent L.R. 4.3(a) (and the Northern District's analogue), and (2) the court explicitly stated that "the rule [regarding the accused infringer's production of technical documents] provides a non-exhaustive list of materials that **might** be produced and places the burden on the **producing party** to determine what is sufficient under the **particular circumstances of its case**."   495 F. Supp. 2d at 1333 (emphasis added).

Dated: January 18, 2013

Respectfully submitted,
CALDARELLI HEJMANOWSKI & PAGE LLP

By:*/s/ William J. Caldarelli*
      William J. Caldarelli

FABIANO LAW FIRM, P.C.
Michael D. Fabiano

OSBORNE LAW LLC
John W. Osborne

**20**

WATTS LAW OFFICES
Ethan M. Watts

**Attorneys for Plaintiff Ameranth, Inc.**

Dated: January 18, 2013

FULBRIGHT & JAWORSKI L.L.P.

By:*/s/ Richard Zembek*
    Richard Zembek
    1301 McKinney, #5100
    Houston, TX  77010
    Tel: (713) 651-5283
    rzembek@fulbright.com

**Attorneys for Defendants Papa John's USA, Inc.,
Wanderspot, Expedia, Hotels.com, Hotel Tonight,
Hotwire, Kayak, Orbitz, Travelocity, Fandango,
StubHub, Ticketmaster, Live Nation, and Micros**

**and Liaison Attorneys for Defendants:**

**Pizza Hut, Domino's, QuikOrder, GrubHub, O-
Web, Seamless, Ordr.in, Mobo, OpenTable, Best
Western, Hilton, Hyatt, Marriott, Starwood,
Agilysys, ATX, EMN8, and Usablenet**

**JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE NO. 1   Case No. 11-cv-01810-JLS-NLS**