# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERANTH, INC., <br><br> Plaintiff, <br> v. <br> PIZZA HUT, INC.; ET AL., <br><br> Defendants. <br><br> AND RELATED COUNTERCLAIMS. | Consolidated with: <br> 12cv729 JLS(NLS)  12cv1640 JLS(NLS) <br> 12cv731 JLS(NLS)  12cv1642 JLS(NLS) <br> 12cv732 JLS(NLS)  12cv1643 JLS(NLS) <br> 12cv733 JLS(NLS)  12cv1644 JLS(NLS) <br> 12cv737 JLS(NLS)  12cv1646 JLS(NLS) <br> 12cv739 JLS(NLS)  12cv1648 JLS(NLS) <br> 12cv742 JLS(NLS)  12cv1649 JLS(NLS) <br> 12cv858 JLS(NLS)  12cv1650 JLS(NLS) <br> 12cv1627 JLS(NLS)  12cv1651 JLS(NLS) <br> 12cv1629 JLS(NLS)  12cv1652 JLS(NLS) <br> 12cv1630 JLS(NLS)  12cv1653 JLS(NLS) <br> 12cv1631 JLS(NLS)  12cv1654 JLS(NLS) <br> 12cv1633 JLS(NLS)  12cv1655 JLS(NLS) <br> 12cv1634 JLS(NLS)  12cv1656 JLS(NLS) <br> 12cv1636 JLS(NLS)  12cv1659 JLS(NLS) <br><br> **ORDER DETERMINING JOINT MOTION FOR DISCOVERY DISPUTE NO. 2 AND GRANTING DEFENDANTS' REQUEST THAT AMERANTH AMEND ITS INFRINGEMENT CONTENTIONS OR DROP THOSE CONTENTIONS** <br><br> **[Doc. No. 402]** |

Plaintiff Ameranth, Inc. and defendants OpenTable, Inc., Wanderspot, LLC and Best Western International, Inc.[1] filed a joint motion for determination of discovery dispute regarding the sufficiency of Ameranth's infringement contentions (ICs). Ameranth asserts that the ICs meet the requirements of Patent Local Rule (PLR) 3.1, as the rule essentially requires identification rather than significant explanation or detail in the ICs. Defendants disagree. They argue that this court should follow the case law coming out of the Northern District of California, which requires more detailed and specific ICs, and ask that Ameranth amend the ICs before doing further discovery, or drop the specified contentions. After reviewing all papers filed in support of this joint motion, the court **GRANTS** Defendants' request that Ameranth amend certain aspects of its ICs or drop those contentions.

## I. RELEVANT BACKGROUND

After the original case was filed in August 2011, and before it was consolidated for pretrial purposes with over 30 other cases, Ameranth served amended preliminary infringement contentions (PICs) on the original defendants on June 18, 2012.[2] Those PICs were implicated in motions for partial summary judgment filed by defendants Papa John's and GrubHub. The defendants moved for partial summary judgment of non-infringement of the '850 and '325 patents based on Ameranth's alleged failure to provide sufficient detail in its PICs. Judge Sammartino denied both motions on March 26, 2013. *See Papa John's,* 12cv729, Dkt. No. 55; *GrubHub*, 12cv739, Dkt. No. 57. In denying the motions, Judge Sammartino noted that while PICs must be sufficiently specific so as "to provide defendants with notice of infringement beyond that which is provided by the mere language of the patents themselves," they "need not be so detailed as to transform the PICs into a forum for litigation of the substantive issues." *See, e.g.,* 12cv739, Dkt.

---

[1] Best Western did not participate in the filing of the joint motion but later filed a notice of joinder.

[2] The PLR originally called the first set of infringement contentions the "Preliminary Infringement Contentions." The PLR were amended on December 4, 2012, and the formerly-called "preliminary infringement contentions" are now referred to as "Infringement Contentions."

No. 57, pp.8, 10 (internal citation and quotations omitted).

