**CALDARELLI HEJMANOWSKI & PAGE LLP**
William J. Caldarelli (SBN #149573)
Ben West (SBN #251018)
12340 El Camino Real, Suite 430
San Diego, CA  92130
Telephone: (858) 720-8080
wjc@chplawfirm.com
dbw@chplawfirm.com

**FABIANO LAW FIRM, P.C.**
Michael D. Fabiano (SBN #167058)
12526 High Bluff Drive, Suite 300
San Diego, CA  92130
Telephone:  (619) 742-9631
mdfabiano@fabianolawfirm.com

**OSBORNE LAW LLC**
John W. Osborne (Appointed *Pro Hac Vice*)
33 Habitat Lane
Cortland Manor, NY  10567
Telephone:  (914) 714-5936
josborne@osborneipl.com

**WATTS LAW OFFICES**
Ethan M. Watts (SBN #234441)
12340 El Camino Real, Suite 430
San Diego, CA  92130
Telephone:  (858) 509-0808
emw@ewattslaw.com
**Attorneys for Plaintiff Ameranth, Inc.**

**SCHIFF HARDIN LLP**
George C. Yu (SBN #193881)
Duane H. Mathiowetz (SBN #111831)
One Market, Spear Street Tower, 32nd Floor
San Francisco, CA  94105
Telephone: (415) 901-8700
gyu@schiffhardin.com
dmathiowetz@schiffhardin.com
**Attorneys for QuikOrder, Inc.**
/ / /

---

**JT MTN FOR DETERMIN OF DISCOVERY DISPUTE**          **11cv1810 JLS-NLS**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERANTH, INC., | Case No. 3:11-cv-01810-JLS (NLS) |
| Plaintiff, | Consolidated with: |
| v. | 12cv729 JLS (NLS), 12cv737 JLS (NLS), 12cv731 JLS (NLS), 12cv739 JLS (NLS), 12cv732 JLS (NLS), 12cv742 JLS (NLS), 12cv733 JLS (NLS), 12cv858 JLS (NLS), 12cv1627 JLS (NLS), 12cv1646 JLS (NLS), 12cv1629 JLS (NLS), 12cv1648 JLS (NLS), 12cv1630 JLS (NLS), 12cv1649 JLS (NLS), 12cv1631 JLS (NLS), 12cv1650 JLS (NLS), 12cv1633 JLS (NLS), 12cv1651 JLS (NLS) 12cv1634 JLS (NLS), 12cv1652 JLS (NLS), 12cv1636 JLS (NLS), 12cv1653 JLS (NLS), 12cv1640 JLS (NLS), 12cv1654 JLS (NLS), 12cv1642 JLS (NLS), 12cv1655 JLS (NLS), 12cv1643 JLS (NLS), 12cv1656 JLS (NLS) 12cv1644 JLS (NLS), 12cv1659 JLS (NLS) |
| PIZZA HUT, INC., ET AL., | |
| Defendants. | |
| | **JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |
| | [QUIKORDER'S RESPONSES TO AMERANTH'S INTERROGATORIES RE SOURCE CODE ORGANIZATION] |
| | Before the Hon. Nita L. Stormes |
| | Complaint Filed:  August 15, 2011 |

1  Plaintiff Ameranth, Inc. ("Ameranth") and Defendant QuikOrder, Inc.

2  ("QuikOrder") jointly file this Motion for Determination of Discovery Dispute

3  concerning QuikOrder's responses to three of Ameranth's Interrogatories Re

4  Source Code Organization.  Those three interrogatories and the related objections

5  and responses are set forth verbatim in the parties' accompanying "Joint

6  Statement" at **Exhibit A** to this joint motion, along with summaries of the parties'

7  respective positions on each of those interrogatories.

## DECLARATION OF COMPLIANCE

9  Pursuant to the Court's December 16, 2011 Case Management Conference

10  Order [Doc. No. 110], the parties certify that they met and conferred before filing

11  this motion.

12

13  Dated: August 13, 2013              CALDARELLI HEJMANOWSKI & PAGE
                                        LLP
14

15                                      By:  */s/ William J. Caldarelli*
                                            William J. Caldarelli
16

17                                      WATTS LAW OFFICES
                                        Ethan M. Watts
18

19                                      FABIANO LAW FIRM, P.C.
                                        Michael D. Fabiano
20

21                                      OSBORNE LAW LLC
                                        John W. Osborne
22                                      **Attorneys for Plaintiff Ameranth, Inc.**

23

24  Dated: August 13, 2013              SCHIFF HARDIN LLP

25

26                                      By:  */s/ George C. Yu*
                                            George C. Yu
27                                      **Attorneys for Defendant QuikOrder,
                                        Inc.**

28

1

## JOINT MEMORANDUM OF POINTS AND AUTHORITIES

### I.   AMERANTH'S POSITION

**A.   Introduction**

For "enterprise software" products, such as those involving Ameranth's patents-in-suit, access to the Defendants' source code is essential because the Defendants have sole possession of this evidence.  The Court authorized Ameranth's access to the Defendants' source code, but denied Ameranth's request to receive all of their respective source code, or their "source code trees," requiring the Defendants to produce only portions of their source code.  Still, those productions often include hundreds of thousands of lines of code, which Ameranth's experts cannot search for "key words," but must review line-by-line. Without materials showing the interaction of each of the Defendants' source code modules, or "projects," and without an index or "roadmap" to the source code, Ameranth's experts must try to navigate in the dark without a map.  To finalize its expert reports and prepare to present its claims thoroughly at trial, Ameranth needs full cooperation in discovery from QuikOrder and most of the other Defendants, including the production of the critical technical information which constitutes a map of the portions of source code they have produced and of their databases.  Also, without additional information about the source code that has been produced, Ameranth cannot independently assess how the produced portions of the source code relate to each other, nor can Ameranth be certain that it has received all of the portions of the source code which show the detailed operation of all relevant aspects of the Accused Systems.

Ameranth propounded five interrogatories seeking an index or "road map" describing and locating the produced portions of source code and identifying the databases associated with the produced portions of source code.  That information is not difficult for Defendants like QuikOrder to provide.  Defendant GrubHub, Inc. recently provided that very information about its accused system in its timely

responses to the same interrogatories from Ameranth as the interrogatories at issue in this joint motion.[1]  <u>See</u> Exhibit 1 to the concurrently filed Notice of Lodgment.

