**CALDARELLI HEJMANOWSKI & PAGE LLP**
William J. Caldarelli (SBN #149573)
Ben West (SBN #251018)
12340 El Camino Real, Suite 430
San Diego, CA  92130
Telephone: (858) 720-8080
Facsimile: (858) 720-6680
wjc@chplawfirm.com
dbw@chplawfirm.com

**FABIANO LAW FIRM, P.C.**
Michael D. Fabiano (SBN #167058)
12526 High Bluff Drive, Suite 300
San Diego, CA  92130
Telephone: (619) 742-9631
mdfabiano@fabianolawfirm.com

**OSBORNE LAW LLC**
John W. Osborne *(Appointed Pro Hac Vice)*
33 Habitat Lane
Cortlandt Manor, NY 10567
Telephone: (914) 714-5936
josborne@osborneipl.com

**WATTS LAW OFFICES**
Ethan M. Watts (SBN #234441)
12340 El Camino Real, Suite 430
San Diego, CA  92130
Telephone: (858) 509-0808
Facsimile: (619) 878-5784
emw@ewattslaw.com

Attorneys for Plaintiff Ameranth, Inc.


/ / /
/ / /
/ / /

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS                                    Case No. 11-CV-1810 WQH (WVG)**

JOHN A. O'MALLEY (BAR NO. 101181)
**FULBRIGHT & JAWORSKI LLP**
555 South Flower Street
Forty-First Floor
Los Angeles, California  90071
Telephone:   (213) 892-9200
Facsimile:    (213) 892-9494
john.omalley@nortonrosefulbright.com

DAN D. DAVISON (*admitted pro hac vice*)
MARC L. DELFLACHE (*admitted pro hac vice*)
**FULBRIGHT & JAWORSKI LLP**
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone:   (214) 855-8000
Facsimile:    (214) 855-8200
dan.davison@nortonrosefulbright.com

RICHARD S. ZEMBEK (*admitted pro hac vice*)
**FULBRIGHT & JAWORSKI LLP**
1301 McKinney, Suite 5100
Houston, Texas 77010
Telephone:   (713) 651-5151
Facsimile:    (713) 651-5246
richard.zembek@nortonrosefulbright.com

Lead Attorneys for Defendants
Papa John's USA, Inc., Wanderspot, Expedia,
Hotels.com, Hotel Tonight, Hotwire, Kayak, Orbitz, Travelocity, Fandango,
StubHub, Ticketmaster, Live Nation and Micros

And Liaison Attorneys for Defendants
Pizza Hut, Domino's, QuikOrder, GrubHub, O-Web, Seamless, Mobo,
OpenTable, Best Western, Hilton, Hyatt, Marriott, Starwood, Agilysys, ATX,
and Usablenet

*/ / /*

JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS                                Case No. 11-CV-1810 WQH (WVG)

1

2

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERANTH, INC., | CASE NOS. 11-cv-1810 WQH (WVG), 12-cv-742 WQH (WVG), 12-cv-739 WQH (WVG), 12-cv-737 WQH (WVG), 12-cv-733 WQH (WVG), 12-cv-732 WQH (WVG), 12-cv-731 WQH (WVG), 12-cv-729 WQH (WVG), 12-cv-858 WQH (WVG), 12-cv-1659 WQH (WVG), 12-cv-1656 WQH (WVG), 12-cv-1655, WQH (WVG), 12-cv-1654 WQH (WVG), 12-cv-1653 WQH (WVG), 12-cv-1652 WQH (WVG), 12-cv-1651 WQH (WVG), 12-cv-1650 WQH (WVG), 12-cv-1649 WQH (WVG), 12-cv-1648 WQH (WVG), 12-cv-1646 WQH (WVG), 12-cv-1644 WQH (WVG), 12-cv-1643 WQH (WVG), 12-cv-1642 WQH (WVG), 12-cv-1640 WQH (WVG), 12-cv-1636 WQH (WVG), 12-cv-1634 WQH (WVG), 12-cv-1633 WQH (WVG), 12-cv-1631 WQH (WVG), 12-cv-1630 WQH (WVG), 12-cv-1629 WQH (WVG), and 12-cv-1627 WQH (WVG) |
| Plaintiff, | |
| v. | |
| PIZZA HUT, INC., ET AL., | |
| Defendants. | |
| | **JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT CONTENTIONS [Doc. No. 432]** |
| | **[ORAL ARGUMENT REQUESTED BY PLAINTIFF]** |
| AND RELATED CASES. | |

/ / /

# <u>TABLE OF CONTENTS</u>

**Page**

AMERANTH'S POSITION..................................................................................1

AMERANTH'S PROPOSED SCHEDULE......................................................1

DISCUSSION...................................................................................................4

    A.    A "Reverse Engineering" Specificity Standard Requires Access
          To The Accused Infringer's Technical Information.......................4

    B.    Ameranth Has Timely Sought Discovery of the Materials
          Required to Produce ICs Meeting the Court's Articulated
          Specificity Standard, and the Defendants Must Be Required
          to Produce and Provide Such Materials.......................................11

    C.    Ameranth's Proposal Should Be Adopted By The Court
          Because It Best Preserves the Existing Case Management
          Schedule, Is Consistent With the Parties' Legal Obligations
          And Is Most Realistic And Fair.....................................................20

    D.    Ameranth Should Not Be Required To Amend Its ICs For
          the Defendants Who Did Not Timely Challenge The ICs
          Within the Court's 45 Day Deadline Or Obtain An Extension
          For Such Challenge.......................................................................21

CONCLUSION................................................................................................22

DEFENDANTS' POSITION ...........................................................................24

  I.  ISSUES TO BE DECIDED.....................................................................24

  II. INTRODUCTION...................................................................................24

  III.Argument...............................................................................................29

        A. Ameranth must <u>first</u> comply with the Patent Local Rules in
           order to permit Defendants to satisfy their corresponding
           obligations...................................................................................30

i

B.  Ameranth is not relieved of its obligations to provide infringement contentions that comply with the requirements of Patent Local Rule 3-1, simply because this case implicates software ........................................................................................33

IV.     Ameranth is required to supplement is ICs to all Defendants ...........36

V.  Conclusion.................................................................................................38

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT CONTENTIONS          Case No. 11-CV-1810 WQH (WVG)**

# TABLE OF AUTHORITIES

**Page**

## Cases

American Video Graphics, L.P. v. Electronic Arts, Inc.,
    359 F.Supp. 2d 558 (E.D. Tex. 2005) ........................................................8

Anticancer, Inc. v. Cambridge Research,
    Case No. 07-cv-0097 (S.D. Cal., May 14, 2008) ........................................5

Anticancer, Inc. v. Pfizer, Inc.,
    Case No. 11-cv-107 (S.D. Cal. 2012) ........................................................5

Apple v. Samsung,
    2013 WL 3246094, *3 (N.D. Cal. 2013).....................................................7

Bender v. Maxim Integrated Prods., Inc.,
    2010 WL 1135762 (N.D. Cal. 2010).....................................................28, 33

Big Baboon Corp. v. Dell, Inc.,
    723 F. Supp. 2d 1224 (C.D. Cal. 2010)....................................................35

CSR Technology, Inc. v. Freescale Semiconductor,
    2013 WL 503077, *6-7 (N.D. Cal. 2013) ...................................7, 8, 19, 23

DDR Holdings, LLC v. Hotels.com, L.P.,
    2012 WL 2935172 *2 (E.D. Tex 2012) ...................................................16

Dr. Systems v. Fujifilm Medical Systems USA, Inc.,
    70 Fed.R. Serv. 3d 348, 2008 WL 1734241 *3 (S.D. Cal. 2008)............16

France Telecom, SA v. Marvell Semiconductor, Inc.,
    2013 WL 1878912, *4 (N.D. Cal. 2013).....................................................7

Gen-Probe Inc. v. Becton, Dickinson and Co.,
    2010 WL 2011526 *3 (S.D. Cal. 2010) ...................................................16

GN Resound A/S v. Callpod, Inc.,
    2013 WL 1190651 (N.D. Cal. 2013)...........................................................6

Implicit Networks v. Hewlett-Packard Co.,
    2011 WL 3954809 (N.D. Cal. 2011)...................................16, 17, 28, 33

iii

Infineon Techs. v. Volterra Semiconductor,
    2012 WL 4808445 (N.D. Cal. 2012)........................................16, 17, 28, 33

Intertrust Tech. Corp. v. Microsoft,
    2003 WL 23120174 (N.D. Cal 2003)..............................................................5

Linex Techs. Inc. v. Belkin Int'l, Inc.,
    628 F. Supp. 2d 703 (E.D. Tex. 2008)................................................................

Nesscap Co., Ltd. v. Maxwell Tech., Inc.,
    2008 WL 152147, *3 (S.D. Cal. 2008) ..................................................6, 15

Network Caching Tech. LLC v. Novell, Inc.,
    2002 WL 32126128 (N.D. Cal. 2002)...........................................................8

O2 Micro Int'l, Ltd. v. Monolithic Power Sys.,
    467 F.3d 1355 (Fed. Cir. 2006) ........................................................................

