**CALDARELLI HEJMANOWSKI & PAGE LLP**
William J. Caldarelli (SBN #149573)
Ben West (SBN #251018)
12340 El Camino Real, Suite 430
San Diego, CA  92130
Telephone: (858) 720-8080
Facsimile: (858) 720-6680
wjc@chplawfirm.com
dbw@chplawfirm.com

**FABIANO LAW FIRM, P.C.**
Michael D. Fabiano (SBN #167058)
12526 High Bluff Drive, Suite 300
San Diego, CA  92130
Telephone: (619) 742-9631
mdfabiano@fabianolawfirm.com

**OSBORNE LAW LLC**
John W. Osborne *(Appointed Pro Hac Vice)*
33 Habitat Lane
Cortlandt Manor, NY 10567
Telephone: (914) 714-5936
josborne@osborneipl.com

**WATTS LAW OFFICES**
Ethan M. Watts (SBN #234441)
12340 El Camino Real, Suite 430
San Diego, CA  92130
Telephone: (858) 509-0808
Facsimile: (619) 878-5784
emw@ewattslaw.com

Attorneys for Plaintiff Ameranth, Inc.

**AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES     11cv1810 DMS WVG**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| IN RE: AMERANTH PATENT LITIGATION | CASE NOS. |
|---|---|

| | |
|---|---|
| 11cv1810 DMS (WVG) | 12cv1643 DMS (WVG) |
| 12cv0729 DMS (WVG) | 12cv1644 DMS (WVG) |
| 12cv0731 DMS (WVG) | 12cv1646 DMS (WVG) |
| 12cv0732 DMS (WVG) | 12cv1648 DMS (WVG) |
| 12cv0733 DMS (WVG) | 12cv1649 DMS (WVG) |
| 12cv0737 DMS (WVG) | 12cv1650 DMS (WVG) |
| 12cv0739 DMS (WVG) | 12cv1651 DMS (WVG) |
| 12cv0742 DMS (WVG) | 12cv1652 DMS (WVG) |
| 12cv0858 DMS (WVG) | 12cv1653 DMS (WVG) |
| 12cv1627 DMS (WVG) | 12cv1654 DMS (WVG) |
| 12cv1629 DMS (WVG) | 12cv1655 DMS (WVG) |
| 12cv1630 DMS (WVG) | 12cv1656 DMS (WVG) |
| 12cv1631 DMS (WVG) | 13cv0350 DMS (WVG) |
| 12cv1633 DMS (WVG) | 13cv0352 DMS (WVG) |
| 12cv1634 DMS (WVG) | 13cv0353 DMS (WVG) |
| 12cv1636 DMS (WVG) | 13cv1072 DMS (WVG) |
| 12cv1640 DMS (WVG) | 13cv1520 DMS (WVG) |
| 12cv1642 DMS (WVG) | 13cv1525 DMS (WVG) |
| 12cv2350 DMS (WVG) | 13cv1840 DMS (WVG) |

**PLAINTIFF AMERANTH, INC.'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEFS RE JOINT MOTION RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS [DKT. NO. 455] AND MOTION TO COMPEL FURTHER RESPONSES TO SOURCE CODE ORGANIZATION INTERROGATORIES [DKT. NO. 450]**

Complaint Filed: August 15, 2011

---

**AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES      11cv1810 DMS WVG**

### A. The Complex and Non-Public Nature of Defendant's Accused Software Systems Requires a Customized Application of the Patent Local Rules in Order to Ensure a Fair Adjudication of the Substantive Issues.

The primary issue presented by Dkt. No. 455 is the tension between: (a) the non-public nature of the Defendants' proprietary online and mobile software systems and products, which prevents Ameranth from acquiring the systems for analysis without discovery and therefore impedes a "reverse engineering" analysis of such systems; and (b) Judge Stormes' July 26, 2013 Order [Dkt. No. 432], articulating a "reverse engineering or its equivalent" standard for infringement contention specificity regardless of whether or not a defendant had produced its source code and confidential technical documents for such analysis.