On October 4, 2012, 30 cases were consolidated with the original case, 11cv1810. This court held an initial Case Management Conference (CMC) for all consolidated cases on November 14, 2012, and a second CMC on February 20, 2013. Following the second CMC, the court issued an order setting forth a schedule for Ameranth to serve infringement contentions and accompanying documents on a staggered schedule on the various defendant groups. Dkt. No. 345, p.3. According to the PLR, a party claiming patent infringement must serve separately on all opposing parties a "Disclosure of Asserted Claims and Infringement Contentions." PLR 3.1. The ICs served in the consolidated action on defendants OpenTable, Wanderspot and Best Western are the subject of this dispute.[3]

In the ICs, Ameranth asserts direct infringement claims against Defendants based on their make and use of online and mobile reservations systems. Alternatively, if the court determines that the direct infringers are actually the consumers who book reservations or the restaurants that accept such reservations on the systems, then Ameranth asserts that Defendants are indirect infringers because they provide and operate the system components described in the ICs to other persons and promote their use in a manner designed to infringe the patents.

## II. <u>LEGAL STANDARD</u>

The issues in this discovery dispute concern the extent of specificity required by this district's PLR to adequately assert infringement contentions. While this court is aware that some judges here have addressed this issue either directly (*see, e.g.,* Case No. 10cv2618-H (KSC), Dkt. No. 175, Order Denying Defendants' Request to Strike Plaintiff's Preliminary Infringement Contentions), or peripherally (*see, e.g.,* Case No. 12cv739-JLS (NLS), Dkt. No. 57, Order Denying Motion for Partial Summary Judgment), it is not aware of any Southern District case that evaluates the persuasive

---

[3] Ameranth, along with defendants Starwood, Hyatt, Marriott and Hilton, filed joint motions for extension of time to meet and confer and file any joint discovery motions regarding Ameranth's ICs concerning those Defendants' accused systems.

authority of the case law from the Northern District of California concerning the required specificity for ICs.

The purpose of local patent rules is to streamline discovery and "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute." *Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005) (citing *Network Caching Tech. v. Novell, Inc.*, 2002 U.S. Dist. LEXIS 26098, *12, 2002 WL 32126128, *5 (N.D. Cal. Aug. 13, 2002)). Such rules streamline discovery by " replac[ing] the series of interrogatories that accused infringers would likely have propounded in [their] absence." *Solannex, Inc. v. MiaSolé, Inc.*, 2013 U.S. Dist. LEXIS 56672, *5-*6, 2013 WL 1701062, *2 (N.D. Cal. April 18, 2013). Patent local rules are "designed specifically to require parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to claim construction." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (internal quotations and citation omitted).

Infringement contentions have a specifically defined purpose:

> Infringement contentions serve as substitutes for interrogatories, but they also act as forms of pleading that disclose the parties' theories of their case and thereby shape discovery and the issues to be determined at trial. Parties accordingly need not "prove up" their theories by providing evidence beyond the material they have at the time they make their contentions. On the other hand, parties should proffer all of the theories of infringement that they in good faith believe they can assert. As with other forms of pleadings, the infringement contentions should become more specific and fine-tuned as the case progresses, not more sprawling and encompassing. Nothing in this process, however, suggests that infringement contentions are intended to be a running dialogue between the parties, with additions of theories as one side asserts that a particular argument is unsustainable.

*Apple Inc. v. Samsung Elecs. Co.*, 2013 U.S. Dist. LEXIS 91450, *35-*36, 2013 WL 3246094, *3 (N.D. Cal. June 26, 2013).

## III. <u>DISCUSSION</u>

Ameranth argues that the court should deny Defendants' arguments for these reasons: (1) other Defendants already challenged the sufficiency of the ICs in the partial

summary judgment motions and lost; (2) OpenTable's challenge is late because Ameranth served amended ICs on OpenTable on June 18, 2012 and OpenTable never challenged them; (3) the ICs are sufficiently detailed and comply with PLR 3.1; (4) Defendants cannot simultaneously fail to produce discovery relevant to the issues in the ICs and complain about the sufficiency of the ICs; and (5) its ICs meet the requirements of PLR 3.1.