The Court, in its February 20, 2013 Order, quoted Defendants' own expert for the fact that it "would border on impossible" for Ameranth's experts to determine "which portions of that code specifically relate to the accused aspects or functionality," at least if Defendants produced their entire source code trees. (Doc. No. 432.)  Still, QuikOrder has refused to provide that information in response to Ameranth's three interrogatories at issue in this motion.  QuikOrder asserts that the terms in the interrogatories are unclear and that, under Federal Rule of Civil Procedure 33(d), it does not need to respond further because it has produced portions of its source code.  Ameranth is entitled to the "roadmap" information about QuikOrder's source code that Ameranth has requested in the three interrogatories at issue.[2]

**B.    <u>Background</u>**

The parties to the consolidated lawsuits disputed the scope of Defendants' productions of their respective source code.  So that it could have an overview of each Defendant's systems, including an understanding of where each component project fit within those systems, Ameranth sought to have the Defendants produce their entire source code trees, while the Defendants wished to produce only the portions of their source code which correspond to the claims in Ameranth's

---

[1]  Unfortunately, most Defendants other than GrubHub have not met their obligations in responding to Ameranth's interrogatories, but, like QuikOrder, have refused to answer substantively and have improperly invoked Federal Rule of Civil Procedure 33(d), whether or not they yet have produced any source code. The Court's ruling on the instant motion, then, is important to set the standard for all parties in this case on the issues raised by this motion.

[2]  Ameranth's Interrogatory No. 1 is consistent with this Court's February 20, 2013 order in this case stating that "any source code produced must include original file names . . . ."  (Doc. No. 344, p. 12, l. 19-20.)

2

patents.  That dispute was presented to the Court in a joint motion in January 2013.  On February 20, 2013, the Court issued its ruling on the motion and largely sided with Defendants' position, such that they were ordered to produce only select portions of their respective source code sufficient to show the operation of the aspects of the accused system identified in Ameranth's PLR 3.1(c) charts. (Doc No. 342.)  In making that ruling, though, the Court wrote:

> In well-designed systems, Defendants' expert explains that "particular functionality is embodied within a relatively small number of modules," and those modules can be verified in isolation.  Larson Decl. ¶ 26.  **More efficient than producing an entire source code tree, <u>Defendants' expert advocates to have Defendants' technical employees – who are intimately familiar with their own source code – "identify and provide the portions of source code that specifically relate to the aspects or functionality identified by the plaintiff in its infringement contentions.</u>"**  Larson Decl. ¶ 27.  In this particular case, Defendants' expert opines that the
>
>> Potential for waste is particularly apparent . . . where there are over 30 different defendants.  **It would border on impossible for the plaintiff in this case to have 2-3 experts to meaningfully review an 'entire source code tree' for each of the 30+ defendandants [sic] and independently determine, in a reasonably short amount of time, which portions of that code specifically relate to the accused aspects or functionality.**
>
> Larson Decl. ¶ 28.

(Doc. No. 342 [emphases added].)

Ameranth needed to ensure it had received all of the required source code projects and to understand where those projects are located within the source code.  Consistent with the express recommendation of Defendants' expert and with the Court's stated reasoning, Ameranth propounded sets of five interrogatories to the Defendants.

While QuikOrder asserted objections, it ultimately did not stand upon those objections but justified its refusal to provide substantive responses to the

interrogatories by pointing out that it already had produced certain source code for inspection and invoking Federal Rule of Civil Procedure 33(d), asserting that the requested information could be derived from the source code produced. Ameranth initiated a meet and confer process through Ameranth's counsel's July 19, 2013 letter. Counsel for both parties then met and conferred by telephone on July 23, 2013. Ameranth's counsel offered to have both parties' software consultants participate in the meet and confer call if QuikOrder's counsel wished to resolve any purported uncertainty about the terms Ameranth used in its interrogatories. QuikOrder's counsel declined to have any technical consultants participate in the call, however. QuikOrder stated in the meet and confer process that it was unwilling to provide further responses to Ameranth's interrogatories numbers 1, 2 and 4, in light of QuikOrder's reliance upon Federal Rule of Civil Procedure 33(d).

**C.**  **Argument**

1.  <u>The Terms in Ameranth's Interrogatories Are Clear and Do Not Require QuikOrder to Provide Its Claim Construction Prematurely</u>.

QuikOrder objects that the term "Accused System" in the subject interrogatories is vague, ambiguous, and unintelligible. (<u>See</u> QuikOrder's responses to interrogatory nos. 1, 2 and 4, set forth in the Joint Statement at Exhibit A.) QuikOrder also objects that the terms "purpose", "projects", "Source Code Projects", "web services", "web pages", "application programming interfaces", "menu creation", "data synchronization", integration with third-party applications", "communication services", "business layers", "application services", "data services", "databases", and "clients" in the subject interrogatories are vague and ambiguous. (<u>See</u> QuikOrder's response to interrogatory No. 1 and also its response to interrogatory No. 2 set forth in the Joint Statement at Exhibit A.) Those objections are invalid for at least four separate but related reasons.

First, the terms included in Ameranth's interrogatories are common terms in the software industry or otherwise known to software developer such as

4

QuikOrder.  (Indeed, some of the purportedly vague and ambiguous terms appear in QuikOrder's own technical documents.)  Software companies by necessity employ persons familiar with these industry terms in order to develop, test, and maintain a multi-faceted and complex online and wireless ordering system such as the QuikOrder Ordering System.  (August 9, 2013 Declaration of Mitch Cardinal ["Cardinal Decl."], ¶¶ 5, 13.)

Second, the "Accused System" is described in Ameranth's complaint and infringement contentions served upon QuikOrder in this matter.

Third, Ameranth previously propounded requests for production of documents to QuikOrder which referred to QuikOrder's "Accused System."  After a meet and confer process, QuikOrder acknowledged that it then had a sufficient understanding of the meaning of "Accused System" to enable it to begin making rolling productions of responsive documents, as the parties confirmed in their Joint Motion to Accommodate Rolling Productions, which the Court granted (Doc. No. 422), demonstrating that the term is understood sufficiently by QuikOrder.

Fourth, while QuikOrder alleges that the terms repeated above are vague and ambiguous, QuikOrder declined Ameranth's invitation to have the parties' technical consultants address those terms during the meet and confer process. More significantly, QuikOrder has **not** rested upon its objections to the terms in the interrogatories, but has responded substantively (albeit without verification) to each of the three interrogatories at issue by asserting that the requested information can be derived from the source code that QuikOrder produced.  If QuikOrder is able to affirm that the requested information can be found in the source code it produced, QuikOrder must comprehend the meaning of the terms in Ameranth's interrogatories No. 1, 2 and 4.[3]

---

[3]  Moreover, QuikOrder states in its response to interrogatory No. 1 that its responses "shall not be construed as an admission regarding the construction of

2.      <u>FRCP 33(d) Does Not Excuse QuikOrder from Answering</u>
<u>Ameranth's Interrogatories</u>.

In its unverified responses to each the three interrogatories at issue,
QuikOrder improperly invokes Federal Rule of Civil Procedure 33(d).  That rule
allows "in strictly limited circumstances, for a party to refer to specific business
records in response to an interrogatory."  <u>Mancini v. Insurance Corp. of New</u>
<u>York</u>, No. 07cv1750-L(NLS), 2009 WL 1765295 (S.D. Cal. June 18, 2009).  Rule
33(d) is properly invoked "only if the burden of deriving the answer to the
interrogatory is substantially the same for the propounding party as the responding
party."  <u>RSI Corp. v. Int'l Bus. Machines Corp.</u>, 5:08-CV-3414 RMW, 2012 WL
3095396 (N.D. Cal. July 30, 2012).  The <u>RSI</u> court explained:

> A requesting party claiming an inappropriate use of Rule 33(d) must
> 'make a prima facie showing that the use of Rule 33(d) is somehow
> inadequate, whether because the information is not fully contained in
> the documents or because it is too difficult to extract.' The burden
> then shifts to the producing party to show that: (1) a review of the
> documents will actually reveal answers to the interrogatories; and (2)
> the burden of deriving the answer is substantially the same for the
> party serving the interrogatory as for the party served.  A responding
> party cannot "foist a mass of records on his interrogator when their
> deciphering is feasible only for one familiar with the records.