Prism Technologies v. Research in Motion, Ltd.,
    2010 WL 1254940, *3 (D. Neb. 2010) .........................................................9

Tessendro Kerley, Inc. v. OR-Cal, Inc.,
    2012 WL 1253178 (N.D. Cal. 2012)..............................................................6

WebSideStory, Inc. v. NetRatings, Inc.,
    2007 WL 1109597 *2 (S.D. Cal. 2007) .......................................................16

Zest IP Holdings, LLC v. Implant Direct Mfg, LLC,
    2013 WL 1626111 (S.D. Cal. April 15, 2013)................................4, 5, 29

**Other**

Fed. R. Civ. Proc. 16(b)(4) .............................................................................2, 21

Fed. R. Civ. Proc. 33(d) ...............................................................................12, 13

Fed. R. Civ. Proc. 26(e) ....................................................................................37

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS          Case No. 11-CV-1810 WQH (WVG)**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### *AMERANTH'S POSITION*

### AMERANTH'S PROPOSED SCHEDULE

The purpose of this Joint Motion is to address certain questions raised in Judge Stormes' July 26, 2013 Order regarding the infringement contentions ("IC's) Ameranth served on defendants OpenTable, Wanderspot and Best Western [Doc. No. 432].  The Court asked the parties to submit proposals regarding a schedule for Ameranth to serve amended ICs on those three defendants, and to address what other ICs, if any, should be amended and what scheduling order dates, if any, should be modified.  [Doc. No. 432, p. 15]

Ameranth proposes that no substantive changes be made to the current case management schedule [Doc. Nos. 345, 346].  Instead, Ameranth proposes that, for the defendants who timely raised with Ameranth objections to Ameranth's ICs that correspond to one or more of the four the items identified in Judge Stormes' July 26, 2013 Order [Doc. No. 432], Ameranth serve amended ICs meeting the standards articulated in the Order by November 21, 2013, the date on which any amendments to the ICs are currently due under the Court's Scheduling Order [Doc. No. 346, ¶7] and Patent Local Rule ("PLR") 3.6a[1].

Ameranth's proposal: (1) best comports with the policy of bringing the cases to claim construction and trial within a reasonable period of time (see PLR 2.1(a)); (2) avoids the wasteful measure of requiring production of "intermediary" ICs prior to the time that defendants produce technical materials and source code in response to Ameranth's discovery requests and PLR 3.4a (under the existing case management schedule, defendants' PLR 3.4a productions are due on September 6, 2013, and Ameranth has until November

---

[1]  Ameranth's proposal is not a concession that the four issues raised in the Court's July 26, 2013 Order necessarily apply to the ICs for any of the defendants other than moving parties Wanderspot, Best Western or OpenTable. Ameranth believes that many of the ICs sufficiently fulfill the requirements of PLR 3.1 contentions.

1

21, 2013, to serve amended ICs); and (3) preserves Ameranth's right under PLR 3.6a and the Court's scheduling orders to serve amended ICs.

In contrast with Ameranth's proposal, which maintains the Court's existing scheduling order, the defendants seek to further delay the case--contrary to the policy of PLR 2.1(a) and without sufficient good cause as required by Fed. R. Civ. Proc. 16(b)(4)—by seeking to delay their PLR 3.4(a) productions and to "stay" Ameranth's discovery efforts.  Defendants also seek to require Ameranth to wastefully produce an "intermediary" set of infringement contentions for over 30 defendants within an incredibly short period of time at significant expense, while concurrently depriving Ameranth of the discovery to which it is entitled.  Defendants do so in order to create a "Catch-22" situation for Ameranth, in which Judge Stormes' newly articulated "reverse engineering" standard cannot reasonably be met because the defendants retain sole possession of the source code and technical materials necessary to meet such a standard.

Importantly, Ameranth's ability to produce amended ICs within the November 21 time frame set forth in the existing case management schedule *is dependent upon the defendants honoring their obligations to comply with Ameranth's discovery requests and to fulfill their requirements under PLR 3.4a.* As discussed herein, the defendants' accused systems and instrumentalities are primarily *non*-publicly available software systems running in secure data centers.  Unlike the accused instrumentalities at issue in the typical patent case, most aspects of the systems accused in this case (other than publicly facing webpages and phone "apps") can be obtained and analyzed *only* through the discovery and disclosure process.   Therefore, in order to comply with the standard of IC specificity articulated by Judge Stormes in the July 26, 2013 Order ("an accusing party must provide the level of detail required to meet the 'reverse engineering or its equivalent' standard. … To comply with this

2

1   standard, the asserting party must explain its theory of how the product infringes

2   the claim element")  [Doc. No. 432, p. 13], the defendants *must* be required to

3   promptly and completely respond to Ameranth's discovery requests, to fully

4   complete their "rolling productions" of documents in response to Ameranth's

5   requests for production (see Doc. No. 422), and to make the productions of

6   technical documents and source code required by PLR 3.4a and section 5a of the

7   Scheduling Order [Doc. 346, ¶5a], along with the tools necessary to effectively

8   review such code.

9          To date, productions of source code and PLR 3.4a technical documents

10   have been made only by the "original" defendants (Pizza Hut, QuikOrder, Papa

11   John's, Domino's, Seamless, GrubHub, OpenTable and OWeb) in connection

12   with the infringement claims asserted in the earlier filed lawsuits, as

13   supplemented since.  All other defendants are scheduled to make their PLR

14   3.4(a) source code and technical material productions on September 6, 2013.

15   Even in connection with the original defendants that have produced source code,

16   Ameranth only recently procured their agreement to install on the review laptops

17   the software tools necessary to review the code in its native format, as required

18   by the Court's February 20, 2013 Order [Doc. No. 342].  Consequently, because

19   of the proprietary and non-public nature of the accused systems, defendants

20   must fully respond to Ameranth's outstanding discovery requests, timely

21   complete their "rolling productions" of documents responsive to Ameranth's

22   requests for production (as ordered by the Court [Doc. No. 422]), and to make

23   complete productions of source code and PLR 3.4a technical documents on the

24   schedule set forth in the Court's Scheduling Order so that Ameranth can produce

25   amended ICs by November 21, 2013 complying with the Judge Stormes'

26   specificity standard and without damaging the case management schedule.

27

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS                    Case No. 11-CV-1810 WQH (WVG)**

1   Alternatively, if the Court will not require the defendants to respond to

2   Ameranth's discovery requests, to produce source code and to comply with the

3   PLR 3.4a production requirements prior to the date by which Ameranth will

4   serve amended ICs, Ameranth requests the Court to articulate a different

5   standard of specificity and disclosure applicable to the defendants who have not

6   made such productions and disclosures, as described herein.

7   **DISCUSSION**

8   A.   **A "Reverse Engineering" Specificity Standard Requires Access
        To The Accused Infringer's Technical Information.**

9   In Zest IP Holdings, LLC v. Implant Direct Mfg. LLC, 2013 WL 1626111

10  (S.D. Cal. April 15, 2013)[Dkt. No. 216], the Hon. Gonzalo P. Curiel of this

11  District interpreted and defined the requirements imposed by PLR 3.1 regarding

12  ICs.  The defendants in Zest, like those in this case, contended that the plaintiff's

13  ICs failed "with sufficient specificity to provide Defendants with adequate

14  notice [of the claim of infringement]" and "fail to explain how each element of

15  the claim is present in the [accused] product." Id at *5.  The District Court

16  rejected the defendants' "how," argument, holding that "Rule 3-1 does not

17  require the patent holder to produce evidence of infringement, but it must map

18  specific elements of Defendants' alleged infringing products onto the Plaintiff's

19  claim construction."  Id.  The Court therefore concluded:

20

21      Here, the Plaintiffs' infringement charts contain both specific
        and illustrative examples of the Defendants' infringement of the
22      asserted claims, and identify each specific element as to which
        the Plaintiffs have a claim. ECF No. 107, Exhibit 10 at 2. The
23      amended infringement contention maps out these claims for
        each element. As such, the Court finds that the amended
24      infringement contention contains sufficient information to put
        Defendants on notice as to each claim. Accordingly, the Court
25      finds that Plaintiffs have stated with sufficient particularity the
        manner in which the new product infringes the patent, thereby
26      satisfying Local Rule 3.1.
27

28

4

1  Id[2].  See also Anticancer, Inc. v. Cambridge Research, Case No. 07-cv-0097

2  (S.D. Cal., May 14, 2008)(J. Sammartino) [Doc. 49] ("Besides the requirement

3  of evidence sufficient to create a triable question of fact on infringement, the law

4  does not require that the PICs contain a particular level of detail or be worded in

5  a particular way."  Id. at 12); Anticancer, Inc. v. Pfizer, Inc., Case No. 11-cv-

6  107 (S.D. Cal. 2012)(J. Sammartino)[Doc. No. 63] ("the Court believes that the

7  appropriate balance requires that the PICs contain 'sufficient specificity to

8  provide defendants with notice of infringement beyond that which is provided

9  by the mere language of the patents themselves,' but need not be so detailed as

10 to transform the PICS into a 'forum for litigation of the substantive issues'").

11       In contrast to the interpretation of PLR 3.1 adopted by Judge Curiel in

12 Zest rejecting the argument that ICs must demonstrate "how" an accused

13 instrumentality infringes asserted patent claims, Judge Stormes held that

14 Ameranth "must identify with specificity where in the accused system the

15 alleged infringement occurs and how the claim elements are met," and must

16 "meet the 'reverse engineering or its equivalent' standard."  [Doc. No. 432]

17       The cases relied upon by Judge Stormes for the "reverse engineering"

18 standard involved markedly different type of accused instrumentalities than

19 those at issue here.  In Intertrust Tech. Corp. v. Microsoft, 2003 WL 23120174

20 (N.D. Cal 2003), the accused product was a security module in Microsoft's

21 publically available software (e.g., Windows) that could be commercially

22 purchased by the plaintiff and "reverse engineered" by its experts.  Likewise, in

23 ─────────────────
   [2] Judge Curiel's interpretation of the PLRs in Zest is consistent with the
24 interpretation applied by Judge Sammartino in her March 26, 2013 Order
   denying Papa John's motion for summary judgment in this case, in which only
25 the existence of claim elements in the accused systems were required to be
   identified, and not an explanation of "how" the accused system practiced the
26 patents' claims.  See Doc. No. 55, p. 12 ("the Court finds that the Amended
   PICs set forth with sufficient specificity that Papa John's practiced this element
27 [the central database].  Ameranth has used publicly available information,
   including excerpts of Papa John's web pages and promotional materials, to point
28 to the existence of a central database").  Emphasis added.
─────────────────
5

1  GN Resound A/S v. Callpod, Inc., 2013 WL 1190651 (N.D. Cal. 2013), the

2  product accused of infringement was a commercially available sound filtering

3  headset that could be purchased, disassembled, and reverse engineered.