The Defendants' supplemental briefs regarding Dkt. No. 455 highlight the contrasting views of the parties and the importance of these issues in connection with the overall management of these consolidated cases. As the Court made clear during the September 27, 2013 telephonic status conference, and in its subsequent Order Following Status Conference [Dkt. No. 491], it has a number of tools at its disposal to control and manage the case, and to modify the standard application of the Patent Local Rules and the normal sequence of case management events, in order to accommodate the specific needs of a particular lawsuit. These include, among other things, the schedule for discovery and the sequencing of and standards for infringement contentions that are the subject of Dkt. No. 455, in light of the different stages of case maturity with respect to the "previously added" and "newly-added" defendants. Ameranth is not seeking any unfair advantage, but merely an equitable balancing of the parties' interests to ensure a fair result on the merits in light of the complexity of these consolidated cases and the non-public nature of the software systems accused of infringement in this matter.

1

**AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES       11cv1810 DMS WVG**

Ameranth has already prepared and served (at significant effort and expense) sets of lengthy infringement contentions upon all of Defendants to the Consolidated Cases *except* for the four "newly added" Defendants—Starbucks, Eventbrite, Ticketfly and Ticketbiscuit. One of the complexities of these cases arises from the fact that the Defendants' accused instrumentalities are non-publicly accessible software systems and products. Thus, the vast majority of the evidence providing proof of infringement is under the Defendants' exclusive control, and infringement contentions prepared prior to discovery and PLR 3.4(a) disclosures, and based only upon publicly available information, are of a necessarily limited level of specificity.

What the newly added Defendants are attempting to do is to hold Ameranth to Judge Stormes' "reverse engineering" standard of specificity (imported from Northern District of California cases concerning publicly available products), without allowing Ameranth first to have *any* access-- either through discovery or through production of source code and technical materials under the Patent Local Rules—to Defendants' proprietary information and materials necessary to meet such a standard[1]. As Ameranth explained in detail in Dkt. No. 455, one of those elements must change. Either the Court should articulate a lower standard of specificity for infringement contentions served without the benefit of access to the Defendants' current source code, technical documents and PLR 3.4(a) materials,

---

[1] With respect to the other Defendants, Ameranth had outstanding discovery requests pending for technical materials (including detailed requests for the Defendants' Google Analytics reports of their web and mobile activities), and either had begun or was scheduled to shortly begin receiving the Defendants' PLR 3.4(a) productions and source code, when discovery in the case was stayed. Such information is critical to creation of infringement contentions adhering to a "reverse engineering or its equivalent" standard as pronounced by Judge Stormes.

2
**AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES          11cv1810 DMS WVG**

or Ameranth should be given access to such materials so that it can complete up to date infringement contentions conforming to the higher standard[2].

      Ameranth pointed out in Dkt. No. 455 the inefficiency inherent in requiring preparation and service of multiple sets of infringement contentions—a set served before Defendants' PLR 3.4 productions of source code and technical materials and another, more specific, set served after such productions. As Ameranth explained in Dkt. No. 455, one way to address this inefficiency would be to allow Ameranth discovery and access to the Defendants' current source code and technical materials prior to the service of any more sets of infringement contentions. Notably, the Patent Local Rules do not prohibit a plaintiff from engaging in discovery about an accused product prior to the date on which the defendant must serve its Patent Local Rule 3.4(a) materials. See PLR 2.5. Furthermore, a defendant is not permitted to withhold discovery simply because it is not satisfied with the sufficiency of a plaintiff's infringement contentions. In fact, in its Order Following Second CMC (Dkt. No. 345, ¶4), the Court allowed Ameranth to proceed with certain non-source code discovery about the Defendants' accused systems *prior* to the date on which infringement contentions were due for all Defendants (although most of the Defendants frustrated this structure by engaging in "rolling productions" of responsive materials by which relevant technical documents were withheld until after infringement contentions were served, and many of which still have not been produced). The Court's

---

[2] In a recently issued decision, the Federal Circuit confirmed that a patent infringement plaintiff was entitled to access to a defendant's source code for infringement analysis before any substantive determination on the merits of the infringement claims should be made. See Baron Services Inc. v. Media Weather Innovations LLC, 717 F.3d 907, 912-13 (Fed. Cir. 2013). As the Federal Circuit noted, the plaintiff "only has to show that the source code is relevant and likely to lead to admissible evidence" to be entitled to obtain it in discovery. Id. at n. 9. None of the Defendants seriously dispute that the source code and technical documentation for their accused system is relevant to Ameranth's claims.

**AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES          11cv1810 DMS WVG**

1  recently issued stay of all non-claim construction discovery currently halts
2  Ameranth's ability to enforce compliance with its previous and outstanding
3  discovery requests to Defendants.
4        The newly added defendants upon which no infringement contentions have
5  yet been served (Starbucks, Eventbrite, Ticketfly and Ticketbiscuit) contend that
6  they do not understand which of their products and services are accused of
7  infringing Ameranth's patents well enough to produce relevant technical materials
8  or source code.  Such lamentations ring hollow, however.  Each has a single
9  online/mobile service, and their respective accused systems are described
10 sufficiently in the complaints to put the defendants on notice of what is being
11 accused of infringement.  These defendants are not technology companies with a
12 mass of different software systems and products potentially at issue.  Eventbrite,
13 Ticketfly and Ticketbiscuit have online and mobile event ticketing systems (see,
14 e.g., https://www.eventbrite.com/features/;
15 http://www.eventbrite.com/eventbriteapp/; http://start.ticketfly.com/platform/how-
16 it-works/; http://start.ticketfly.com/platform/sell-tickets-everywhere/;
17 http://www.ticketbiscuit.com/ticketing-system/sell-tickets-online.aspx;
18 https://www.ticketbiscuit.com/ticketing-system/mobile-ticketing.aspx).  Starbucks
19 has an online and mobile menu generation and mobile payment system (see, e.g..,
20 http://www.starbucks.com/coffeehouse/mobile-apps/mystarbucks;
21 http://www.starbucksstore.com/#).  There is not any legitimate mystery or
22 confusion about the identity of the systems Ameranth accuses of infringement.
23       In its separate supplemental statement, defendant Apple (on which
24 preliminary infringement contentions identifying the accused Apple systems and
25 products have been served) mischaracterizes the negotiations that Apple and
26 Ameranth were engaged in regarding the deficiencies of Apple's discovery
27 productions to Ameranth and the relationship of such discovery to any amended

4

28 **AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES      11cv1810 DMS WVG**

1  infringement contentions.  Dkt. No. 35 from Case No. 12-cv-02350 demonstrates
2  that Ameranth's preparation and service of amended infringement contentions
3  upon Apple was *linked to* Apple's provision of sufficient discovery responses and
4  production of documents (Apple had, prior to the stay, repeatedly promised that it
5  would be making productions of its confidential and non-public documents in
6  response to Ameranth's document requests).
7       Now that the Court has stayed non-claim construction discovery for the
8  time being, the tension between the non-publicly available nature of the
9  Defendants' accused software systems, and the appropriate level of infringement
10 contention specificity for such products, is even more pronounced.  In this regard,
11 Ameranth notes that Judge Sammartino, in her Orders denying GrubHub's and
12 Papa John's motions for summary judgment based on challenges to Ameranth's
13 infringement contentions [Dkt. Nos. 55, 57], explained that infringement
14 contentions "must contain sufficient specificity to provide defendants with notice
15 of infringement beyond that which is provided by the mere language of the patents
16 themselves, but need not be so detailed as to transform the PICs into a forum for
17 litigation of the substantive issues." Dkt. No. 55, p. 10 (citations omitted).
18 Applying this standard, the Court determined that Ameranth's "Amended PICs set
19 forth with sufficient specificity" each of the elements challenged by the
20 defendants.  Id. at pp. 12-15.  This Court, in its August 28, 2013 Order denying
21 Apple's Rule 12(c) motion for judgment on the pleadings in the e.Digital v. Apple
22 case, 13-cv-0785 [Dkt. No. 47], espouses a similar standard for infringement
23 contention sufficiency prior to the completion of discovery and claim
24 construction—the infringement contentions and the complaint must provide the
25 defendant with "fair notice of the claim." Id. at p. 4.
26      Consequently, nothing in the Defendants' supplemental briefing changes
27 the fact that, while non-claim construction discovery is stayed, and Ameranth is

5

28 **AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES      11cv1810 DMS WVG**

therefore not able to obtain access to the Defendants' source code and confidential technical materials, the Court should articulate a different standard of infringement contention specificity than the one pronounced by Judge Stormes and more similar to that utilized previously by Judge Sammartino in this case and recently by this Court in its <u>e.Digital</u> order.