### A. **Effect of Summary Judgment Rulings.**

Ameranth argues that Defendants attempt to circumvent the district judge's denial of two partial motions for summary judgment concerning Ameranth's PICs as to the '325 and '850 patents. Defendants argue that the summary judgment rulings do not render this issue moot. They point out that Ameranth relied not only on its PICs but also an expert declaration and other citations to documents and source code. Ameranth counters that the court did not factor in the expert declaration or extrinsic evidence in ruling on the sufficiency of the PICs.

Second, Defendants argue that those summary judgment motions concerned only the '325 and '850 patents. Ameranth responds that the same level of detail already determined to be sufficient is used in ICs for the '077 claims.

Finally, Defendants argue that the additional disclosure obligations in this motion, including disclosures related to the doctrine of equivalents, the different versions of the accused systems, and alleged indirect infringement, do not render the issues in this motion moot. Particularly, disclosures regarding indirect infringement were added to the PLR on December 4, 2012, over two months after briefing for the summary judgment motions was complete.

In the orders, Judge Sammartino found that Ameranth's PICs were sufficient and that Defendants should not further challenge them until after claim construction. *See, e.g.,* Case No. 12cv729, Dkt. No. 55, p.12. But she framed the issue as being one of claim construction rather than sufficiency of the of the PICs:

/ / /

> The Court finds that the parties' arguments, to the extent that they are based on the definition of claim terms prior to claim construction, are premature. The parties' arguments depend on claim construction rather than on the specificity of the PICs.

Case No. 12cv739, Dkt. No. 57, p.10; *see* Case No. 12cv729, Dkt. No. 55, p.12. Further, Judge Sammartino relied on expert evidence to make her decision:

> Further, Ameranth's expert has specified "menus, customer order information, food ordering applications, restaurant locators, and frequency/favorite applications" as hospitality applications from Papa John's technical documents. (O'Hanlon Decl., ECF No. 42-2 at 3.) Papa John's arguments that Ameranth has not identified "hospitality applications" turns the issue into one of claim construction rather than sufficiency of the PICs, and the Court declines to grant summary judgment on this basis.

Case No. 729, Dkt. No. 55, p.12.

Given the additional grounds raised in this motion, and Judge Sammartino's framing of her ruling as an issue for claim construction rather than sufficiency of ICs as well as her reliance on expert evidence, this court does not believe those orders dispose of all the issues presented in this motion.

### B. Timeliness of OpenTable's Challenge.

Ameranth originally served ICs on OpenTable in 2012 in the non-consolidated action. It argues that OpenTable's current objections in the consolidated action should be deemed untimely because it did not object to those original 2012 ICs. The court finds that OpenTable's current challenge to the 2013 ICs is timely. These newly-served ICs include a new patent and disclosures related to direct infringement, which were not required until six months after the 2012 ICs were served. Also, Ameranth agreed to extend the deadline for OpenTable to file this motion.

### C. Alleged Deficiency of Ameranth's ICs.

#### 1. Doctrine of Equivalents.

Ameranth argues it complies with the plain language of PLR 3.1e and properly asserts the doctrine of equivalents. The rule requires that each IC contain this information:

> Whether each element of each asserted claim is claimed to be literally present and/or present under the doctrine of equivalents in the Accused Instrumentality.

PLR 3.1e.

> Under the doctrine of equivalents, a product or process that does not literally infringe upon [sic] the express terms of a patent claim may nonetheless be found to infringe if there is "equivalence" between the elements of the accused product or process and the claimed elements of the patented invention.

*Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (internal quotations and citation omitted).