<u>Id.</u> at *1. [citations omitted.]

The facts of <u>Digital Reg of Texas, LLC v. Adobe Sys. Inc.</u>, 2013 WL
3361241 (N.D. Cal. July 3, 2013) confirm that the ruling in that case does
<u>not</u> support QuikOrder's reliance under Rule 33(d).  The District Court in
<u>Digital Reg</u> stated twice that the defendant had "identified specific bates-
references to documents from which each and every answer to
Interrogatories 2-4 can be derived."  <u>Id.</u> at *5 (<u>see also</u> *6, stating that the

---

certain terms in the asserted patents."  Ameranth's interrogatories simply seek
more information to assist Ameranth's software consultants in reviewing and
analyzing QuikOrder's source code.

6

1   defendant had "identified specific bates-references to documents for each

2   and every answer to Interrogatories 2-4.")  But because QuikOrder has not

3   provided any such detail in its unverified response to Ameranth's

4   interrogatories, QuikOrder has not properly invoked Rule 33(d).

5       Here, Ameranth meets its initial burden for two reasons.  First, as noted

6   above, QuikOrder's unverified invocation of Rule 33(d) does not "specify the

7   records that must be reviewed in sufficient detail" to enable Ameranth to locate

8   the documents and identify them as readily as QuikOrder, as Rule 33(d) requires.

9   Fed.R.Civ.P. 33(d)(1).  Instead, QuikOrder's responses merely refer to "source

10  code and related materials . . . ."  But the "source code and related materials"

11  referenced by QuikOrder comprise nearly one *gigabyte* of data.  To put that

12  quantification into context, one gigabyte of Microsoft Word files comprises

13  approximately 65,000 documents, each nine pages long, or 100,000 single-spaced

14  emails, each one-and-a-half pages long.  (Cardinal Decl., ¶ 16.)  QuikOrder's own

15  Chief Technology Officer has declared that QuikOrder's source code production

16  includes "approximately 1,000 PHP files and at least 100 Cache routines . . . ."

17  August 9, 2013 Declaration of March Asher ("Asher Decl."), ¶ 5.  As this Court

18  previously has held in the context of Rule 33(d), "referring to a wide universe of

19  documents does not specify the records in sufficient detail."  Mancini, supra, 2012

20  WL 17652995 at *2.

21      Second, Ameranth cannot independently ascertain the information

22  requested by Interrogatories Nos. 1 and 2 without substantial burden.  Ameranth

23  cannot ascertain the information requested by Interrogatory No. 4 under any

24  circumstances based upon the material produced so far by QuikOrder.

25      Interrogatory No. 1 asks QuikOrder to provide the name it gave to the

26  source code projects corresponding to relevant functionality of the QuikOrder

27  System and to state the purpose of those projects.  Ameranth propounded

28  Interrogatory No. 1 because it needs to ensure that QuikOrder produced all

relevant source code projects and because QuikOrder produced its source code in a manner that makes it burdensome and time-consuming for Ameranth's consultants to identify those projects that correspond to relevant functions of Ameranth's patents-in-suit.  (Cardinal Decl., ¶¶ 8-12.)  QuikOrder produced nine "master" folders containing hundreds of sub-folders, and sub-sub-folders.  (Cardinal Decl., ¶ 10.)  Further, the file names themselves are cryptic and do not by themselves identify what, for instance, QuikOrder called its source code project for "business layers" or any other project.  Thus, Interrogatory No. 1 simply asks QuikOrder to identify its own project names for the various source code projects identified in Interrogatory No. 1 and the purposes of those projects.

Because Ameranth's source code consultant does not have the entire QuikOrder source code tree and does not have equivalent familiarity with the source code for QuikOrder's Accused System, Ameranth's source code consultant estimated, optimistically, it would take him several dozens of hours to extract this information on his own.  (Cardinal Decl., ¶ 11.)  Indeed, this Court's February 20, 2013 "Order Determining Joint Motion for Resolution of Discovery Dispute No. 1" approvingly cites Defendants' own expert for the fact that it "would border on impossible" for Ameranth's experts to determine "which portions of that code specifically relate to the accused aspects or functionality."  (Doc. No. 342 at p. 9.)  But QuikOrder's invocation of Rule 33(d) is not fatally flawed just because it would take Ameranth a long time to extract the information it has requested from QuikOrder.  QuikOrder's invocation of Rule 33(d) is fatally flawed because it would be much easier for QuikOrder to gather that information than it would be for Ameranth to gather it.  QuikOrder's Chief Technology Officer has declared only that QuikOrder would have to "spend significant time" to provide the information requested in Ameranth's interrogatories.  Asher Decl., ¶ 6.  It makes no difference that the descriptive information Ameranth seeks is not presently compiled in "any summary document."  See Asher Decl., ¶ 3.  The dispositive fact

8

is that the *relative* burden of deducing the requested information about the source code is unquestionably heavier for Ameranth's consultant than it is for QuikOrder's personnel, who wrote, maintain and utilize QuikOrder's source code.

Also, while QuikOrder repeatedly touts the source code it "has made available for inspection for six days," the volume of the code, the review tools produced with it and the lack of context that the entire source code tree would provide have required Ameranth's source code consultants to spend a significant portion of those six days just *inventorying* folders in the source code projects that QuikOrder has produced.  (Cardinal Decl., ¶ 4.)  QuikOrder's claim that Ameranth can derive the requested information from the source code is akin to Leo Tolstoy claiming that the name of Vasily Dmitrich Denisov's best friend can be found simply by reading a 1,400-page translation of <u>War and Peace</u>.  A reader might find the information eventually after a great deal of careful, laborious reading, but it would be much easier if Tolstoy told the reader where to look in the book for that information.

Similarly, Interrogatory No. 2 merely asks QuikOrder to identify the location (by specific directory tree, directory, file, folder, <u>etc</u>.) where each source code project resides in the QuikOrder system.  In other words, where Interrogatory No. 1 asks QuikOrder to state the names by which it identifies the various source code projects and the purposes of those projects, Interrogatory No. 2 merely asks QuikOrder to identify where each of those projects resides in the source code tree. And like obtaining the information requested by Interrogatory No. 1, it would take Ameranth's source code consultant several dozens of hours to extract this information on his own, whereas QuikOrder's IT employees should be able to provide the information quickly.  (Cardinal Decl., ¶¶ 11, 13.)