4  Similarly, Tessendro Kerley, Inc. v. OR-Cal, Inc., 2012 WL 1253178 (N.D. Cal.

5  2012), involved a publically available sun protectant chemical for crops that

6  could be purchased by the plaintiff and analyzed in a laboratory.

7      As this Court has recognized, "patent local rules generally anticipate that,

8  where feasible, the patentee already has purchased samples of the allegedly

9  infringing product and analyzed them *prior to* filing suit." Nesscap Co., Ltd. v.

10 Maxwell Tech., Inc., 2008 WL 152147, *3 (S.D. Cal. 2008). Where the

11 defendants' accused products/systems are *not* publically available, however,

12 discovery and the defendant's disclosure obligations under PLR 3.4 are *required*

13 to procure the information "which the plaintiff could not obtain before initiating

14 the litigation." Id.

15     The defendants' accused systems here are completely different types of

16 creatures than those described in the cases from which Judge Stormes drew the

17 reverse engineering standard of specificity. The accused systems in this case are

18 large scale enterprise level proprietary software systems. As this Court noted in

19 its February 20, 2013 Order, citing defendants' expert:

20         The e-commerce systems at issue here are complex and involve
21         different types of source code, computer language, hardware
           systems, operating systems, third party interfaces, applications
22         and data under third parties' control. … The e-commerce
           systems identified in the complaints combine proprietary
23         software and data and third party software and data …. [Doc.
24         No. 342, p. 9]

25

26     Likewise, because of the confidential and non-public nature of the

27 defendants' systems, the Court has issued a restrictive Protective Order for such

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS                    Case No. 11-CV-1810 WQH (WVG)**

1    material.  [Doc. No. 323, ¶ 9]  The only "publically accessible" portions of the

2    defendants' accused software systems that Ameranth has access to without

3    discovery and disclosure from the defendants are the "consumer accessible"

4    portions of the systems manifested on public webpages, phone apps, etc. (to

5    which Ameranth has cited in its ICs).  But those are the figurative "tip of the

6    iceberg" for these systems.  Much of the heavy lifting—and much of the

7    infringing functionality—is located and operates in the *non*-public back-end of

8    the software systems, on secure computer servers, in proprietary databases, in

9    confidential source code, etc., to which Ameranth has no access beyond what is

10   produced in discovery.  Under such circumstances, courts recognize and

11   acknowledge a patent infringement plaintiff's right to obtain the defendants'

12   source code and technical materials.

13        The Northern District of California has recognized that, where

14   information about the manner in which an accused system resides in software

15   which is exclusively in the defendants' possession, a plaintiff's ICs cannot be

16   held to a reverse engineering standard and the plaintiff should not be required to

17   identify specifically where each element of each claim is found *beyond stating*

18   *that it resides in the relevant software*.  See CSR Technology, Inc. v. Freescale

19   Semiconductor, 2013 WL 503077, *6-7 (N.D. Cal. 2013) ("As with the previous

20   limitation, Plaintiff contends that certain of the accused features and

21   functionalities of this limitation reside in software …. Because Plaintiff's ICs

22   identify the limitations of the ′886 patent as residing in specific software—

23   which is exclusively in Defendant's possession—the Court finds that Plaintiff's

24   ICs are sufficient for purposes of Rule 3–1(c)").  See also Apple v. Samsung,

25   2013 WL 3246094, *3 (N.D. Cal. 2013)("Parties accordingly need not "prove

26   up" their theories by providing evidence beyond the material they have at the

27   time they make their contentions"); France Telecom, SA v. Marvell

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS                          Case No. 11-CV-1810 WQH (WVG)**

Semiconductor, Inc., 2013 WL 1878912, *4 (N.D. Cal. 2013)(when defendant is in sole possession of information about the accused system, plaintiff satisfies PLR 3.1 by "disclosure of the factual basis for its allegations" with the information currently available to it")(citations omitted).  In distinguishing Network Caching Tech. LLC v. Novell, Inc., 2002 WL 32126128 (N.D. Cal. 2002), the CSR v. Freescale decision explicitly recognized that the reverse engineering standard is ***not*** applicable to software limitations as to which the accused software has not been produced:

> Without analysis, Defendant cites to Network Caching Tech. LLC v. Novell Inc.   In Network Caching, the court held that while reverse engineering was required to meet plaintiff's obligations under Federal Rule of Civil Procedure 11 for non-software limitations, under Rule 3-1(c), the "routines" in the software that carry out the claimed function do not need to be specifically identified because "[t]he only way to pinpoint the specific routine is to analyze the source code, which is solely in the defendants' possession."

CSR v. Freescale, 2013 WL 503077, at *6-7 (citations omitted).

This practice has also been recognized and adopted in the Eastern District of Texas.  For example, several of the judges there have adopted forms of discovery orders that provide:

> **P.R. 3-1(g)**: If a party claiming patent infringement asserts that a claim element is a software limitation, the party need not comply with P.R. 3-1 for those claim elements until 30 days after source code for each Accused Instrumentality is produced by the opposing party. Thereafter, the party claiming patent infringement shall identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements.

See **Exh. 1** (Discovery Order for Patent Cases); **Exh. 2** (Appendix).

As stated in American Video Graphics, L.P. v. Electronic Arts, Inc., 359 F.Supp. 2d 558 (E.D. Tex. 2005):

8

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT CONTENTIONS**             **Case No. 11-CV-1810 WQH (WVG)**

> In non-software patent cases, plaintiffs are usually able to purchase defendants' products and ascertain the mechanics of how those products infringe before plaintiffs bring suit.  But, there are times when plaintiffs' preparation is restricted by defendants' sole possession of the information plaintiffs need. Software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself.  From this manifestation, plaintiffs must somehow divine whether the defendants' code infringes.  Although defendants vigorously and rightly guard their source code, until plaintiffs have access to it, plaintiffs are typically unable to give highly specified infringement contentions.

See also Prism Technologies v. Research in Motion, Ltd., 2010 WL 1254940, *3 (D. Neb. 2010).

Of the three moving parties directly subject to the Court's July 26, 2013 Order [Doc. No. 432], OpenTable, Wanderspot and Best Western, only OpenTable—one of the original defendants—made a production of source code and PLR 3.4a materials (in the earlier phase of the proceedings).  Ameranth was therefore able to include non-public source code citation in its ICs for OpenTable[3], but not for Wanderspot or Best Western (or any of the defendants that have not yet made PLR 3.4 productions).  (Defendants falsely represent to the Court that Ameranth's ICs do not cite to any of the "publicly available" source code from defendants' websites.  That is demonstrably untrue.  For example, Exhibits 47 and 48 to the OpenTable ICs, and Exhibit 57 to the Best Western ICs, comprise source code from the defendants' websites.  Judge

---

[3]  Because it may not have been apparent from a reading of the claim charts, Judge Stormes' Order mistakenly states, on p. 14, that ICs for OpenTable do not cite to any source code.  OpenTable source code (protected by the provisions of the Protective Order) was in fact contained in Exhibits 22-39, 47-48 and 104-109 to ICs and cited to extensively by Ameranth in the claim charts in support of the existence of claim elements in the accused system.

9

1    Stormes may not have appreciated this because the claim charts themselves do

2    not explicitly state that those exhibits contain source code.)

3        Judge Stormes' Order, however, does not set a differential IC standard

4    for a defendant that has produced source code and PLR 3.4a materials (like

5    OpenTable), on one hand, and those that have not done so (such as Wanderspot,

6    Best Western and the other non-original defendants).  Instead, the Order

7    articulates a single "reverse engineering or its equivalent" standard, apparently

8    uniformly requiring Ameranth to "identify with specificity where in the accused

9    systems the alleged infringement occurs and how the claim elements are met"

10   [Doc. No. 432, p. 14], even where such elements are located in source code and

11   non-public PLR 3.4a materials that have not yet been produced to Ameranth.

12   The logical consequence of the Order is that the defendants *must* be required to

13   make their PLR 3.4a productions *before* Ameranth is required to serve amended

14   ICs conforming to this specificity standard.

15        Ameranth is prepared to undertake this task and to produce amended ICs

16   conforming to Judge Stormes' standard if required by the Court.  Ameranth also

17   believes that it can accomplish this by the date currently scheduled for service

18   of amended ICs—November 21, 2013—and thereby *not* require any substantive

19   alteration of the Court's case management schedule.   However, as explained

20   above, because of the confidential, proprietary and non-publicly accessible

21   nature of the defendants' accused software systems, and the fact that none of

22   the "non-original" defendants have made productions of source code or PLR

23   3.4a materials, in order to conform the amended ICs to this standard the

24   *defendants must be required to promptly, fully and meaningfully respond to*

25   *Ameranth's discovery, produce the materials requested in discovery, make their*

26   *source code available for inspection on review computers containing the*

27

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS**        **Case No. 11-CV-1810 WQH (WVG)**

*appropriate native development tools, and make their PLR 3.4a productions as currently scheduled on September 6, 2013* [see Doc. No. 345, ¶ 4F].

Furthermore, it would be inefficient, time consuming, expensive and wasteful to require Ameranth to produce *two* sets of amended ICs—(1) "intermediary" amended IC's produced without benefit of the defendants' discovery responses and PLR 3.4(a) productions of source code and technical materials, and (2) second amended ICs served after production of such materials. The defendants have sufficient information about what their accused systems are to make productions of responsive documents, materials and source code, and should be required to do so as presently scheduled.

### B. Ameranth Has Timely Sought Discovery of the Materials Required to Produce ICs Meeting the Court's Articulated Specificity Standard, and the Defendants Must Be Required to Produce and Provide Such Materials

Ameranth has been diligent in its efforts to obtain discovery about the non-publically available aspects of the defendants' confidential software systems. Because of the provisions of the Court's orders and PLRs regarding source code, production and inspection of source code has awaited the defendants' PLR 3.4a productions scheduled for September 6, 2013.