Furthermore, in light of the different levels of case development between the parties that were previously joined to the consolidated cases (that have produced some materials concerning their accused systems and products), and the four recently added defendants (as to which no discovery has been conducted), Ameranth requests the Court to consider a partial exception to its stay of all non-claim construction discovery. Specifically, Ameranth suggests that the Court consider permitting Ameranth to serve the recently added defendants[3] with the same written discovery requests previously propounded to the other defendants (pursuant to the parties' Discovery Plan, as adopted by the Court, Ameranth attempted to draft and serve discovery requests on a generic "all defendant" basis to the extent possible—<u>see</u> Dkt. No. 334 at p. 8, ¶ IV.h.(1)). Permitting such discovery would help bring the recently-added defendants into greater alignment with the other Defendants during the stay period and enable Ameranth to describe the recently-added defendants' infringement with reference to their own internal documents and materials. If the recently-added defendants are placed at the end of the industry group timing sequence for service of any additional infringement contentions, as Ameranth has previously suggested, there should be sufficient time for completion of any such "catch-up" discovery with respect to the newly-added parties.

---

[3] While Ameranth has served Apple with discovery requests, Apple largely has failed to produce non-public information in response to such discovery.

6

**AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES    11cv1810 DMS WVG**

**B.  The Fulbright Defendants' Supplemental Brief Concerning Ameranth's Joint Discovery Motion Regarding QuikOrder's Responses to the Source Code Organization Interrogatories Should be Stricken.**

Under the pretext of filing a supplemental brief pursuant to paragraph 4 of the Order Following Status Conference [Dkt. No. 491], the Fulbright Defendants, which were already parties to the Consolidated Cases, filed what is essentially an untimely *amicus* brief concerning Dkt. No. 450, a Joint Discovery Motion previously filed by Ameranth and QuikOrder regarding QuikOrder's deficient responses to Ameranth's source code organization interrogatories.  See Dkt. No. 501.  The supplemental brief should be stricken.

The Court's Order permitted supplemental briefing only by Defendants "that have not yet had an opportunity to be heard" on the issues regarding timing and content of infringement contentions and source code discovery.  The Fulbright Defendants do not fall into that category.  They were parties to the Consolidated Cases and members of the joint defense group when both Dkt. Nos. 450 and 455 were filed, they directly participated in the briefing for Dkt. No. 455, and they could have participated in the briefing of Dkt. No. 450 or filed joinders to the motion at the time of filing.  They did not, and should not be allowed to do so now, well after the fact.

Even if the Fulbright Defendants' supplemental brief is considered, it does not change the proper result; QuikOrder should be required to provide narrative responses to Ameranth's interrogatories about the organization of its source code files, and should *not* be entitled to invoke Fed.R.Civ.Proc. 33(d) as it attempts to do.  Patent Local Rule 3.4(a) already requires the Defendants to produce the source code corresponding to the aspects and elements of their systems and products accused of infringement.  The interrogatories seek organizational

7

**AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES        11cv1810 DMS WVG**

information about the source code necessary to permit Ameranth to efficiently navigate, understand and analyze the Defendants' own code and software system structure.  This is permissible discovery, and is not substantially different than deposing Defendants' programmers or Rule 30(b)(6) representatives and asking questions about their systems and source code structure.

Furthermore, the interrogatories do <u>not</u> ask a defendant to "match its source code to [the plaintiff's infringement] contentions," as was the case in the <u>Apple v. Samsung</u>, 2013 WL 1563253 (N.D. Cal. 2013), decision [ironically] cited by the Defendants.  Rather, Ameranth's interrogatories ask for the name, purpose, and location of source code projects/solutions in the Defendants' systems that correspond to fundamental system functions, such as "web services; web pages; application programming interfaces; menu creation; data synchronization; integration with third-party applications; communication services; business layers; application services; data services; databases; and clients."  <u>See</u> Dkt. No. 450-3 (Cardinal Decl.), ¶ 5.  <u>See also</u> <u>Laserdynamics, Inc. v. Asus Computer Int'l.</u>, 2009 WL 153161 at *2-3 (E.D. Tex. 2009)(plaintiff required to respond to interrogatories about its own source code functionality).  Ameranth is seeking information about system terms *as understood by the Defendants themselves and used in the ordinary course of business*—it is not requesting "mapping" of code to claim language in the patents to be construed by the Court[4].  Defendants cannot properly rely on blanket assertions of Rule 33(d) to respond to these inquiries.