For each claim element, Ameranth included this blanket statement: "If this element is not found to be literally present, it is present under the doctrine of equivalents." *See, e.g.,* ICs to OpenTable, Ex. 1, p.19. Ameranth takes the position that PLR 3.1e simply requires a patentee to identify without further elaboration those claim elements it contends are present under the doctrine of equivalents. Whether it can actually proceed on that theory as to any claim element, according to Ameranth, is a question to be resolved in the future. This court disagrees.

In this court's view the questions of whether, how and when Ameranth should assert doctrine of equivalents theories in its contentions are questions to be answered now, and not in the future. At least one court in the Northern District of California has rejected a patentee's request to reserve the right to assert an infringement theory based on the doctrine of equivalents until after claim construction, stating that "under no reading of the Patent Local Rules do they provide for a place holder to assert future claims of infringement." *Fr. Telecom, S.A. v. Marvell Semiconductor, Inc.*, 2013 U.S. Dist. LEXIS 63823, *17, 2013 WL 1878912, *6 (N.D. Cal. May 3, 2013).

As noted by the court in *Apple,* the purpose of infringement contentions is to alert the alleged infringer which theories the patentee believes its pre-filing investigation supports. Therefore, a patentee should provide its doctrine of equivalents theories at the beginning of the case if it has a good faith basis to assert them. *Apple*, 2013 U.S. Dist. LEXIS at *37; 2013 WL 3246094 at *4 (footnote omitted). The *Apple* court noted:

> For example, to the extent a patentee has a good-faith basis to believe that the accused product includes an apparatus that meets every limitation of the patent and also a good-faith basis to believe that the structure performs the same function in the same way with the same result as the patented product even if the apparatus is not the same, the patentee should assert literal infringement and DOE theories.
>
> On the other hand, if a patentee has a good-faith basis to believe only that the accused product contains an apparatus that meets all of the claim limitations but the apparatus does not perform the same function in the same way with the same result, the patentee should not assert a DOE theory. In that situation, the patentee's theory of infringement arises only from the structure and so it cannot maintain a DOE theory, which must satisfy the function-way-result test. And as a further corollary, if a patentee has a good-faith basis to believe that the accused product only meets the function-way-result test without a structure meeting each of the patent's limitations, the patentee should assert only DOE theories of infringement.

*Id.* at *36; *3. The *Apple* court further cautioned that "absent a change in circumstances (and the diligence of the party who needs to amend), a change in theory after the case has progressed is unjustified." *Id.*

As to the specificity required for asserting an infringement theory under the doctrine of equivalents, there used to be some uncertainty in the law. Practically all the case law in this circuit comes from the Northern District of California and analyzes a patent local rule almost identical to the PLR 3.1e at issue here.[4] Previously, simply stating that "[e]ach element of each asserted claim is either literally present in each of the accused websites and product, and/or is present under the doctrine of equivalents" was considered sufficient to "comply with the letter of the Local Rules." *Keithley v. The Homestore.com, Inc.*, 553 F. Supp. 2d 1148, 1151 (N.D. Cal. 2008) (Illston, J.). But the law has shifted, and recent case law requires more specificity. To properly assert the doctrine of equivalents, parties must link any substantial similarities regarding instrumentalities to particular claims or limitations within the accused patent.

---

[4]The Northern District rule reads that each IC shall contain information as to "Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality." N.D. Cal. PLR 3.1(e).

*OptimumPath, LLC v. Belkin Int'l, Inc.*, 2011 U.S. Dist. LEXIS 41634, *25-*26, 2011 WL 1399257, *8 (N.D. Cal. Apr. 12, 2011) *aff'd*, 466 F. App'x 904 (Fed. Cir. 2012), *reh'g denied* 2012 U.S. App. LEXIS 12111 (Fed. Cir. Apr. 6, 2012). Even the judge from *Keithley* has subscribed to the shift. *See Implicit Networks, Inc. v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 100283, *12, 2011 WL 3954809, *3 (N.D. Cal. Sept. 7, 2011) (Illston, J.) ("[i]f Implicit actually intends to assert the doctrine of equivalents for infringement, it must provide an element-by-element explanation of why and how in its claim charts").