The propriety of QuikOrder invoking Rule 33(d) comes down to a simple comparison of relative familiarity with, and form of access to, the identified documents and materials.  QuikOrder is without question the party most familiar

9

with its source code, its contents, its organization and its connectedness. Ameranth does not possess the same level of familiarity and cannot develop it, absent receiving the entire QuikOrder source code tree and then devoting hundreds of hours to studying it.  Thus, it cannot be said that the burden, under Rule 33(d), is "substantially the same for either party."  In T.N. Taube Corp. v. Marine Midland Mortgage Corp., 136 F.R.D. 449, 453 (W.D. N.C. 1991), the District Court ruled that the defendant improperly invoked Federal Rule of Civil Procedure 33(c), the predecessor to current Federal Rule of Civil Procedure 33(d), because the burden of deriving the Interrogatory answers from documents was less for the defendant, given the defendant's knowledge of its own records, than it would have been for the plaintiff.  Id. at 454-56; see also Sabel v. Mead Johnson and Co., 110 F.R.D. 553, 556 (D. Mass. 1986) (ruling that defendant's assertion that it was equally burdensome for plaintiff to derive responses to its interrogatories from a 156,000 page new drug application was "simply absurd"). Similarly, a district court in California stated, "[W]hen voluminous documents are produced under Rule 33(d), they must be accompanied by indices designed to guide the searcher to the documents responsive to the interrogatories." O.Connor v. Boeing N. Am., Inc., 185 F.R.D. 272, 278 (C.D. Cal. 1999).

In summary, Federal Rule of Civil Procedure 33(d) requires the responding party to specify particular records from which the responsive answers to interrogatories can be derived.  QuikOrder has not provided any of the required specificity, which is the type of information necessary for Ameranth to prepare infringement contentions, which this Court has stated must include "specificity [as to] where in the accused system the alleged infringement occurs and how the claim elements are met."  (Doc. No. 432, p. 14.)

Interrogatory No. 4 asks QuikOrder for information regarding the various databases that are used in connection with the Accused System.  The presence of a database is a critical element of many of the claims of the patents-in-suit.  Thus,

10

Ameranth propounded Interrogatory No. 4 in order to obtain and verify information about databases used in the Accused System.  Ameranth is incapable of extracting all of the requested information on its own because QuikOrder produced files that appear to relate to only one database, but produced no other database files, SQL files linking to databases or files demonstrating calls to databases.  (Cardinal Decl., ¶¶ 14-15.)  Thus, it is disingenuous for QuikOrder to invoke Rule 33(d) and to point to its source code production as the place where the response to interrogatory No. 4 could be found.

Finally, there is a simple reason why QuikOrder cites no authorities to support its bold suggestions that (a) Ameranth should not be allowed to review QuikOrder's source code again if QuikOrder meets its obligations to respond substantively to the interrogatories at issue, and (b) that Ameranth should compensate QuikOrder for responding substantively to those interrogatories – no such authority exists.  Just as a producing party cannot dictate how often the requesting party gets to review a document produced in discovery, QuikOrder cannot dictate how often Ameranth's consultant may review the source code QuikOrder has produced.  Also, it is exceedingly expensive for Ameranth to prepare infringement contentions regarding QuikOrder's Accused System, but the law does not require QuikOrder to compensate Ameranth for that cost.  It simply is expensive for a plaintiff to prepare infringement contentions, just as it is sometimes expensive for a defendant to answer interrogatories substantively, fully and in good faith.

**D.  <u>Conclusion</u>**

For the reasons discussed above, Ameranth respectfully requests that the Court order QuikOrder to provide timely, complete and verified responses to Ameranth's interrogatories number 1, 2 and 4 providing the requested descriptive information about the portions of its source code corresponding to the functions

set forth in the interrogatories and to produce additional portions of relevant source code if any are missing.

**QUIKORDER'S POSITION**

**I.   INTRODUCTION**

In its interrogatories to QuikOrder regarding source code organization, Ameranth sought (1) the name and purpose of all projects in the source code for the QuikOrder online and mobile food ordering system accused of infringement in this matter that correspond to: web services; web pages; application programming interfaces; menu creation data synchronization; integration with third-party applications; communication services; business layers; application services; data services; databases; and clients; (2) the specific location at which each source code project for the Accused System resides in the normal course of QuikOrder's business; and (3) all databases that have been used in connection with the commercial operation of the Accused System. QuikOrder responded to Ameranth's interrogatories by invoking Federal Rule of Civil Procedure ("FRCP") 33(d). At the time Ameranth served these interrogatories, Ameranth had reviewed QuikOrder's source code on six separate days employing three different experts. Ameranth had ample time and opportunity to gather the information it now seeks during its review of QuikOrder's source code. Thus, QuikOrder should not be required to do Ameranth's work.

The information responsive to Ameranth's interrogatories is not readily available to QuikOrder. Instead, like Ameranth, QuikOrder would have to search through the source code that has already been made available to Ameranth, so the burden of deriving the information sought would be substantially the same for either party. Ameranth has never indicated that it is somehow unable to find the requested information in QuikOrder's source code. Therefore, QuikOrder respectfully requests that the Court find that QuikOrder properly invoked FRCP 33(d) in response to Ameranth's interrogatories.

12

## II.   <u>FACTS</u>

QuikOrder offered to make its source code and related materials available to Ameranth for up to five consecutive days in May 2012.  *See* Decl. of Helen Irza ("Irza Decl.") ¶ 2.  Ameranth chose only to review the source code on May 4, 2012 for approximately five hours.  *Id.*  Subsequently, over the course of the following year, Ameranth reviewed the source code on five additional days with two additional, different experts.  *Id.* at ¶ 3.  One of Ameranth's three experts reviewed the source code on August 14, 2012, September 7, 2012, May 14, 2013, June 11, 2013, and June 13, 2013.  *Id.* at ¶¶ 4-5.

On June 14, 2013, Ameranth served its interrogatories to QuikOrder regarding source code organization.  *See* Decl. of George C. Yu ("Yu Decl.") ¶ 2, Exhibit A.  In interrogatory numbers 1, 2, and 4, Ameranth requested information that it could have collected itself from its review of QuikOrder's source code.  QuikOrder invoked FRCP 33(d) in response to those interrogatories, as it cannot easily locate and gather the information responsive to Ameranth's interrogatories regarding source code organization.  *See* Decl. of Marc Asher ("Asher Decl.") ¶ 3.  QuikOrder does not have access to any summary document that contains the information that Ameranth requests.  *Id.*  Rather, QuikOrder would have to search through the source code that Ameranth has already reviewed to obtain the information requested in Ameranth's interrogatories.  *Id.* at ¶ 4.  QuikOrder would have to "state the name and purpose of" approximately 1,100 files just to respond to Ameranth's interrogatory number 1, alone.  *Id.* at ¶ 5.  Consequently, QuikOrder would have to spend significant time reviewing its source code to respond to Ameranth's interrogatory requests.  *Id.* at ¶ 6.