Ameranth served comprehensive RFPs on the defendants in February of 2013 seeking information about the accused systems relevant to an infringement analysis and in a time frame that would have allowed Ameranth to have the benefit of the responsive information at the time it served its initial ICs on the defendants. Judge Stormes "stayed" that discovery, but deemed it re-served on April 1, 2013. [Doc. 345, ¶ 4G]. Thus, despite the fact that the Scheduling Order does not require defendants to make their PLR 3.4a productions prior to September 6, 2013, the Court specifically allowed Ameranth to proceed with discovery into defendants' accused systems. This is,

11

1  of course, consistent with PLR 2.5, which allows discovery into the basis of

2  infringement to proceed *prior* to the time that a defendant is required to make

3  its formal PLR 3.4a production.

4          Ameranth has served additional RFPs and other discovery upon the

5  defendants since then attempting to procure relevant and non-publically

6  available information, some of which is further described below.  Despite the

7  fact that the multiple discovery requests have been outstanding for weeks and

8  months, defendants have consistently asserted an inability to make prompt

9  comprehensive productions, and instead requested to make productions on a

10 "rolling basis."  Ameranth agreed to this accommodation, and the Court

11 adopted it in a July 15, 2013 Order [Doc. No. 422], under which the defendants

12 are to "complete their rolling production of non-privileged documents

13 responsive to Ameranth's Requests for Production" by September 6, 2013.

14 However, despite the fact that the Order instructs the defendants *not* to wait

15 until the deadline, but instead to make productions "promptly as responsive

16 documents are located," defendants productions to date have been spotty at

17 best.  Thus, Ameranth has not yet obtained the full scope of defendants' non-

18 publically available materials about their software systems necessary for

19 Ameranth to produce "reverse engineering" level ICs, despite the fact that it has

20 diligently engaged in discovery to obtain such information.

21          In addition to the multiple sets of RFPs propounded by Ameranth to the

22 defendants, Ameranth served interrogatories seeking information about the

23 organization of the source code and databases for each of their accused systems.

24 While a few defendants provided substantive responses, most objected to the

25 interrogatories and instead invoked Fed. R. Civ. Proc. 33(d), telling Ameranth

26 to "figure it out itself" from their source code.  One of the ironies of such

27 responses, of course, is that none of the "new defendants" have yet produced

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS                                Case No. 11-CV-1810 WQH (WVG)**

1   their source code for inspection.  They are withholding that apparently for their

2   PLR 3.4(a) productions, currently due on September 6.  Moreover, even for the

3   original defendants that have produced source code, invocation of Fed. R. Civ.

4   Proc. 33(d) is not proper because the burden of deriving the requested

5   information is not the same for Ameranth (which is only receiving portions of

6   the defendants' source code on isolated review computers, is not seeing the

7   entire source code tree, and obviously does not have the kind of familiarity with

8   each defendant's system that the defendants' IT employees have[4]).  Ameranth

9   has brought a joint discovery motion with defendant QuikOrder raising these

10  issues, currently pending before the Court.  [Doc No.450].  The subject of those

11  "source code organization" interrogatories, however, is relevant to all of the

12  defendants who have failed to provide substantive responses, and particularly to

13  those as to which Ameranth is to serve amended ICs following Judge Stormes'

14  July 26, 2013 Order.

15          Those interrogatories, for example, ask the defendants to identify all

16  source code projects in their systems corresponding to types of functionality

17  relevant to Ameranth's infringement claims.  They ask the defendants to

18  identify the specific location in their systems (i.e., directory, folder, file, etc.)

19  for each relevant source code project.  They ask for identification of all

20  databases used with the defendants' systems.  They ask for identification, by

21  number and dates of use, of all versions of the defendants' accused systems.

22  All of these are topics on which Ameranth is entitled to do discovery and, in

23  light of the July 26, 2013 Order articulating a "reverse engineering" standard

24  and requiring more precise identification of accused versions of the systems, the

25  information is necessary for Ameranth to amend its ICs to meet this standard.

26

27  [4] Pursuant to Judge Stormes' February 20, 2013 Order [Doc. No. 342],
    defendants were not required to produce their full source code trees in an
28  operational environment, but only portions of the code.

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT**
**CONTENTIONS                    Case No. 11-CV-1810 WQH (WVG)**

1    The interrogatories are designed, among other things, to provide Ameranth's

2    source code review consultants with a structural understanding of the

3    organization of the defendants' systems in order to enable them to efficiently

4    analyze the code and determine completeness of the defendants' productions.

5    To enable efficient review of the source code, and adherence to the proposed

6    schedule for amending the ICs, the defendants must be required to promptly

7    provide this information.

8        Ameranth also has insisted that the defendants produce their source code

9    on review computers containing the software review and development tools

10   corresponding to the programming language(s) in which the code was written

11   so that Ameranth's consultants can review the code in its native format, as

12   required by the Court's February 20, 2013 Order [Doc. No. 342, p. 12].

13   Although, after a lengthy meet and confer process, the original defendants who

14   have produced source code eventually agreed to install appropriate tools on the

15   review computers, not all of the new defendants have agreed to do so.  They

16   should be required to install such tools on the review computers in order to

17   permit meaningful and efficient review of their source code and thereby enable

18   Ameranth to produce amended ICs conforming to Judge Stormes' standard if

19   that standard is to be employed in this case.

20       Ameranth has likewise noticed various site inspections of facilities (such

21   as hotels and restaurants) in which several of the defendants' systems are

22   installed in order to inspect some of the "behind the counter" and non-public

23   operations of such systems.  Ameranth has also noticed depositions of certain

24   IT officers of some of the defendants.  All of this discovery should be permitted

25   to go forward without interference or delay from the defendants to enable

26   Ameranth to comply with the July 26 Order and complete the update of its ICs

27   by November 21, 2013.

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT CONTENTIONS**                    **Case No. 11-CV-1810 WQH (WVG)**

1    Most importantly, defendants must be required to proceed with their
2    complete PLR 3.4a productions of source code and technical documents on
3    September 6, 2013 as required by the Case Management Order [Doc. No. 345,
4    ¶4F].  Because of the non-public nature of the defendants' software systems,
5    information about those systems necessary to produce amended ICs meeting
6    Judge Stormes' standard must be derived from the defendants' PLR 3.4a
7    technical documents and source code.  See <u>Nesscap Co., Ltd. v. Maxwell Tech.,</u>
8    <u>Inc.</u>, 2008 WL 152147 (S.D. Cal 2008) ("The Court reads Patent Local Rule
9    3.4(a) as requiring the responding party to provide the raw data (source code,
10   schematics, formulas, <u>etc.</u>) sufficient to show the operation of the accused
11   aspects of the products in order to allow the patentee to make ***its own***
12   determinations as to infringement.  See <u>McKesson</u>, 495 F.Supp.2d at 1334
13   (construing the rule as imposing a good faith obligation to 'provide the types of
14   information that will enable ***the party*** asserting infringement to reasonably
15   determine the operation of the accused device or method without undue burden
16   or expense')").
17         Under the defendants' proposed schedule, the defendants would *not* be
18   required to produce their PLR 3.4a technical materials and source code or
19   complete their "rolling productions" of documents until *after* Ameranth has
20   served amended ICs.  That position is not viable, or fair, for several reasons:
21         1.    As discussed above, in order to produce ICs meeting Judge
22   Stormes' standard, source code and technical materials for the defendants'
23   systems *must* be provided to Ameranth with sufficient time for it to be reviewed
24   and analyzed.
25         2.    The Court's case management and scheduling Orders [Doc. Nos.
26   345, 346] expressly allowed Ameranth to proceed with discovery into the
27   accused systems prior to the initial dates for service of ICs on the defendants.
28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS                          Case No. 11-CV-1810 WQH (WVG)**

3.    PLR 2.5 expressly permits a party (with non-relevant exceptions) to proceed with discovery and obtain disclosures regardless of any objection that it is premature in light of other requirements imposed by the PLRs.

4.    The Court's Orders, and the PLRs, permit Ameranth to serve amended ICs after the date on which defendants are required to make their PLR 3.4(a) productions to Ameranth (in this case, up until November 21, 2103).

5.    Defendants have admitted, in discovery responses, meet and confer discussions, by invocation of Rule 33(d) in response to interrogatories about their systems, and in joint motions to permit rolling productions of documents in response to Ameranth's RFPs [see, e.g., Doc. Nos. 420, 422], that they understand the scope of their accused systems sufficiently to make productions of responsive documents.  They have *not* sought protective orders.

6.    Discovery in patent actions is <u>not</u> restrictively confined only to items specifically described in ICs.  <u>See</u>, <u>e.g.</u>, <u>Dr. Systems v. Fujifilm Medical Systems USA, Inc.</u>, 70 Fed.R. Serv. 3d 348, 2008 WL 1734241 *3 (S.D. Cal. 2008)(J. Stormes); <u>Gen-Probe Inc. v. Becton, Dickinson and Co.</u>, 2010 WL 2011526 *3 (S.D. Cal. 2010); <u>WebSideStory, Inc. v. NetRatings, Inc.</u>, 2007 WL 1109597 *2 (S.D. Cal. 2007); <u>DDR Holdings, LLC v. Hotels.com, L.P.</u>, 2012 WL 2935172 *2 (E.D. Tex 2012).

Defendants mistakenly cite to <u>Implicit Networks v. Hewlett-Packard Co.</u>, 2011 WL 3954809 (N.D. Cal. 2011), and <u>Infineon Techs. v. Volterra Semiconductor</u>, 2012 WL 4808445 (N.D. Cal. 2012), both from the Northern District of California, for the proposition that defendants should be excused from complying with their outstanding discovery and PLR 3.4a obligations until after Ameranth serves amended ICs.  Because those cases are materially different and distinguishable from this matter, defendants' argument is unpersuasive.