In fact, the <u>Apple v. Samsung</u> order relied upon by Defendants actually *supports* Ameranth's entitlement to the information sought by Ameranth's source

---

[4] The <u>Apple v. Samsung</u> court noted that Apple could have permissibly asked for "navigational tools" or to "depose a 30(b)(6) witness familiar with the organization of Samsung's code." <u>Id</u>. at *2.  Ameranth's interrogatories regarding the Defendants' source code organization permissibly seek such discoverable organizational information and a navigational "road map" to the source code.

8

**AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES        11cv1810 DMS WVG**

code interrogatories. In that matter, Apple had produced source "code relating to synchronization" with "a database" by the accused Apple product. Id. at *4. Samsung sought information correlating the names of synchronization source code files produced by Apple to the source code files for different versions of the accused product—not dissimilar to what Ameranth is requesting in the interrogatories here at issue. The District Court concluded: "Samsung may make an interrogatory request of Apple to provide correlations between the source code and the iSync versions …." Id. This is similar to what Ameranth's interrogatories seek—the names, purposes and file locations of the Defendants' source code projects corresponding to their own system functions.

Moreover, even if some degree of burden is involved with compiling narrative responses to such requests from the documentation that Defendants would otherwise merely provide under Rule 33(d), the Defendants have failed to demonstrate that the burden upon Ameranth—which is not familiar with Defendants' code and system structure--of deriving the responsive information from the documents is not substantially greater than the burden on Defendants' own system programmers who work with the software on a daily basis. See Fed.R.Civ. Proc. 33(d). Because the burden of deriving the requested information is clearly heavier upon Ameranth than upon the Defendants themselves, Rule 33(d) is not properly invoked here. See Bigband Networks, Inc. Imagine Communications, Inc., 2010 WL 2898288 at *2 (D. Del. 2010)(rejecting defendants attempt to invoke Rule 33(d) in response to interrogatory seeking identification of software component and modules because "the burden of providing greater specificity is not substantially the same between the parties because Imagine has extensive knowledge of its own source code …"). See also Personal Audio, LLC v. Apple, Inc., 2010 WL 9499679 at *3 (E.D. Tex. 2010).

9

**AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND MOTION TO COMPEL FURTHER RESPONSES     11cv1810 DMS WVG**

## CONCLUSION

Ameranth respectfully requests the Court to examine and balance all of the considerations discussed above in connection with its determination of Dkt. Nos. 455 and 450 and in its resulting Order setting the schedule for any further infringement contentions and clarifying the standards and appropriate level of specificity for such contentions based on the amount evidence made available to Ameranth. To the extent that the Court does set a schedule for service of further infringement contentions, Ameranth requests that the schedule be sequenced by industry groups, consistent with prior case management orders issued in this matter[5].

Respectfully submitted,

Dated: September 27, 2013         CALDARELLI HEJMANOWSKI & PAGE LLP

By: /s/ William J. Caldarelli
        William J. Caldarelli

FABIANO LAW FIRM, P.C.
Michael D. Fabiano

OSBORNE LAW LLC
John W. Osborne

WATTS LAW OFFICE
Ethan M. Watts

Attorneys for Plaintiff Ameranth, Inc.

---

[5] Finally, while beyond the precise scope of this motion, Ameranth is cognizant of the fact that Defendants have indicated that they shortly intend to bring a motion to stay the Consolidated Cases in connection with petitions for covered business method patent review they plan to file with the USPTO. Obviously the issuance of such a stay would impact the timing of service of any further infringement contentions.

AMERANTH'S RESPONSE TO DEFS' SUPP BRIEFS RE JT MTN RE
SERVICE OF AMENDED INFRINGEMENT CONTENTIONS AND
MOTION TO COMPEL FURTHER RESPONSES         11cv1810 DMS WVG