Several other Northern District cases expressly require a limitation-by-limitation analysis. *Nazomi Communs., Inc. v. Nokia Corp.*, 2013 U.S. Dist. LEXIS 85618, *19, 2013 WL 3146796, *5 (N.D. Cal. June 18, 2013) (simply stating that to the extent an element is not literally infringed the accused product "embodies the claim element or limitation under the doctrine of equivalents" is insufficient to comply with the PLR); *Rambus Inc. v. Hynix Semiconductor Inc.*, 2008 U.S. Dist. LEXIS 123187, *41-*42 (N.D. Cal. Dec. 29, 2008) (finding grounds to grant summary judgment of non-infringement under the doctrine of equivalents because plaintiff did not comply with PLR and only provided a boilerplate reservation as opposed to a limitation-by-limitation analysis); *GN Resound A/S v. Callpod, Inc.*, 2013 U.S. Dist. LEXIS 40402, *17-*18, 2013 WL 1190651, *6 (N.D. Cal. March 21, 2013) (requiring an element-by-element analysis) *accord CSR Tech., Inc. v. Freescale Semiconductor*, 2013 U.S. Dist. LEXIS 17502, *25-*26, 2013 WL 503077, *8-*9 (N.D. Cal. Feb. 8, 2013).

This court is not aware of any case in the Southern District that addresses this issue of whether blanket assertions of the doctrine of equivalents satisfies the PLR or whether a limitation-by-limitation specificity is required. However, ample and recent case law from the Northern District squarely answers this question. Based on the similarity to the Northern District's rule, the number of recent and persuasive cases coming from that district, and the policy behind patent local rules to "crystallize . . . theories of the case early in the litigation," *O2 Micro Int'l,* 467 F.3d at 1364, this court finds good cause to

follow the decisions coming out of the Northern District regarding assertion of the doctrine of equivalents. *See NessCap Co. v. Maxwell Techs., Inc.,* 2008 U.S. Dist. LEXIS 3357, *4, 2008 WL 152147, *1 (S.D. Cal. Dec. 5, 2007) (Major, J.) (relying on published and unpublished cases interpreting the patent local rules from the Northern District of California and Northern District of Georgia as persuasive authority).[5] Ameranth must provide more specifics in its ICs with respect to the doctrine of equivalents.

## 2. Contentions Regarding Contributory Infringement.

Defendants argue that Ameranth failed to identify or describe any acts by the alleged indirect infringers that contribute to direct infringement. To describe indirect infringement, Ameranth must comply with this rule:

> For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a **description of the acts** of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

PLR 3.1d (emphasis added).

Ameranth's contributory infringement allegations largely mimic the statutory elements of contributory infringement:

> OpenTable contributes to infringement of the asserted claims by offering to sell and/or selling components of the Accused System, constituting a material part of the invention, that are non-staple articles of commerce, and have no substantial non-infringing use, knowing that the components were especially adapted for use in systems which infringe the asserted claims.

*See, e.g.,* ICs to OpenTable, Ex. 1, pp.12-13. In comparison, the statutory elements of contributory infringement read:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine . . . constituting a material part of the invention,

---

[5]The Eastern District of Texas, whose PLR are also modeled on those of the Northern District of California, considers interpretations of the PLR by courts of the Northern District as persuasive authority. *Nike, Inc. v. Adidas Am., Inc.*, 479 F. Supp. 2d 664, 667 n.3 (E. D. Tex. 2007).

> knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).

Boilerplate language that simply tracks the elements required to show contributory infringement and that does not specify how the selling contributes to infringement of the asserted claims "does not suffice." *Creagri, Inc. v. Pinnaclife Inc.*, LLC, 2012 U.S. Dist. LEXIS 158540, *16, 2012 WL 5389775, *3 (N.D. Cal. Nov. 2, 2012) (Grewal, J.). But Ameranth argues it also includes descriptions of specific acts. For example, as to OpenTable, it states: "intentionally encouraging direct infringement," "provides instruction and direction regarding the use of the Accused System," "widely advertises and promotes use of the OpenTable Reservation System by consumers in the media and on OpenTable's website(s)." Jt. Mtn., p.3. As to Wanderspot, Ameranth describes its indirect acts as "intentionally encouraging indirect infringement," and "provides instruction and direction regarding the use of the Urbanspoon Reservation and Table Management System." Jt. Mtn., p.4.