Moreover, during the meet-and-confer process, Ameranth provided no basis why it could not have found the information responsive to its interrogatories during its extensive review of QuikOrder's source code.  Yu Decl. ¶¶ 3 - 4, Exhibit B.  If Ameranth has not been able to find the information it seeks in the

13

interrogatories after having three experts review QuikOrder's source code, QuikOrder believes that the entire source code review has been futile. Accordingly, if the Court is inclined to compel QuikOrder to respond further to Ameranth's interrogatories, QuikOrder requests that the Court shift the costs incurred by QuikOrder for the source code review to Ameranth.

## III.   DISCUSSION

### A.   QuikOrder Properly Invoked FRCP 33(d) in Response to Ameranth's Interrogatories Regarding Source Code Organization.

Pursuant to FRCP 33(d), if an answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.  FRCP § 33(d).  Here, QuikOrder has already provided its source code for six days of inspection.  The interrogatories posed by Ameranth relate to issues that Ameranth knew or should have known about before its review.  Ameranth's failure to find information that it now seeks should not lead to further expense and burden for QuikOrder.

1.   The Burden of Deriving the Information is Substantially the Same for QuikOrder as for Ameranth.

Ameranth asserts two arguments as to why it believes QuikOrder's invocation of Rule 33(d) in response to interrogatory numbers 1, 2, and 4 is inappropriate.   First, Ameranth argues that the burden of extracting the information sought is not substantially the same for both parties.  In support of this argument, Ameranth contends that it is not as familiar with QuikOrder's

14

1   source code organization as QuikOrder is itself.  While this assertion is correct, it

2   is insufficient to demonstrate that QuikOrder's invocation of Rule 33(d) was

3   improper.  If Ameranth's position were correct, FRCP 33(d) would be essentially

4   meaningless, since the propounding party would almost always be less familiar

5   with the responding party's documents or electronic information.

6       The Northern District of California expressly rejected Ameranth's argument

7   in *Digital Reg of Texas, LLC v. Adobe Systems Incorporated*, No. CV 12-01971-

8   CW (KAW), 2013 WL 3361241 (N.D. Cal. July 3, 2013).  There, the plaintiff

9   reviewed the defendant's source code on two consecutive days.  *Id.* at *4.

10  Thereafter, the plaintiff served interrogatories on the defendant, seeking "a

11  detailed description" of how the product interacted with the plaintiff's patent, as

12  well as the specific source code that related to the process, and any related

13  software documentation.  *Id.* at *5.  The defendant invoked Rule 33(d), arguing

14  that it had fully responded to the interrogatories by making its source code

15  available to the plaintiff.  *Id.* at *5-6.  The plaintiff argued that this was

16  insufficient, as it could spend "hundreds of hours reviewing the code and not

17  accomplish a reasonable infringement analysis based upon the materials provided

18  by [the defendant]."  *Id.* at *5.  The Northern District rejected this argument,

19  noting that "discovery by its very nature is burdensome, and that especially holds

20  true for patent cases."  *Id.* at *6.  Therefore, the court determined that the

21  defendant's source code production was sufficient, and that it did not need to

22  supplement its responses.  *Id.*

23      As was the case in *Digital Reg*, QuikOrder has made its source code

24  available to Ameranth for extensive review—indeed, it has been reviewed on six

25  separate occasions, by three different experts.  Ameranth has had more than ample

26  opportunity to locate the information Ameranth now wants QuikOrder to gather.

27  The fact that Ameranth may take a long time to locate the responsive information

28  is not dispositive.  QuikOrder also cannot quickly locate the information

15

Ameranth seeks.  *See* Asher Decl. ¶ 3.  QuikOrder does not have access to any summary document containing the information Ameranth is requesting.  Rather, QuikOrder would have to spend a significant amount of time searching through the source code Ameranth has already reviewed in order to gather responsive information.  *Id.* at ¶¶ 4-6.  As such, Ameranth's burden is no greater than QuikOrder's in searching for the responsive information.

2.    <u>QuikOrder Provided Ameranth With Sufficient Detail to Locate the Responsive Information</u>.

Ameranth also argues that by referring to "source code and related materials," QuikOrder did not satisfy the "sufficient detail" requirement of Rule 33(d).  This argument is unavailing.  QuikOrder is not required to tell Ameranth exactly where the requested information is within the source code.  QuikOrder should not be forced to locate the responsive information for Ameranth when Ameranth has access to the same source code.  Rather, FRCP 33(d) only requires QuikOrder to specify the responsive records "in sufficient detail to enable the interrogating party to locate and identify them *as readily as the responding party could*."  (emphasis added).

QuikOrder has done so by providing Ameranth with multiple opportunities to review the source code, including providing the source code in its native format as requested by Ameranth, which contains all the information Ameranth seeks.  Further, QuikOrder preserved the original file names and folder structures in the source code reviewed by Ameranth.  These file and folder names are largely descriptive of their contents.  For QuikOrder to provide Ameranth with the requested information, QuikOrder would have to search through the source code in the same manner that Ameranth would.  Therefore, QuikOrder has properly provided Ameranth with sufficient detail to enable it to locate the responsive information as readily as QuikOrder itself could.

16

3.  Amaranth's Interrogatory Number 1 Seeks Categories of Files Relating to Disputed Claim Terms.

In its interrogatory number 1, Amaranth seeks the name and purpose of all projects in the source code for the QuikOrder online and mobile food ordering system that correspond to web services; web pages; application programming interfaces; menu creation data synchronization; integration with third-party applications; communication services; business layers; application services; data services; databases; and clients.  While Amaranth purports to limit the categories of files for which QuikOrder is being asked to "state the name and purpose of," these categories are unhelpful because they include disputed claim terms, e.g. "menu creation," "data synchronization," and "integration."  The parties have not yet exchanged their proposed claim constructions in this matter, and the claim construction hearing is scheduled for March 27, 2014. *See* Scheduling Order [D.I. 346].  Therefore, it is impossible for the parties to know what these terms mean at this time.

With these categories, Amaranth is asking QuikOrder to determine which files fulfill these as yet, unconstrued claim terms.  Moreover, depending on how the court construes these terms, it may be that many or most of the source code files involve those functions in some way, and therefore the categories do not actually limit the number of files for which QuikOrder would need to "state the name and purpose of" in order to respond to Amaranth's interrogatory No. 1.

**B.  If this Court Grants Amaranth's Motion to Compel, it Should Not Allow Amaranth to Conduct any Additional Review of QuikOrder's Source Code.**

QuikOrder has gone out of its way to accommodate Amaranth by allowing Amaranth and its experts to review the source code on six separate occasions.  Because of the sensitivity of the source code to QuikOrder's business, QuikOrder has taken steps at its own expense to produce the source code for inspection to Amaranth.  If the Court is inclined to compel QuikOrder to respond further to

Ameranth's interrogatories, it should correspondingly deny Ameranth future opportunities to review the source code. If Ameranth requires QuikOrder's assistance to extract information from its source code, then it has no reason to conduct additional reviews. Moreover, the Court should order Ameranth to bear the cost for QuikOrder to review the source code.