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT CONTENTIONS          Case No. 11-CV-1810 WQH (WVG)**

The accused instrumentalities in both <u>Implicit Networks</u> and <u>Infineon</u> were commercially available products that the plaintiff could purchase and reverse engineer independent of resort to discovery.  <u>Implicit Networks</u> involved certain HP network switches, routers and webservers (2011 WL 3954809 at * 1), and <u>Infineon</u> dealt with metal conductors contained in semiconductors (2012 WL 4808445 at *2-3).  As discussed at length herein, those types of publicly available products are recognized by courts to be subject to *different* treatment with respect to IC standards and the plaintiffs' need for discovery than non-public software systems, such as the defendants' systems accused of infringement here.

In fact, the <u>Implicit Networks</u> decision explicitly based its ruling on the publicly available nature of the accused HP products, such that the plaintiff should be able reverse engineer the products without aid of discovery.  As the <u>Implicit Networks</u> court stated:  "the Court finds that HP's position—that the WSS product is free and available—is sufficient to require Implicit to reverse engineer the WSS product itself, not the open source code it is allegedly based on.  *If it turns out that the actual source code for the WSS product is not readily available to Implicit for its analysis, the Court ORDERS that it be provided to Implicit immediately and that the due date for Implicit's revised infringement contentions for the Application Server Patents is extended by the number of days it takes for Implicit to secure a copy of the WSS code for its reverse engineering analysis*."  2011 WL 3954809 at *3, n. 5 (emphasis added).  Thus, <u>Implicit Networks</u> actually support *Ameranth's* position that it should not be required to amend the ICs until *after* the defendants have completed their discovery and PLR 3.4a productions.

Moreover, defendants' request for a discovery stay ignores the facts that: (1) PLR 2.5 provides that discovery and disclosures (such as PLR 3.4a) shall

17

1    proceed regardless of an objection that they are premature in light of other

2    provisions of the PLRs (such as PLR 3.1); (2) the Court's case management and

3    scheduling orders in this case [Doc. Nos. 345, 346] specifically: (a) permitted

4    Ameranth to proceed with discovery into defendants' accused systems prior to

5    the dates on which ICs were due to be served; and (c) required the defendants to

6    make their PLR 3.4 disclosures and productions prior to the date by which

7    Ameranth had to serve amended ICs; and (3) the defendants already agreed

8    (and represented they could), and the Court ordered, that defendants complete

9    their "rolling productions" of documents responsive to Ameranth's RFPs by

10   September 6 [Doc. Nos. 420, 422].  Thus, there is no good faith reason for

11   defendants to not produce the materials about their accused systems that

12   Ameranth can obtain only through discovery and which are necessary to amend

13   the ICs to Judge Stormes' articulated standard of specificity.

14         For these reasons, in order to permit Ameranth to produce amended ICs

15   conforming to Judge Stormes' standard of specificity, the defendants should be

16   required to timely comply with outstanding discovery and to make complete

17   PLR 3.4a productions by September 6[5].  Specifically, Ameranth requests that

18   defendants be required to:

19         1.    Fully complete their "rolling productions" of all non-privileged

20   documents responsive to Ameranth's outstanding RFPs by no later than

21   September 6, 2013 [Doc. No. 422];

22         2.    Fully comply with Ameranth's outstanding site inspection requests

23   and deposition notices/ subpoenas;

24

25

26   _____
     [5] Any argument that the defendants cannot make Invalidity Contentions until
27   after they receive amended ICs is belied by the fact that, in the early phase of
     this litigation, the original defendants already served a lengthy set of invalidity
28   contentions and supporting references for the patents-in- suit at that time, all of
     which are in the same patent family.

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS                    Case No. 11-CV-1810 WQH (WVG)**

3.    Produce all relevant source code for their accused systems by no later than September 6, 2013, on review computers installed with all software development and review tools necessary to view the code in its native format;

4.    Produce all other PLR 3.4(a) technical documents and materials regarding their accused systems by September 6, 2013 [Doc. No. 345]; and

5.    Provide responsive narrative answers to Ameranth's interrogatories re Source Code Organization [see Doc No. 450].

*If* defendants fulfill these obligations promptly, completely and in good faith, Ameranth believes it in turn can serve amended ICs conforming to the July 26 Order by the date by which Ameranth is currently to serve any amended ICs—November 21, 2013.  That would permit the Court to maintain the case management schedule and not cause delays.  However, if the defendants fail to fully and promptly comply with these discovery and disclosure obligations, it is likely that the date for serving amended ICs, and other case management dates, would need to be continued.

If the Court will not require the defendants to comply with Ameranth's discovery requests or make their PLR 3.4a productions prior to the date on which Ameranth serves amended ICs on such defendants, then the Court should adopt a different standard of IC specificity, because Ameranth obviously cannot provide "reverse engineering" level ICs for the defendants' non-public software systems without meaningful access to their technical materials and source code. Under such circumstances, Ameranth suggests that the Court utilize a standard similar to that described in <u>CSR Technology, Inc. v. Freescale Semiconductor</u>, 2013 WL 503077 (N.D. Cal. 2013), and in the Eastern District of Texas (<u>see</u> Exhs. 1, 2), under which Ameranth's ICs would identify when elements of the patent claims are located in software in the defendants' possession.

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT CONTENTS                                    Case No. 11-CV-1810 WQH (WVG)**

C.   **Ameranth's Proposal Should Be Adopted By The Court Because It Best Preserves the Existing Case Management Schedule, Is Consistent With the Parties' Legal Obligations And Is Most Realistic And Fair**

Ameranth's proposal is superior to the defendants' because it requires no modification to the Court's existing case management schedule and is most consistent with the parties' existing rights and obligations regarding the time in which to serve amended ICs, the time by which to make PLR 3.4(a) productions, and the time by which to complete rolling productions and respond to outstanding discovery.  Ameranth's proposal provides a means to keep this case on track for claim construction and eventual trial, while adhering to Judge Stormes' recent ruling.  Ameranth's schedule also realistically reflects the time fairly required to meaningfully amend numerous sets of lengthy ICs (most of the ICs, inclusive of exhibits, comprise hundreds of pages).

The defendants' proposal would, in contrast, create delays and require an expensive and wasteful set of intermediary ICs.  Furthermore, defendants' proposal that Ameranth be required to produce over 30 sets of lengthy amended IC's by September 16, 2013 (a month *earlier* than the date by which Ameranth may amend its ICs under the Court's Scheduling Order [Doc. No. 346])— including for parties that have not made source code and technical document productions—is unrealistic and not made in good faith.  This is particularly the case where, until the Court clarifies whether or not the "reverse engineering" and "how" standard applies to defendants who have not yet produced source code and technical materials, Ameranth cannot determine what standard the amended ICs must meet.  Defendants' proposal would require Ameranth, without benefit of the defendants' discovery or PLR 3.4a materials, to create over 30 sets of amended ICs in a 30 day period, presumably only to have to

20

1    amend them again, later, when the defendants finally provide their discovery

2    and PLR 3.4a productions.  Such a proposal is neither fair nor efficient.

3          Defendants are transparently attempting to trap Ameranth into having to

4    produce a great number of ICs in an unrealistically short time while

5    simultaneously withholding from Ameranth the very materials Ameranth needs

6    to amend the ICs to Judge Stormes' new standard.  It is noteworthy that the

7    Court's Case Management Order [Doc. No. 345, ¶4e] spread the schedule for

8    producing the original ICs for the more than 30 defendants over a 13 week

9    period, divided into 8 distinct groups.  Defendants' cynical and unrealistic

10   proposal to require Ameranth to redo those by September 16 should be rejected.

11         Under Fed. R. Civ. Proc. 16(b)(4), scheduling orders should not be

12   modified without good cause.  So long as the defendants timely comply with

13   their current discovery and PLR 3.4(a) obligations, the parties should be able to

14   maintain the current schedule.

**D.    Ameranth Should Not Be Required To Amend Its ICs**
**For the Defendants Who Did Not Timely Challenge The**
**ICs Within the Court's 45 Day Deadline Or Obtain An**
**Extension For Such Challenge**

18         Finally, the Court asked the parties to address the question of which of

19   the defendants Ameranth should be required to serve with amended ICs in light

20   of the July 26, 2013 Order.  Ameranth's position is that, in addition to the

21   defendants who participated or joined in the motion (OpenTable, Wanderspot

22   and Best Western), Ameranth should serve amended ICs on all of the

23   defendants that timely produce source code, discovery and PLR 3.4a materials,

24   *except for* the seven "original" defendants that failed to file or join in a timely

25   motion contesting the sufficiency of the ICs served upon them or to obtain an

26   extension of time to do so (this limited group consists of Pizza Hut, QuikOrder,

27   Seamless, Domino's, OWeb, Papa John's and GrubHub).

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT**
**CONTENTIONS          Case No. 11-CV-1810 WQH (WVG)**

1    It is important to note that, thus far, *only four* sets of ICs have actually

2    been examined by the Court in this matter.  Judge Sammartino reviewed the ICs

3    for Papa John's and GrubHub, and determined that those were *sufficient*.  [Doc.

4    Nos. 55, 57].  Judge Stormes examined the ICs for OpenTable and Wanderspot

5    and, applying a different standard, reached a different conclusion (although

6    Best Western filed a joinder to OpenTable's and Wanderspot's motion, the Best

7    Western ICs were not lodged with the Court).  Despite this fact, defendants now

8    misleadingly assert that Judge Stormes supposedly found that the ICs as to "all"

9    defendants are deficient.  That simply is not true.  Neither Judge Stormes nor

10   any other judicial officer has reviewed the IC's for the other defendants.

11   Any challenges to the sufficiency of the ICs by the seven defendants for

12   which Ameranth does not propose serving amended ICs were time-barred by

13   Judge Stormes' Chamber Rules (as well as by Judge Gallo's).  Moreover,

14   because the original defendants have all made at least some production of

15   source code, the ICs Ameranth served on them all already contain citations to

16   source code.  (This would be without prejudice to Ameranth's right to

17   *voluntarily* serve amended ICs to such defendants as permitted by the PLRs.)