While an accusing party must "crystallize" its theory and "identify how . . . products infringe with as much specificity as possible with the information currently available to it," the party need not provide concrete evidence along with the ICs or "point[] to the specific structures within the accused product that embodies the claim limitations." *Solannex*, U.S. Dist. LEXIS 56672 at *12-*13, 2013 WL 1701062 at *4 (Grewal, J.). Even if some of the ICs closely mirror the claim language, those ICs are adequate if the cited factual support is specific and sufficient to put the accused party on notice. *Id.*

Here, Ameranth includes some basic descriptions of acts of indirect infringement. *See, e.g.,* Ex. 1, p.12. But they are not sufficient and do not explain the facts relied upon. For example, Ameranth refers to Exhibit 100 but does not provide the court with a copy of that exhibit or explain what facts in that exhibit support a theory of contributory infringement. Ameranth must amend its allegations of contributory infringement to

properly disclose the facts it has that support that theory.

### 3. Accusations of All Versions of Defendants' Systems.

Ameranth asserts that it identified all accused versions of Defendants' systems to the extent reasonably possible with systems that are comprised of multiple aspects and components, and do not have overall "version numbers" or "version names" or other simple identifiers. Ameranth argues that differences between "versions" of the accused products are minimal "bug fixes" that do not alter the infringing nature of the accused product. It asserts that it identified the accused versions temporally, by their functional aspects, and in some cases, by their components' version names or numbers.

Defendants argue that Ameranth includes a single claim chart for the most current version of each of the asserted claims, yet tries to accuse all previous versions of Defendants' systems without specifically identifying them. Defendants ask that Ameranth be compelled to provide a separate chart or otherwise show that the accused previous versions are the same as or reasonably similar to the charted version.

To comply with the requirements of PLR 3.1 and promote the purpose of forcing an accusing party to "crystallize" its infringement theories, an opposing party should not be "forced to guess which versions of its products infringes the patent." *Bender v. Freescale Semiconductor, Inc.*, 2010 U.S. Dist. LEXIS 91281, *5-*6, 2010 WL 1689465, *3 (N.D. Cal. Apr. 26, 2010) (quotations and citations omitted). Further, the purpose of PLR 3.1 is to be "nit picky." *InterTrust Techs. Corp. v. Microsoft Corp.,* 2003 U.S. Dist. LEXIS 22736, *8, 2003 WL 23120174, *4 (N.D. Cal. 2003)).

While Ameranth says it identified the accused versions temporally, by their functional aspects or by their version names or numbers, it must at least state how the accused previous versions are the same or reasonably similar to the charted version, or else provide a separate chart for each version. In other words, it must amend its ICs and explain how each mode allegedly infringes.

### 4. Particularity of Claim Charts.

Ameranth says that using the latest versions of the mobile applications, it provided

charts alleging that the accused systems meet each of the asserted claim limitations. It cited to public and non-public documents (where available) and stated, to the best of its ability, where each element of the asserted claim is found within the accused system. Defendants argue that Ameranth's ICs are not particular because they do not identify where and how many claim limitations are allegedly found with the accused systems.

The rule requires that for each opposing party, the IC include:

> A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including for each element that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

PLR 3.1c.

Defendants ask the court to follow the Northern District's interpretation of the analogous PLR in that district and require Ameranth to describe how the accused systems practice the asserted claims. In opposition, Ameranth asserts that the "how" is a topic to be addressed by experts following claim construction. It argues that PLR 3.1c does not require it to describe with any degree of specificity how the accused system practices the claimed elements.