### IV.   QUIKORDER'S RESPONSE TO AMERANTH'S POSITION

### A.   Ameranth's Arguments are Not Tailored to QuikOrder's Source Code.

Ameranth fails to address arguments pertaining specifically to QuikOrder's source code. As discussed, Ameranth has reviewed QuikOrder's source code on six separate days, with three different experts. However, in its portion of the joint motion, Ameranth provides no explanation for why it could not have identified the information it now seeks during the multiple reviews of QuikOrder's source code. Ameranth's own declaration suggests that Ameranth did not even try to locate the information it wants QuikOrder to gather during the multiple reviews of QuikOrder's source code. Ameranth's expert consultant acknowledged that he simply conducted an inventory of QuikOrder's source code. [Declaration of Michel Cardinal, 1:21-23]. Mr. Cardinal does not state that he would have been unable to locate the information Ameranth seeks had he attempted to do so. His declaration says nothing about the complexity of QuikOrder's source code, or any inability to decipher the source code. Nor does he offer any explanation for why it would be less burdensome for QuikOrder to locate this information than Ameranth. Further, Mr. Cardinal was not Ameranth's only expert to review QuikOrder's source code. Ameranth fails to explain why none of its three experts even attempted to locate the information it seeks in its interrogatories, or why they could not have done so if they had tried. Instead, Ameranth seeks to rely solely on the volume of the source code it would have to review as the basis for its motion.

As the Northern District of California concluded in *Digital Reg*, reliance on the mere volume of data is not enough to overcome a responding party's

invocation of FRCP 33(d). *Digital Reg*, 2013 WL 3361241 at *6. There*,* when considering whether the defendant's invocation of FRCP 33(d) was appropriate, the district court noted that plaintiff "[did] not claim that it [was] unable to decipher the code provided," only that it could spend "hundreds of hours" reviewing the code and not accomplish a reasonable infringement analysis. *Id.* at *5. Therefore, the district court concluded that the defendant's source code production was sufficient. *Id.* at *6. The same is true here. Ameranth does not argue that it cannot decipher QuikOrder's source code. Instead, it simply relies on the volume of data it would have to review to support its position that QuikOrder improperly invoked FRCP 33(d). QuikOrder should not be forced to do Ameranth's work when Ameranth made no effort to gather the information itself.

Moreover, Ameranth's reliance on Defendant GrubHub, Inc.'s ("GrubHub") responses to Ameranth's interrogatories in support of its position is irrelevant. A responding party may invoke FRCP 33(d) where the burden of deriving or ascertaining the answer to a discovery request is substantially the same for both parties. The relevant question is whether the burden of locating information responsive to Ameranth's interrogatories to QuikOrder regarding QuikOrder's source code is substantially the same for QuikOrder as for Ameranth. GrubHub's ability to locate information responsive to Ameranth's interrogatories is completely irrelevant to Ameranth's discovery dispute with QuikOrder.

**B.**   **Ameranth's Assertion That it Cannot Ascertain Responsive Information Without Substantial Burden is Not Determinative.**

Ameranth discusses at length the amount of time it would take Ameranth to locate responsive information to its interrogatory numbers 1, 2, and 4. However, QuikOrder is not required to locate the information for Ameranth simply because it would be burdensome for Ameranth to do so. Rather, Ameranth must demonstrate that the burden of ascertaining the requested information is not "substantially the same" for both Ameranth and QuikOrder. It has failed to do so.

19

As discussed, QuikOrder cannot easily locate and gather the information Ameranth seeks.  QuikOrder does not have access to any summary document containing that information, and QuikOrder would have to spend a significant amount of time searching through its source code to gather responsive information.  Thus, the burden of locating responsive information is "substantially similar" for both parties, and QuikOrder properly invoked FRCP 33(d).

## C.   **QuikOrder Does Not Need to Respond to Ameranth's Interrogatories to Prove that it Produced all Relevant Source Code.**

In his declaration, Ameranth's expert Michel Cardinal states that accurate responses to Ameranth's interrogatories are necessary to enable Ameranth to determine whether QuikOrder produced all relevant source code.  It is not.  QuikOrder has already told Ameranth that it produced all relevant source code, and has done so.  Ameranth does not need responses to its interrogatories to make that determination.   Moreover, Ameranth copied the source code's directory structure during its review of QuikOrder's source code and requested printouts of that source code.  QuikOrder will produce the requested printouts of source code files as part of its production to Ameranth.  If Ameranth somehow needs additional confirmation that QuikOrder produced all relevant source code, Ameranth's review of the directory structure will provide that confirmation.

## V.   **CONCLUSION**

For the reasons set forth herein, the Court should resolve Ameranth's motion to compel by entering an order denying the motion on the grounds that QuikOrder properly invoked FRCP 33(d) in response to Ameranth's interrogatory numbers 1, 2, and 4.

20

1

Dated: August 13, 2013                    CALDARELLI HEJMANOWSKI & PAGE
                                           LLP
2

3                                          By: _/s/ William J. Caldarelli_____
                                               William J. Caldarelli
4

5                                          WATTS LAW OFFICES
                                           Ethan M. Watts
6

7                                          FABIANO LAW FIRM, P.C.
                                           Michael D. Fabiano
8

9                                          OSBORNE LAW LLC
                                           John W. Osborne
10                                         **Attorneys for Plaintiff Ameranth, Inc.**

11

12   Dated: August 13, 2013                SCHIFF HARDIN LLP

13                                         By: _/s/ George C. Yu_____
                                               George C. Yu
14
                                           **Attorneys for Defendant QuikOrder,**
15                                         **Inc.**

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## JOINT STATEMENT

The accompanying motion concerns three interrogatories propounded by Ameranth seeking additional information regarding the portions of source code produced by QuikOrder and the corresponding objections and responses from QuikOrder.

## INTERROGATORY NO. 1:

Please state the name and purpose (sometimes referred to as "definition") of all projects (sometimes also referred to as "solutions"— i.e., logical groupings of code or applications designed to fulfill a particular function) in the source code for the QuikOrder online and mobile food ordering system accused of infringement in this matter (the "Accused System") that correspond to any of the following: web services; web pages; application programming interfaces; menu creation; data synchronization; integration with third-party applications; communication services; business layers; application services; data services; databases; and clients (such as iPhone, iPad, Android, Windows Phone, Blackberry, and desktop and mobile web browser sites) (hereinafter, the "Source Code Projects").

## RESPONSE TO INTERROGATORY NO. 1:

QuikOrder objects that the term "Accused System" as defined by Ameranth renders the interrogatory vague, ambiguous, and unintelligible. QuikOrder cannot reasonably provide a response to the interrogatory without knowing what QuikOrder products or services are referred to by the Interrogatory. If Ameranth does not limit this Interrogatory to the products or systems and specific aspects or functionality specifically identified in Ameranth's Patent L.R. 3.1 infringement contentions, then the Interrogatory is overly broad, unduly burdensome, and calls for information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Similarly, if Ameranth seeks information regarding products or services and aspects or functionality that are clearly outside

the scope of the asserted patent claims, then the Interrogatory is overly broad, unduly burdensome, and calls for information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. QuikOrder may be able to provide additional information in response to this Interrogatory once Ameranth properly identifies the QuikOrder products or services and specific aspects or functionality that are accused in this action in its Patent L.R. 3.1 infringement contentions. QuikOrder will supplement this response, if appropriate, once Ameranth properly identifies the accused products or services and relevant aspects or functionality.