18                              **CONCLUSION**

19   For the foregoing reasons, Ameranth respectfully requests the Court to

20   adopt Ameranth's proposed schedule, whereby Ameranth would serve amended

21   ICs conforming to the  July 26 Order on all defendants in the in the

22   consolidated cases other than Pizza Hut, QuikOrder, Seamless, Domino's,

23   OWeb, Papa John's and GrubHub by November 21, 2013, so long as the

24   defendants substantively respond to Ameranth's outstanding discovery,

25   complete their "rolling productions" of responsive documents by September 6,

26   respond substantively to Ameranth's interrogatories re source code

27   organization, produce all PLR 3.4(a) materials and source code by September 6,

28

                                     22

1  and produce the source code on review computers on which the appropriate

2  software review and development tools have been installed.  Alternatively, if

3  the Court does not require defendants to make such productions prior to the date

4  that Ameranth will serve amended ICs, Ameranth requests the Court to adopt a

5  different specificity requirement for the "intermediary" ICs for such non-

6  producing defendants consistent with that described in <u>CSR v. Freescale</u> and

7  utilized in the Eastern District of Texas, with further amended ICs to be served

8  for such defendants approximately 75 days after completion of their PLR 3.4(a)

9  productions.  Further, because of the importance of the issues presented, and the

10 recent judicial reassignment of these multiple consolidated cases, Ameranth

11 requests oral argument on this motion.

12 / / /

13 / / /

14 / / /

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS          Case No. 11-CV-1810 WQH (WVG)**

***DEFENDANTS' POSITION***

**I. ISSUES TO BE DECIDED**

> 1.  What is the proper timing for Ameranth's ordered correction of its infringement contentions ("ICs")?  ANSWER: Because Ameranth's ICs have been found legally deficient and it has been ordered to correct and supplement same in at least four specific ways, Defendants submit that Ameranth should be required to do so now and, in accordance with established precedent, Defendants' responsive discovery obligations should be extended or stayed until Ameranth complies with the order.

> 2.  To which Defendants does Ameranth's ordered correction apply?  ANSWER: Because Ameranth's ICs share common deficiencies as to all Defendants, Defendants submit that Ameranth is required to correct and supplement as to all Defendants.

**II.  INTRODUCTION**

Plaintiff Ameranth, Inc. and defendants OpenTable, Inc., Wanderspot, LLC and Best Western International, Inc. ("Moving Defendants") filed a joint motion for determination of discovery dispute regarding the sufficiency of Ameranth's ICs [Doc. No. 402] (Joint Motion").  Magistrate Judge Stormes granted Moving Defendants' request that Ameranth be required to either amend four specific aspects of its ICs or drop those contentions.  Order Determining Joint Motion for Discovery Dispute No. 2 and Granting Defendants' Request that Ameranth Amend Its Infringement Contentions or Drop those Contentions [Doc. No. 432] ("Order 2") at 1.  Specifically, Judge Stormes found Ameranth's ICs deficient in four separate respects:

> 1.  Ameranth's contentions regarding doctrine of equivalents fail to comply with Patent L.R. 3-1(e);

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT CONTENTIONS**                                 **Case No. 11-CV-1810 WQH (WVG)**

      2.      Ameranth's contentions regarding contributory infringement fail to comply with Patent L.R. 3-1(d);

      3.      Ameranth's use of a single claim chart to contend that "all versions" of the accused systems infringe fails to comply with Patent L.R. 3-1(b) and (c);

      4.      Ameranth's contentions fail to identify with specificity where in the accused system the alleged infringement occurs and how the claim elements are met as required by Patent L.R. 3-1(c)

*See* Order 2 at 10-14.  Judge Stormes therefore ordered Ameranth to amend its contentions to correct the numerous deficiencies in its ICs (or else drop them):

> Ameranth must add facts and specify how accused systems of defendants OpenTable, Wanderspot and Best Western infringe the claims under the doctrine of equivalents, as well as address all previous accused versions and provide more specific claim charts, or else drop the contentions, by a date to be proposed by the parties.

*Id.* at 15.  Recognizing that the deficiencies in the ICs were likely common as to many other defendants in these consolidated cases, Judge Stormes further ordered:

> To the extent this order may implicate other sets of ICs, the parties shall meet and confer and by August 5, 2013, file a proposed joint schedule of service of the ICs subject to this order as well as any other ICs that may need to be amended, and shall notify the court of any other scheduling order dates that may need to be amended."

*Id.*  The parties met and conferred, but failed to reach an agreement regarding either the timing for the Court ordered amendment or the additional defendants for which Ameranth must serve amended ICs.  Unable to reach agreement, those issues are presented to the Court for determination.

      First, with respect to the timing of Ameranth's amended ICs, Defendants propose that (a) Ameranth have until September 16 to serve amended ICs, for ***all*** Defendants, that comply with the Patent Local Rules ("PLRs") in accordance

with Order 2, and (b) all other dates contained in the current February 22, 2013 Scheduling Order [Doc. No. 346] and the Court's other orders of February 22, 2013 [Doc. No. 345] and July 15, 2013 [Doc. No. 422] be advanced a similar amount of time as follows:

1.    The Defendants' invalidity contentions and PLR 3.4(a) technical production would move from September 6 to October 7;

2.    The deadline for Defendants to substantially complete their rolling production of documents responsive to certain of Ameranth's requests would move from September 6 to October 7;

3.    The date to exchange claim terms, proposed constructions, and extrinsic evidence would move from September 26 to October 28;

4.    The exchange of responsive claim constructions and extrinsic evidence would move from October 24 to November 22;

5.    The date to file a joint claim construction chart and the other materials required by paragraph 7 of the February 22 order would move from November 21 to December 20;

6.    Completion of claim construction discovery would move from December 19 to January 24;

7.    Opening claim construction briefs would move from January 16 to February 21;

8.    Responsive claim construction briefs would move from February 27 to March 28; and

9.    The Markman hearing would be reset by the Court.

Ameranth argues because PLR 3.6(a) permits amendment of ICs until the filing of the parties' Joint Claim Construction Chart, it is not obligated to provide ICs that comply with the requirements of PLR 3.1 until that time[1]

_____

[1] Ameranth previously stated that its proposal was to amend its ICs for all Defendants other than Papa John's, Grub Hub, O-Web, Pizza Hut, QuikOrder,

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT CONTENTIONS                    Case No. 11-CV-1810 WQH (WVG)**

1    However, the fact that the PLRs contemplate a separate deadline for amendment

2    of ICs does not relieve Ameranth of its obligation to provide ICs that comply

3    with the PLRs in the first instance.   Indeed, Judge Stormes has already rejected

4    this argument.   Judge Stormes specifically held that "[i]n this court's view the

5    questions of whether, how and when Ameranth should assert . . . theories in its

6    contentions are questions to be answered *now, and not in the future*."   Order 2

7    at 7 (emphasis added).   The Magistrate Judge's determination is well supported

8    because, to find otherwise, would frustrate "[t]he purpose of local patent rules []

9    to streamline discovery and provide structure to discovery and enable the parties

10   to move efficiently toward claim construction and the eventual resolution of

11   their dispute." *Id.* at 9 (citation and quotation omitted).   As Judge Stormes

12   recognized, "Patent local rules are 'designed specifically to require parties to

13   crystallize their theories of the case early in the litigation so as to prevent the

14   shifting sands approach to claim construction." Order 2 at 4 (quoting *O2 Micro*

15   *Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006)).

16   Accordingly, the PLRs require that Ameranth crystallize its infringement

17   theories in ICs that comply with the PLRs, so that the parties can move

18   efficiently towards claim construction.

19        Ameranth further argues that it should not be required to provide ICs that

20   comply with the PLRs until Defendants have completed production of

21   documents under PLR 3-4(a).   In addition to being irrelevant to Order 2,

22   Ameranth ignores that the PLRs contemplate that defendants' PLR 3-4(a)

23   disclosure to occur *after* Plaintiffs have provided infringement contentions that

24   meet the requirements of PLR 3-1.   *See* PLR 3-4 (requiring PLR 3-4(a)

25

26   Seamless, and Domino's.   Ameranth now appears to be rejecting even its own
     proposal and refusing to concede that Order 2 requires amendment as to any
27   Defendant other than the Moving Defendants.   Effectively, Ameranth seeks to
     force Defendants to file multiple discovery motions on common issues, but
28   require only a single motion for any issue it deems "common" to all Defendants.

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT**
**CONTENTIONS                    Case No. 11-CV-1810 WQH (WVG)**

1   document production along with Invalidity Contentions); PLR 3-3 (setting

2   deadline for invalidity contentions "not later than sixty (60) days" after service

3   of PLR 3-1 infringement contentions).  And, for good reason.  PLR 3-1

4   infringement contentions define the scope of document production required

5   under PLR 3-4(a).  PLR 3-4(a) requires production of "documentation sufficient

6   to show the operation of any aspects or elements of any Accused Instrumentality

7   identified by the patent claimant in its PLR 3.1.c chart."  Without infringement

8   contentions that comply with the Patent Rules, Defendants cannot determine the

9   scope of document production required by PLR 3-4(a).  In this regard, courts

10  have routinely extended or stayed a patent defendant's discovery obligations

11  until the plaintiff meets its burden of providing infringement contentions

12  compliant with corresponding PLR 3-1 obligations.  *See, e.g., Bender v. Maxim*

13  *Integrated Prods., Inc.*, 2010 WL 1135762 at *2 (N.D. Cal. 2010) ("Until

14  plaintiff meets the burden of providing infringement contentions complaint with

15  PLR 3-1, the Court will not order defendant to processed with discovery."); *see*

16  *also Implicit Networks Inc. v. Hewlett-Packard Co.*, No. 10-CV-03746 SI, 2011

17  WL 3954809, at *4 (N.D. Cal. Sept. 7, 2011); *Infineon Techs. v. Volterra*

18  *Semiconductor*, No. C 11-6239 MMC (DMR), 2012 WL 4808445, at *5 (N.D.