Infringement contentions that mostly copy the language of the patent claim are insufficiently vague. *Network Caching Tech., LLC v. Novell, Inc.*, 2002 U.S. Dist. LEXIS 26098, *16-*18 (N.D. Cal. Aug. 13, 2002). An accusing party must link any cited evidence regarding the accused system to the IC. *Id.* at *18 (noting reliance on defendant's marketing literature was insufficient because it was not specifically linked to the IC); *see Tessenderlo Kerley, Inc. v. Or-Cal, Inc.*, 2012 U.S. Dist. LEXIS 52486, *7, 2012 WL 1253178, *2 (N.D. Cal. Apr. 13, 2012) ("Broad inferences cannot stand in place of factual information"). Specifically regarding claim charts, an accusing party must provide the level of detail required to meet the "reverse engineering or its equivalent" standard. *InterTrust*, 2003 U.S. Dist. LEXIS 22736, *8, 2003 WL 23120174, *2-3. To comply with this standard, the asserting party must explain its theory of how the product infringes the claim element. *GN Resound A/S v. Callpod, Inc.*, 2013 U.S.

Dist. LEXIS 40402, *11, 2013 WL 1190651, *4 (N.D. Cal. Mar. 21, 2013).  It must "articulate the precise way in which it believes the products to be infringing." *Tessenderlo*, 2012 U.S. Dist. LEXIS, *11, 2012 WL 1253178, *4.

Next to each identified claim, Ameranth attempts to identify the location of elements of the claim within the accused instrumentality, and cites to third party news articles, commentaries, online blogs and marketing materials. Jt. Mtn., p.18; *See, e.g.,* ICs to OpenTable, Ex. 1, p.13.  It does not cite to any source code.  Defendants argue that citing to portions of the code would allow Ameranth to identify, with reasonable particularity:

> (1) data and applications that are allegedly stored on a web page ('850 Patent, Claim 12, element (b)),
>
> (2) what applications and data are allegedly synchronized to a web page ('850 Patent, Claim 12),
>
> (3) what information entered on a web page is allegedly automatically communicated to handheld device ('850 Patent, Claim 14),
>
> (4) what information entered on a handheld device is allegedly automatically communicated to a web page ('850 Patent, Claim 15), [and]
>
> (5) what hospitality application information is allegedly linked and synchronized simultaneously to a web page ('077 Patent, Claim 13), among other deficiencies.

Jt. Mtn., pp.18-19.  In the case of OpenTable, Ameranth had access to their source code for several months before serving amended ICs, so this information should be readily available.

Ameranth admittedly does not explain "how" the accused systems practice the claimed elements.  Jt. Mtn., p.9.  The court finds that PLR 3.1c requires more.  Ameranth must amend its ICs to link the cited evidence to its claims, and provide the level of detail required to meet the "reverse engineering or its equivalent" standard.  *See InterTrust*, 2003 U.S. Dist. LEXIS 22736, *8, 2003 WL 23120174, *2-3.  What this means is that Ameranth must identify with specificity where in the accused system the alleged infringement occurs and  how the claim elements are met.

## IV. ORDER

For good cause shown, the court follows the persuasive authority of the Northern District in interpreting analogous patent local rules and **GRANTS** Defendants' discovery motion. The court **ORDERS**:

1. Ameranth must add facts and specify how accused systems of defendants OpenTable, Wanderspot and Best Western infringe the claims under the doctrine of equivalents, as well as address all previous accused versions and provide more specific claim charts, or else drop the contentions, by a date to be proposed by the parties, per the paragraph below.
2. To the extent this order may implicate other sets of ICs, the parties shall meet and confer and by **August 5, 2013**, file a proposed joint schedule of service of the ICs subject to this order as well as any other ICs that may need to be amended, and shall notify the court of any other scheduling order dates that may need to be amended.

**IT IS SO ORDERED.**

DATED: July 26, 2013

*/s/ Nita L. Stormes*
Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court