QuikOrder further objects to this interrogatory as overbroad and unduly burdensome to the extent it calls for the name and purpose of "all projects" in the source code for the QuikOrder online and mobile food ordering system, and to the extent it is not limited to a relevant time period. QuikOrder further objects to this interrogatory as vague, ambiguous and overbroad, particularly as to the terms "purpose", "projects", "Source Code Projects", "web services", "web pages", "application programming interfaces", "menu creation", "data synchronization", integration with third-party applications", "communication services", "business layers", "application services", "data services", "databases", and "clients." QuikOrder further objects to the extent this Interrogatory seeks information outside its possession, custody, and control. QuikOrder further objects to this Interrogatory as unduly burdensome to the extent some or all of the requested information is accessible to Ameranth through QuikOrder's publicly accessible website or mobile applications. QuikOrder objects to this Interrogatory insofar as it seeks disclosure of experts or expert reports or opinions in advance of the timing provided by the rules and orders of the Court. QuikOrder further objects to this Interrogatory on the grounds that it prematurely seeks QuikOrder's claim construction position. QuikOrder's response shall not be construed as an admission regarding the construction of certain terms in the asserted patents.

2

QuikOrder further objects to this Interrogatory on the grounds that it is premature in that it seeks discovery of information relating to source code and related materials called for by the Court's Scheduling Order [Doc. No. 346] prior to the deadline set forth therein.

Subject to, limited by, and without waiving the forgoing General and specific objections, QuikOrder responds as follows:

Pursuant to Fed. R. Civ. P. 33(d) and the Court's Scheduling Order [Doc. No. 346], QuikOrder has made available for inspection for six days and or produced relevant source code and related materials having information responsive to this Interrogatory, if they exist and are in QuikOrder's possession, custody, or control, by the deadline set forth in the Scheduling Order.

**PLAINTIFF'S REASON TO COMPEL FURTHER RESPONSES TO INTERROGATORY NO. 1**

Ameranth needs to confirm that QuikOrder has produced all of its relevant source code projects and needs basic information about the source code projects corresponding to relevant functions to analyze the code effectively and efficiently. QuikOrder has not produced its entire source code tree, nor has it produced any comprehensive index to the relevant source code projects, or even to the portions of source code it has produced.  Therefore, Ameranth cannot be certain it has received each of QuikOrder's source code projects which show the operation of the aspects of QuikOrder's system identified in Ameranth's PLR 3.1(c) charts. Also, it is arduous, time consuming and expensive for outsiders, like Ameranth's software consultants in this case, to review each voluminous source code project – taken out of its structural context and without the presence of the affected databases – and to discern its function.  Ameranth needs an index or "road map" of the relevant portions of QuikOrder's source code to review and analyze that source code effectively and efficiently.  Because it is relatively much easier for

QuikOrder's own software engineers to describe the purpose of the specified source code projects, Ameranth propounded interrogatory No. 1.

In its unverified responses, QuikOrder has asserted that it does not have to answer interrogatory No. 1 under Federal Rule of Civil Procedure 33(d) because QuikOrder has produced portions of its source code. But QuikOrder has not invoked Rule 33(d) properly because QuikOrder has not provided the necessary specific reference to the code it has produced from which such answers supposedly can be derived and because QuikOrder is infinitely more familiar with its own code than Ameranth's source code consultants. Ameranth is entitled to the descriptive information it has requested.

**DEFENDANT'S BASIS FOR OBJECTIONS TO INTERROGATORY NO 1.**

The burden of deriving or ascertaining the answer to this interrogatory is substantially the same for both parties. At the time Ameranth served its interrogatories to QuikOrder, Ameranth had reviewed QuikOrder's source code on six separate days, employing three different experts. QuikOrder does not have access to any summary document containing the information that Ameranth is requesting in this interrogatory. Rather, QuikOrder would have to search through the source code that has already been made available to Ameranth in order to respond to this interrogatory. As such, Ameranth's burden is no greater than QuikOrder's in responding to this interrogatory, and QuikOrder properly invoked Federal Rule of Civil Procedure 33(d) in response to this interrogatory.

**INTERROGATORY NO. 2:**

Please identify the specific location (i.e., specific directory tree, directory, file, folder, etc.) at which each Source Code Project for the Accused System resides in the normal course of Responding Party's business.

**RESPONSE TO INTERROGATORY NO. 2:**

See "General Objections," set forth in response to Interrogatory No. 1, above.

4

QuikOrder objects that the term "Accused System" as defined by Ameranth renders the Interrogatory vague, ambiguous, and unintelligible. QuikOrder cannot reasonably provide a response to the Interrogatory without knowing what QuikOrder products or services are referred to by the Interrogatory. If Ameranth does not limit this Interrogatory to the products or systems and specific aspects or functionality specifically identified in Ameranth's Patent L.R. 3.1 infringement contentions, then the Interrogatory is overly broad, unduly burdensome, and calls for information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Similarly, if Ameranth seeks information regarding products or services and aspects or functionality that are clearly outside the scope of the asserted patent claims, then the Interrogatory is overly broad, unduly burdensome, and calls for information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. QuikOrder may be able to provide additional information in response to this Interrogatory once Ameranth properly identifies the QuikOrder products or services and specific aspects or functionality that are accused in this action in its Patent L.R. 3.1 infringement contentions. QuikOrder will supplement this response, if appropriate, once Ameranth properly identifies the accused products or services and relevant aspects or functionality.

QuikOrder objects to this Interrogatory as overbroad and unduly burdensome to the extent it calls for "the specific location" at which "each Source Code Project for the Accused System resides," and to the extent it is not limited to a relevant time period. QuikOrder objects to this Interrogatory as vague, ambiguous and overbroad, particularly to the term "Source Code Project." QuikOrder further objects to this Interrogatory because the "specific location" at which certain source code files reside in the normal course of business is neither relevant to the issues in this case nor is it reasonably calculated to lead to the discovery of admissible evidence. QuikOrder further objects to this Interrogatory

on the grounds that it is premature in that it seeks discovery of information relating to source code and related materials called for by the Court's Scheduling Order [Doc. No. 346] prior to the deadline set forth therein.

Subject to, limited by, and without waiving the forgoing General and specific objections, QuikOrder responds as follows:

Pursuant to Fed. R. Civ. P. 33(d) and the Court's Scheduling Order [Doc. No. 346], QuikOrder has made available for inspection for six days and or produced relevant source code and related materials having information responsive to this Interrogatory, if they exist and are in QuikOrder's possession, custody, or control, by the deadline set forth in the Scheduling Order.