19  Cal. Oct. 9, 2012).

20      Second, with respect to the additional Defendants for which Ameranth

21  must serve amended ICs, Defendants submit that Ameranth must amend its ICs

22  as to *all* defendants or drop its contentions, because the deficiencies in

23  Ameranth's ICs are common as to all Defendants.  Despite Judge Stormes's

24  determination that the same disclosures provided to both moving and non-

25  moving parties are inadequate, Ameranth once again argues that it (1) is not

26  obligated to amend its ICs until the PLR 3.6(a) deadline for amendment of ICs

27  and (2) has no obligation to provide amended ICs as to defendants that did not

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS            Case No. 11-CV-1810 WQH (WVG)**

1    move prior to the deadline to file a discovery challenges.  Ameranth's position is

2    misplaced because (1) the Court's February 22, 2013 scheduling order imposes

3    an affirmative obligation to supplement its discovery responses in compliance

4    with the Court's Order to provide ICs that comply with the local patent rules and

5    the Court's February 22, 2013 Order and (2) Judge Stormes has already held that

6    Ameranth's current disclosures are deficient and must be corrected.

7    **III. Argument**

8        This Joint Submission responds to Judge Stormes's order requiring the

9    parties to meet and confer and "[1] file a proposed joint schedule of service of

10   the ICs subject to this order," [2] identify "any other ICs that may need to be

11   amended, and [3] notify the court of any other scheduling order dates that may

12   need to be amended."   Ameranth spends the vast majority of its brief not

13   responding to Judge Stormes' order, but instead arguing about discovery issues

14   that are not before the Court and are not the subject of Order 2 and arguing for

15   reconsideration of Order 2 without attempting to show that there is new

16   evidence, a change in controlling authority, or clear error in the prior order that

17   supports same.[2]

18       Ameranth seeks to circumvent not only the requirements of the PLRs, but

19   also Judge Stormes's Order, explicitly requiring that Ameranth amend its

20   contentions to comply with the PLRs.  Judge Stormes found Ameranth's ICs

21   _____

22   [2] Ameranth's arguments are based largely on authority that it elected not to present in the first instance.  Even if the Court were to engage in Ameranth's request for reconsideration of Order 2 – which it should not – Ameranth's heavy and new reliance on *Zest ID Holdings, LLC v. Implant Direct Mfg.*, LLC, 2013 WL 1626 III (S.D. Cal. April 15, 2013) [Dkt. No. 216] is misplaced.  First, that case did not involve Defendants challenging a plaintiff's ICs, but instead a patentee's motion to amend ICs related to a dental implant device.  Second, the *Zest* court reviewed the patentee's proposed amended ICs and concluded that they presented "both specific and illustrative examples of the Defendants' infringement of the asserted claims, and identify each specific element as to which plaintiffs have a claim."  In contrast, Judge Stormes independently concluded that Ameranth's ICs merely "attempt[] to identify the location of elements of the claim within the accused instrumentality," but does not explain 'how' the accused systems practice the claimed elements.  Order 2 at 14.

29

1   failed to comply with the requirements of the PLRs.  This was not a close

2   question.  As discussed above, Judge Stormes found that Ameranth's ICs were

3   deficient in at least four distinct respects.  *See* Order 2 at 10-14.  Furthermore,

4   Judge Stormes held that "[i]n this court's view the questions of whether, how

5   and when Ameranth should assert" its infringement theories "are questions to be

6   answered now, and not in the future."  Order 2 at 7.

7          Ameranth contends that it should not be required to amend its ICs *in any*

8   *respect* until (1) after it has received Defendants' PLR 3.4(a) technical document

9   productions, which are currently due to be served on September 6, 2013, under

10  the February 22, 2013 Scheduling Order, and (2) November 21, 2013, which is

11  the current deadline for Ameranth to serve Amended ICs under PLR 3.6 and the

12  February 22, 2013 Scheduling Order.  In other words, while Judge Stormes

13  found that Ameranth's ICs failed to meet the requirements of the PLRs,

14  Ameranth effectively contends that that finding should have no effect.  Instead,

15  Ameranth argues that the case should proceed on its existing track, with

16  Ameranth getting immediate access to discovery under PLR 3.4(a), and that

17  despite the July 26 Order it will not provide the ICs contemplated by the PLRs

18  and the February 22 Order until November 21.

19         Ameranth's attempt to circumvent the requirements of the PLRs and

20  Judge Stormes's Order should be rejected for at least the following reasons.

21       A.    **Ameranth must <u>first</u> comply with the Patent Local Rules in**

22             **order to permit Defendants to satisfy their corresponding**

23             **obligations.**

24         Ameranth's position is effectively that a plaintiff need not serve ICs that

25  comply with PLR 3.1 until the deadline to amend ICs "as a matter of right"

26  under PLR 3.6, which was the *same* position presented in the joint motion and

27

28
                                         30

1   rejected by Order 2.  *See* Joint Motion at 10.[3]   Ameranth's position was
2   previously rejected and should be rejected again because it would frustrate the
3   PLRs' purpose of focusing discovery and narrowing issues for invalidity
4   contentions, Markman, summary judgment, trial, and beyond.

5          Infringement contentions that comply with PLR 3.1 are critical, as they
6   inform Defendants' invalidity contentions, frames the scope of proper discovery
7   and may result in the identification of additional invalidating prior art.  In this
8   regard, the PLRs set forth a schedule of events "designed specifically to require
9   parties to crystallize their theories of the case early in the litigation so as to
10  prevent the shifting sands approach to claim construction." Order 2 at 4 (quoting
11  *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1364 (Fed. Cir.
12  2006)).

13         First, Patent Local Rule 3-1(a) requires that Plaintiffs serve ICs that "must
14  contain" information that complies with numerous requirements.  PLR 3-1(a).
15  The purpose of these requirements is to "forc[e] an accusing party to
16  'crystallize' its infringement theories," so the opposing party is not 'forced to
17  guess'" which products allegedly infringe, or how they allegedly infringe.
18  Order 2 at 12-14 (internal citations omitted).

19         Only *after* Plaintiffs have provided ICs that meet the requirements of PLR
20  3-1, are Defendants required to provide invalidity contentions under PLR 3-3
21  and accompanying document productions under PLR 3-4.  *See* PLRs 3-3, 3-4.
22  This makes sense, given that PLR 3-1 ICs define the scope of document
23  production required under PLR 3-4(a).  An accused infringer's obligations under
24  PLR 3.4 to produce information "sufficient to show the operation of any aspects

25  _____
26  [3] As moving Defendants originally explained in the joint motion, Ameranth argues that the motion should be denied because Ameranth intends to exercise its right to amend its ICs after receiving discovery from Defendants.  "That Ameranth is allowed to amend its PICs under recent amendments to the Patent Local Rules does not, however, excuse Ameranth's obligation to provide timely PICs that properly disclose its infringement theories."  Joint Motion at 10.
27
28
                                        31

1  or elements of any Accused Instrumentality identified by the patent claimant" is

2  necessarily preconditioned on a patent holder's prior compliance with PLR 3.1.

3  An accused infringer should not be forced to guess what aspects or elements or

4  which versions of its products allegedly infringes an asserted patent.  *Id.*

5  Ameranth's proposal would do exactly that and encourage the service of

6  deficient ICs.

7          Similarly, the PLRs contemplate the exchange of both infringement and

8  invalidity contentions before the parties move forward into the claim

9  construction phase of the case.  *See* PLR 4-1(a) (setting deadline for exchange of

10  preliminary claim constructions 14 days after service of invalidity contentions).

11          This schedule of exchanges promotes the purpose of the PLRs, forcing the

12  parties to "crystallize their theories of the case early in the litigation."  Order 2 at

13  4 (quoting *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1364

14  (Fed. Cir. 2006)).  Ameranth's position that it need not provide ICs until ***after***

15  Defendants have served invalidity contentions and accompanying document

16  productions frustrates the purpose of the Rules.  Indeed, Ameranth's position

17  would encourage parties to intentionally serve deficient ICs with an eye toward

18  withholding important contentions and details to gain an improper reward in the

19  form of an tactical advantage achieved through the service of those deficient

20  ICs.

21          Based on the similarity of the Northern District of California's PLRs, this

22  District has recognized Northern District decisions interpreting those Patent

23  Local Rules as persuasive authority.  *See* Order 2 at 9-10.  The Northern District

24  has already considered and rejected Ameranth's arguments.  Specifically,

25  recognizing that service of ICs that comply with the PLRs is a ***necessary***

26  ***predicate*** to the service of defendants' invalidity contentions and document

27  productions, courts in the Northern District have extended or stayed a patent

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT**
**CONTENTIONS**                    **Case No. 11-CV-1810 WQH (WVG)**

1   defendant's discovery obligations until the plaintiff meets its burden of

2   providing ICs compliant with that district's PLR 3-1.  *See, e.g., Bender,* 2010

3   WL 1135762 at *2 ("Until plaintiff meets the burden of providing infringement

4   contentions complaint with PLR 3-1, the Court will not order defendant to

5   processed with discovery."); *see also Implicit Networks*, 2011 WL 3954809, at

6   *4; *Infineon Techs*, 2012 WL 4808445, at *5.

7         **B.    Ameranth is not relieved of its obligations to provide**

8                 **infringement contentions that comply with the requirements of**

9                 **Patent Local Rule 3-1, simply because this case implicates**

10                **software.**

11        Ameranth's arguments that it requires access to Defendants' technical

12  documents, including confidential source code, in order to prepare ICs that

13  comply with PLR 3.1 misses the mark.