**PLAINTIFF'S REASON TO COMPEL FURTHER RESPONSES TO INTERROGATORY NO. 2.**

QuikOrder has not produced its entire source code tree, nor has it produced any comprehensive index to the source code projects corresponding to relevant functions in the QuikOrder system, or even to the portions of source code it has produced.  Therefore, Ameranth cannot be certain it has received each of QuikOrder's source code projects which show the operation of the aspects of QuikOrder's system identified in Ameranth's PLR 3.1(c) charts.  Ameranth needs that information for several reasons, including finalizing its infringement contentions and analysis.  Also, it is arduous, time consuming and expensive for outsiders, like Ameranth's software engineering consultants in this case, to review each voluminous source code project – taken out of its structural context and without the presence of the affected databases – and to discern how the various projects interact with each other.  Ameranth needs an index or "road map" of the portions QuikOrder's source code corresponding to the relevant functionality detailing where each source code project can found, which will enable Ameranth to review and analyze that source code effectively and efficiently.  Because it is relatively much easier for QuikOrder's own software engineers to identify the

6

location of the specified source code projects, Ameranth propounded interrogatory No. 2.  As set forth above, QuikOrder misplaces reliance under Federal Rule of Civil Procedure 33(d) in this context.  Ameranth is entitled to the organizational information it has requested.

**DEFENDANT'S BASIS FOR OBJECTIONS TO INTERROGATORY NO. 2.**

The burden of deriving or ascertaining the answer to this interrogatory is substantially the same for both parties.  At the time Ameranth served its interrogatories to QuikOrder, Ameranth had reviewed QuikOrder's source code on six separate days, employing three different experts.  QuikOrder does not have access to any summary document containing the information that Ameranth is requesting in this interrogatory.  Rather, QuikOrder would have to search through the source code that has already been made available to Ameranth in order to respond to this interrogatory.  As such, Ameranth's burden is no greater than QuikOrder's in responding to this interrogatory, and QuikOrder properly invoked Federal Rule of Civil Procedure 33(d) in response to this interrogatory.

**INTERROGATORY NO. 4:**

Please identify all databases (by name, type, version, dates of use and corresponding database applications, management systems and associated tools used with each such database) that has been used in connection with the commercial operation of the Accused System.

**RESPONSE TO INTERROGATORY NO. 4:**

See "General Objections," set forth in response to Interrogatory No. 1, above.

QuikOrder objects that the term "Accused System" as defined by Ameranth renders the Interrogatory vague, ambiguous, and unintelligible. QuikOrder cannot reasonably provide response to the Interrogatory without knowing what QuikOrder products or services are referred to by the Interrogatory. If Ameranth

7

does not limit this Interrogatory to the products or systems and specific aspects or functionality specifically identified in Ameranth's Patent L.R. 3.1 infringement contentions, then the Interrogatory is overly broad, unduly burdensome, and calls for information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. Similarly, if Ameranth seeks information regarding products or services and aspects or functionality that are clearly outside the scope of the asserted patent claims, then the Interrogatory is overly broad, unduly burdensome, and calls for information that is neither relevant nor reasonably likely to lead to the discovery of admissible evidence. QuikOrder may be able to provide additional information in response to this Interrogatory once Ameranth properly identifies the QuikOrder products or services and specific aspects or functionality that are accused in this action in its Patent L.R. 3.1 infringement conditions. QuikOrder will supplement this response, if appropriate, once Ameranth properly identifies the accused products or services and relevant aspects or functionality.

QuikOrder objects to this Interrogatory as overbroad and unduly burdensome to the extent it calls for "all databases" that have been used in connection with the commercial operation of the Accused System, and to the extent it is not limited to a relevant time period. QuikOrder objects to this Interrogatory as vague, ambiguous and overbroad, particularly as to the terms "corresponding database applications", "associated tools", "used in connection with", and "commercial operation." QuikOrder further objects to the extent this Interrogatory seeks information outside its possession, custody, and control. QuikOrder further objects to this Interrogatory on the grounds that it prematurely seeks QuikOrder's claim construction position.

Subject to, limited by, and without waiving the forgoing General and specific objections QuikOrder responds as follows:

1       Pursuant to Fed. R. Civ. P. 33(d) and the Court's Scheduling Order [Doc.

2   No. 346], QuikOrder has made available for inspection for six days and or

3   produced relevant source code and related materials having information

4   responsive to this Interrogatory, if they exist and are in QuikOrder's possession,

5   custody, or control, by the deadline set forth in the Scheduling Order.

6   **PLAINTIFF'S REASON TO COMPEL FURTHER RESPONSES TO**

7   **INTERROGATORY NO. 4.**

8       QuikOrder has produced portions of its source code, but that production is

9   devoid of the databases themselves.  Additionally, source code files that one

10  would typically anticipate finding, such as SQL files linking to databases, were

11  not found in QuikOrder's source code production.  It is difficult, and perhaps

12  impossible, for Ameranth's software consultants to comprehend fully the portions

13  of QuikOrder's source code that have been produced without reviewing the

14  databases accessed by the source code, or at least reviewing identifying

15  information regarding all of those databases.  Ameranth has adopted the latter,

16  less-invasive process and requested identifying information regarding the

17  databases accessed by QuikOrder's source code.  Ameranth is entitled to the

18  descriptive information it has requested.  QuikOrder's unverified response

19  improperly attempts to invoke Rule 33(d) because, among other reasons, it fails to

20  identify any specific records from which the responsive information can be

21  derived, it has not produced sufficient information concerning its databases, and

22  the burden of deriving such information from any such records is substantially

23  higher for Ameranth than for QuikOrder.

24  **DEFENDANT'S BASIS FOR OBJECTIONS TO INTERROGATORY NO.**

25  **4.**

26      The burden of deriving or ascertaining the answer to this interrogatory is

27  substantially the same for both parties.  At the time Ameranth served its

28  interrogatories to QuikOrder, Ameranth had reviewed QuikOrder's source code on

9

1  six separate days, employing three different experts.  QuikOrder does not have

2  access to any summary document containing the information that Ameranth is

3  requesting in this interrogatory.  Rather, QuikOrder would have to search through

4  the source code that has already been made available to Ameranth in order to

5  respond to this interrogatory.  As such, Ameranth's burden is no greater than

6  QuikOrder's in responding to this interrogatory, and QuikOrder properly invoked

7  Federal Rule of Civil Procedure 33(d) in response to this interrogatory.

8

9  Dated: August 13, 2013                   CALDARELLI HEJMANOWSKI & PAGE
                                            LLP
10

11                                          By:  */s/ William J. Caldarelli*
                                                William J. Caldarelli
12

13                                          WATTS LAW OFFICES
                                            Ethan M. Watts
14

15                                          FABIANO LAW FIRM, P.C.
                                            Michael D. Fabiano
16

17                                          OSBORNE LAW LLC
                                            John W. Osborne
18                                          **Attorneys for Plaintiff Ameranth, Inc.**

19

20  Dated: August 13, 2013                   SCHIFF HARDIN LLP

21

22                                          By:  */s/ George C. Yu*
                                                George C. Yu
23                                          **Attorneys for Defendant QuikOrder,
                                            Inc.**

24

25

26

27

28