14        As an initial matter, Ameranth's argument appears to be a red herring.

15  First, Judge Stormes identified deficiencies in Ameranth's ICs related to its

16  doctrine of equivalents, contributory infringement, and accused "versions"

17  contentions, none of which even arguably require access to Defendants'

18  confidential source code.   Second, with respect to at least one Defendant,

19  OpenTable, Ameranth received both technical documentation and source code

20  relating to the accused systems months before it served ICs that were subject of

21  Judge Stormes's Order.  Order 2 at 14.  Nevertheless, Judge Stormes found even

22  these contentions failed to satisfy the requirements of the PLRs.  *Id.*

23        Ameranth's primary argument is that it is allegedly impossible to comply

24  with the "reverse engineering or its equivalent" standard enunciated in Judge

25  Stormes's order ***unless*** it is first given access to Defendants' confidential

26  technical documents and source code.  Order 2 at 14.  However, in making this

27  argument, Ameranth reads into the Order words that are not there.  The Order

28

33

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT**
**CONTENTIONS                          Case No. 11-CV-1810 WQH (WVG)**

1   does not state that the ***only*** way to meet the required standard is through citation

2   to source code.  Rather, the Order merely explains that because Ameranth ***had***

3   ***access*** to OpenTable's source code for several months before serving ICs, that

4   information was "readily available" to Ameranth to cite in its ICs.

5        Although Ameranth did not have the confidential source code of the other

6   Moving Defendants (Wanderspot and Best Western) before serving ICs, it was

7   still obligated to use whatever information ***was*** available to "link the cited

8   evidence to its claims" and "identify with specificity where in the accused

9   system the alleged infringement occurs and how the claim elements are met."

10  Order 2 at 14; *see also Linex Techs. Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d

11  703, 709 (E.D. Tex. 2008) (finding ICs deficient under E.D. Tex. Patent Rule 3-

12  1 despite the fact that plaintiff did not yet have access to proprietary firmware or

13  software, because "Plaintiff has failed to specifically delineate how the

14  operation of any Accused Product corresponds to any claim limitation," and

15  "[t]his is a situation where there is publicly available information which, if

16  utilized, would have provided more information to Defendants than Plaintiff's

17  ICs did in this case. Though this information may not have fully answered all of

18  Defendants' questions regarding the Infringement Contentions, such information

19  would have provided more information than was initially disclosed.").

20       In this regard, Ameranth wholly failed to review public information about

21  the accused systems.  For instance, Ameranth failed to review publicly available

22  source code that it has had access to since before filing suit.  Specifically,

23  Ameranth has made numerous demands for the production of source code (and

24  the manner in which it must be produced), but Ameranth does not cite to or

25  quote a single line of the publicly available source code for any of the accused

26  websites.  For example, an Internet Explorer web browser rendering the html

27  code received when searching for San Diego restaurants through Open Table

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT**
**CONTENTIONS**                                    **Case No. 11-CV-1810 WQH (WVG)**

1   (http://www.opentable.com/san-diego-restaurants?mn=57) receives over 1300

2   lines of HTML code that can be viewed by simply clicking the "view" menu and

3   selecting "source."  Running a search for restaurants near "880 Front St #4290"

4   generates over an additional 1300 lines of code.  And, of course, thousands of

5   additional lines of code are received as a user navigates through the steps

6   required to reserve a table.

7         Reviewing this publicly available code would, among other things, permit

8   Ameranth to identify with reasonable particularity, among other things: (1) data

9   and applications that are allegedly stored on a web page ('850 Patent, Claim 12,

10  element (b)); (2) what applications and data are allegedly synchronized to a web

11  page ('850 Patent, Claim 12); (3) what information entered on a web page is

12  allegedly automatically communicated to handheld device ('850 Patent, Claim

13  14); (4) what information entered on a handheld device is allegedly

14  automatically communicated to a web page ('850 Patent, Claim 15); and (5)

15  what hospitality application information is allegedly linked and synchronized

16  simultaneously to a web page ('077 Patent, Claim 13).

17        The PLRs do not permit plaintiffs to withhold disclosure of their theories

18  of "how the claim elements are met" until after the plaintiff is given access to

19  confidential source code, and Judge Stormes's order does not endorse any such

20  perversion of the PLRs.  In fact, Ameranth's position is contrary to the plain

21  language of the PLRs which explicitly contemplate production of source code

22  sixty (60) days *after* service of compliant infringement contentions.  *See* PLR 3-

23  4(a).  Like all plaintiffs, Ameranth should be required to properly disclose its

24  theories *before* being given access to confidential source code, and then it

25  should supplement its ICs with pinpoint citations to the code after the PLR

26  3.4(a) production has been made.  *See Big Baboon Corp. v. Dell, Inc.,* 723 F.

27  Supp. 2d 1224, 1228, (C.D. Cal. 2010) (Interpreting and applying N.D. Cal.

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS                    Case No. 11-CV-1810 WQH (WVG)**

1   PLR 3-1, and stating that "Once source code has been provided to the plaintiffs,

2   however, courts have required plaintiffs to supplement their infringement

3   charges with pinpoint citations.").

4          Ameranth's arguments related to the inefficiencies of the potential need

5   for it to produce two sets of amended ICs ring hollow because the first set of

6   amendments is required by its own failure to comply with the PLR

7   requirements.  Ameranth should not be rewarded and Defendants should not be

8   penalized for Ameranth's non-compliance.  Defendants are both entitled to and

9   require compliant ICs from Ameranth to satisfy their corresponding PLR

10  requirements and other discovery obligations.

11  **IV.  Ameranth is required to supplement its ICs to all Defendants.**

12         Judge Stormes ordered "[t]o the extent this order may implicate other sets

13  of ICs, the parties shall meet and confer and by August 5, 2013, file a proposed

14  joint schedule of service of the ICs subject to this order as well as any other ICs

15  that may need to be amended."  Order 2 at 15.  Ameranth does not and cannot

16  reasonably dispute that Order 2 implicates the ICs of all Defendants.  Indeed, the

17  deficiencies identified in Magistrate Judge Stormes's Order are ubiquitous

18  among the ICs served on all the Defendants.  Instead, it argues that it is not

19  obligated to amend its ICs as to certain Defendants that did not challenge its ICs

20  within the time period prescribed by Judge Stormes's Chamber Rules.[4]

21         First, Ameranth's argument ignores Magistrate Judge Stormes's order that

22  the Parties meet and confer to identify other ICs that Plaintiff may need to

23  amend in light of the directives contained in the order.  Second, Ameranth's

24

25  _____

    [4] Ameranth simply ignored the requirements of the PLR 3.4 with deficient ICs
26  and now seeks to play "gotcha" by invoking the 45 day rule when Ameranth
    itself was uncertain whether this rule applied to infringement contentions. (May
27  9, 2012 e-mail from Caldarelli to defendants stating: "In order not to run into
    any issues with the Court's 45 day deadline in its Chamber Rules (*which may or*
28  *may not be applicable to the source code productions and PLR 3.4(a)*
    *obligations*) (emphasis added.).

                                       36

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTIONS                     Case No. 11-CV-1810 WQH (WVG)**

1  argument that it has no duty to amend its deficient ICs ignores its obligation to

2  "supplement or correct its disclosure or response" "in a timely manner if the

3  party learns that in some material respect the disclosure or response is

4  incomplete or incorrect, and if the additional or corrective information has not

5  otherwise been made known to the other parties during the discovery process or

6  in writing."  FED. R. CIV. P. 26(e).  Furthermore, Ameranth ignores that the

7  Court's February 22, 2013, Scheduling Order imposes an affirmative obligation

8  to supplement its discovery responses in compliance with the Court's Order to

9  provide ICs that comply with the local patent rules and the Court's February 22,

10  2013, Order.

11      In addition to the fact that it is contrary to both Judge Stormes's order and

12  the Federal Rules, Ameranth's argument should be rejected because it is another

13  effort to complicate this already overly complicated consolidation action.  There

14  is no reasoned basis to put Defendants on two separate tracks for disclosure

15  obligations.  Indeed, this would be contrary to the Court's prior order that

16  consolidated these proceedings for efficiency reasons and scheduled all

17  Defendants' disclosure obligations on a common date.[5]

18  / / /

19  / / /

20  / / /

21

22

23

24

25

26  [5] Ameranth's accusation that Defendants' proposals are not made in good faith
is not well taken.  Judge Stormes ordered Ameranth to amend its ICs and the
27  parties to submit a proposed schedule, including changes to the Scheduling
Order.  Ameranth effectively refused to do so and now asks this Court to revisit
28  Order 2 and adopt an approach rejected by Judge Stormes.

37

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT
CONTENTS                    Case No. 11-CV-1810 WQH (WVG)**

1  **V.  Conclusion**

2          Because the deficiencies in Ameranth's ICs are common as to all

3  Defendants, Ameranth must amend its ICs as to all defendants within 30 days

4  or drop its contentions as required by Order 2.  As recognized by persuasive

5  authority, Defendant's discovery obligations should be stayed or extended until

6  Ameranth meets its burden of providing infringement contentions compliant

7  with corresponding PLR 3-1 obligations.

8

9

10                                        Respectfully submitted,

11  Dated: August 15, 2013         CALDARELLI HEJMANOWSKI & PAGE LLP

12
                                   By: */s/ William J. Caldarelli*
13                                         William J. Caldarelli
                                           Ben West
14
                                           FABIANO LAW FIRM, P.C.
15                                         Michael D. Fabiano

16                                         OSBORNE LAW LLC
17                                         John W. Osborne

18                                         WATTS LAW OFFICES
                                           Ethan M. Watts
19
                                   **Attorneys for Plaintiff Ameranth, Inc.**
20
21  Dated: August 15, 2013         FULBRIGHT & JAWORSKI L.L.P.

22                                 By: */s/ Richard Zembek*
23                                         Richard Zembek

24                                 **Liaison Attorneys for Defendants**

25

26

27

28
                                        38

1    <u>SIGNATURE CERTIFICATION</u>

2          Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative

3    Policies and Procedures Manual, I hereby certify that the content of this

4    document is acceptable to Richard Zembek, Liaison Counsel for Defendants,

5    and that I have obtained Mr. Zembek's authorization to affix his electronic

6    signature to this document.

7

8                                */s/ William J. Caldarelli*

                             William J. Caldarelli

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT MOTION REGARDING SERVICE OF AMENDED INFRINGEMENT CONTENTIONS**           **Case No. 11-CV-1810 WQH (WVG)**