UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: AMERANTH CASES | Lead Case No.: 11-CV-1810-DMS(WVG)<br><br>**ORDER ON DISCOVERY DISPUTES (STARBUCKS MOBILE PAYMENT)**<br><br>**(Parties: Ameranth and Starbucks)**<br><br>**[Doc. Nos. 1206, 1207, 1208 & 1209.]** |

Ameranth and Defendant Starbucks Corporation disagree about whether the scope of permissible discovery in this case covers the "Mobile Payment" feature of Starbucks's mobile application. They do not dispute that the app's "Mobile Order & Pay" feature is a covered accused system, and discovery has proceeded on this feature to this point. The Court finds this matter suitable for decision on the papers submitted, S.D. Cal. Civ. L. R. 7.1(d)(1), and finds as a threshold matter that the dispute over written discovery is untimely. The Court finds the dispute over Starbucks's Rule 30(b)(6) witnesses' inability to answer questions about Mobile Payment is timely, but finds Mobile Payment is outside the scope of Ameranth's definition of "Accused System" and claims chart.

/ / /

/ / /

## A. Brief Background

Starbucks's mobile application presently contains two relevant features—Mobile Payment and Mobile Order & Pay. Starbucks released Mobile Payment in January 2011. The app originally contained only Mobile Payment, which permitted customers to pay for in-store purchases made physically at each coffee house.

Starbucks later introduced Mobile Order & Pay in September 2015. This added feature permits customers to view food and drink menus, place mobile orders, and pay for orders from remote locations before arriving at the store. Customers using Mobile Order & Pay need not pay for purchases at the cash register, as payment has been made before their arrival. Starbucks's app retained Mobile Payment for customers who wished to place in-person orders the old-fashioned way and pay for purchases at the cash register.

Starbucks contends Mobile Payment is a separate system that is not covered by Ameranth's infringement contentions. Accordingly, Starbucks has produced discovery only for Mobile Order & Pay and contends discovery throughout this case has focused on Mobile Order & Pay. Moreover, at the depositions of two Starbucks Rule 30(b)(6) witnesses, the witnesses were not familiar with or able to discuss Mobile Payment, which they claimed was a different system they had not worked on. Ameranth contends Mobile Payment is simply an earlier version of Mobile Order & Pay and contends its infringement contentions properly accuse Mobile Payment—specifically the portion of its claims chart related to claim 13 of the '077 patent.

## B. The Document Production Dispute is Untimely

As an initial matter, Starbucks contends the written discovery dispute is untimely in violation of this Court's requirement that discovery disputes be presented to the Court within 30 days of their arising. Starbucks is correct.

### 1.   Dispute Timeline

For purposes of this Order, the Court credits as true Ameranth's recitation of chronological facts. (*See* Doc. No. 1029 at 5-6.)[1] On March 9, 2018, Starbucks produced 3,604 pages of documents in response to Ameranth's requests for production of documents, which were propounded on February 8, 2015. (*Id.* at 5.) Then on March 15, Starbucks served responses and objections. (*Id.*) Starbucks produced an additional 3,356 pages of documents on May 7 and 31, 2018. (*Id.* at 6.) According to Ameranth, "[a]fter reviewing the May 31, 2018 production, it became clear that Starbucks had produced detailed financial data concerning orders made and paid for via [Mobile Order & Pay] but had not produced financial data concerning pre-[Mobile Order & Pay] mobile payments or non-[Mobile Order & Pay] payments." (*Id.*) Ameranth then "promptly raised the issue with Starbucks' counsel one week later on June 7, 2018," and Starbucks "responded on June 14, 2018 declining to produce the requested documents." (*Id.*)

Ameranth contends that after "receiving Starbucks' response on June 14, 2018 it became apparent that Starbucks was restricting its document production to [Mobile Order & Pay]. This was not previously apparent to Ameranth in light of the rolling production of documents that Starbucks had been making since March 9, 2018 through May 31, 2018." (*Id.*) Starbucks thereafter produced an additional 1,509 pages of documents on June 14, 19, and 20. (*Id.*)

The parties called this Court's chambers regarding this dispute for the first time on July 11, 2018.

### 2.   Discussion

This Court's Civil Chambers Rules make clear that for written discovery, "the event giving rise to the discovery dispute is the date when the response was actually served or when legally due to be served." Civil Chambers R. § IV(f).  Here, Ameranth propounded

---

[1] Page references to documents on the docket are to the electronic page numbers created by the CM/ECF system.

requests for production of documents on February 8, 2018. Starbucks's responses or objections were due no later than March 9, 2018, Fed. R. Civ. P. 34(b)(2)(A), which is the day Starbucks began to produce some responsive documents. Accordingly, the 30-day deadline to present any disputes expired on April 9, 2018. However, the parties did not jointly contact the Court to present this dispute until July 11, 2018—more than two full months after the deadline passed. As a result, the instant dispute is untimely and will not be considered.

The dispute did not arise on the date of the May 31, 2018 document production because that production was simply a delayed fulfillment of Starbucks's original obligation to respond to Ameranth's discovery requests on March 9, 2018—the original day that responses, objections, and documents were due. Given that Starbucks had not fully complied with its discovery obligations on Mach 9, the dispute arose at that moment. And certainly the dispute crystallized on March 15, 2018, when Starbucks served its objections. It is plain from the Court's Chambers Rules and should have been clear to Ameranth given its repeated interactions with the Court that it needed to notify the Court on or before April 9—but definitely no later than April 15—in order to preserve the dispute.[2] At the very least, the parties should have sought an extension of the deadline.

The Court's dispute deadline also does not begin to run on the date documents are produced. Were the Court to allow this, it would both create unnecessary complexities and render the Court's 30-day deadline meaningless. Indeed, the ongoing, rolling production of documents that occurred here elucidates that point. Starbucks produced documents on

---

[2] In any event, this dispute would have been untimely even if the Court gave Ameranth the benefit of the doubt and calculated the deadline from the May 31, 2018 substantive document production date when "it became clear that Starbucks" had not produced any pre-Mobile Order & Pay financial data. (*See* Doc. No. 1209 at 4.) Based on that date, the deadline was July 2, 2018 (given that 30 days fell on a Saturday), but the parties did not jointly call chambers until July 11, 2018 and did not seek extension of the hypothetical July 2 deadline.

*five* separate occasions after its initial March 9 response.  So when would have the 30 day clock started to run if not on March 9?  Would it have run from the date of the first production of documents?  From the last production?  Would there have been a separate 30-day clock for each of the six document productions?  The Court's clear rule in its Chambers Rules dispenses with these ambiguities and complexities.  The deadline begins to run on the day the response is served or legally due.  Here Starbucks's (albeit deficient) responses were first served and due on March 9 and then objections followed on March 15.  Tying the deadline to dates of rolling document productions would effectively extend the deadline well beyond what the Court's rule permits—a crafty litigant could continue to produce documents and reset the 30-day deadline, rendering it no deadline at all and thus meaningless.

   Finally, Ameranth appears to believe that the 30-day deadline did not begin to run until the parties' June 14, 2018 meet-and-confer, when it apparently became clear that Starbucks was not going to produce Mobile Payment-related discovery.  As an initial matter, that fact should have been clear to Ameranth as of May 31, 2018 after Ameranth reviewed that document production and found Starbucks "had not produced financial data concerning pre-[Mobile Order & Pay] mobile payments or non-[Mobile Order & Pay] payments."[3]  (Doc. No. 1209 at 4.)  In any event, meet-and-confer dates do not trigger the

---

[3] This explanation seems to lack full credibility given Starbucks's representation that it has never produced discovery related to Mobile Payment nor had discussions about that feature since Ameranth served its third set of supplemental infringement contentions on August 7, 2017. (*See* McKeever Decl., Doc. No. 1206.)  Because Starbucks had not produced Mobile Payment documents on March 9 and did not produce them on May 31, Ameranth knew before the meet-and-confer that it lacked older documents and information that could relate to Mobile Payment.  Indeed, Starbucks's objections to Ameranth's RFPs' definition of "Starbucks Accused System" on March 15, 2018 put Ameranth on notice that the responses were limited only to the Mobile Order & Pay feature. (Doc. No. 1206-7 ("Starbucks, to the best it can understand Ameranth's Infringement Contentions, interprets the Mobile Order & Pay ("MOP") Program as the Accused System and applies that understanding to each response.").)  Ameranth was thus expressly on notice as of March 15 that Starbucks's

running of the 30-day deadline.  Were this the case, a party could wait until the 29th day after a deficient discovery response to meet-and-confer and thereby extend the dispute another 30 days.  The Court's Chambers Rules clearly do not provide for—nor would the Court endorse—such a result.

The parties in this case are fully aware of this Court's discovery dispute process, and Ameranth in particular has been a participant in multiple discovery conferences with other defendants in this case.  As a result, Ameranth is fully knowledgeable of the Court's adherence to the 30-day deadline as well as the process for extending it.  Disputes have been frequent in this case, and the Court has readily granted extension requests in the past.  (*See, e.g.*, Doc. Nos. 930, 932, 945, 948, 968, 998, 1010, 1013 & 1023.)  Indeed, Ameranth and Starbucks have followed proper procedure and were granted an extension to bring disputes related to analytics discovery to the Court's attention before May 11, 2018. (Doc. Nos. 1020, 1023.)  Ameranth easily could have timely moved—as it has on multiple other occasions—to extend the dispute deadline related to Starbucks's deficient responses.  For whatever reason, it did not do so and failed to comply with procedures that should be crystal clear to Ameranth by now.  Accordingly, this dispute will not be considered and the status quo related to Starbucks's document production—or lack thereof—for the Mobile Payment feature will be maintained.

---

responses did not include Mobile Payment.  However, it did nothing to timely disabuse Starbucks of its "incorrect" interpretation or seek timely Court intervention.  Finally, Ameranth's submission of press releases for the two different systems demonstrates it was aware there were two systems (both systems currently operate on Starbucks's app and one did not replace the other), with different functions (*e.g.*, Mobile Payment had no ordering or menu capabilities), and with different names. (*See* Exs. A & B to West Decl., Doc. No. 1209-3 & 1209-4.)  Ameranth should have been aware long before the instant dispute that none of the discovery and discussions with Starbucks encompassed the Mobile Payment-relevant time period or mention Mobile Payment.

6

11-CV-1810-DMS(WVG)

### B. Ameranth's Infringement Contentions Do Not Accuse Mobile Payment

The foregoing notwithstanding, there remains a dispute over Starbucks's Rule 30(b)(6) witnesses not being able to answer questions about Mobile Payment. During at least two depositions on June 28 and 29 of this year, two Starbucks witnesses were not able to answer questions, contending that Mobile Payment was a separate system with which they were not familiar. They were familiar only with Mobile Order & Pay. Ameranth requests that Starbucks make available Rule 30(b)(6) witnesses who can testify about pre- and non-Mobile Order & Pay functionalities. This dispute is timely given that the parties called chambers on July 11.

Ameranth contends its amended infringement contentions for the '077 patent dated August 7, 2017 properly accuse Mobile Payment because the "Accused System" is defined broadly to include "all previous 'versions' (from May 27, 2012 to present, and regardless of whether alleged by defendant to be revisions, different version, or different systems . . . ." However, the critical word that repeatedly narrows Ameranth's definition is "ordering." This core word repeatedly appears in connection with Ameranth's definition of the "Accused System," which Ameranth identifies in the alternative as the "Starbucks *Ordering* System." (Doc. No. 1209-5 at 4 (emphasis added); *see also* Doc. No. 1209-5 at 10 (claims chart repeating definitions).)[4] The key word, "ordering," modifies and

---

[4] Ameranth's entire claims chart is replete with references to the "ordering" system, and the specific section for claim 13 repeatedly references "ordering." Moreover, as circumstantial evidence for claim 13's "master database" claim element, Ameranth cites the "Starbucks Personalization Engine, which among other things allows consumers to *order* Starbucks products . . . ." (Doc. No. 1209-5 at 131 (Claim 13(a) of claims chart; emphasis added).) Ameranth elsewhere claims that "usage and testing of the Accused System's mobile apps and website evidences the master database since a master database is necessary to synchronize information (such as *menu information*) and functionality (such as *ordering functionality*) . . . ." (*Id.* at 132 (emphasis added).) These references clearly do not accuse Mobile Payment, which has no menu information or ordering functionality for a master database to synchronize. And more still: "The Accused System enables consumers to *order via wireless handheld computing devices* on which Starbucks causes

constrains the scope of "system/product/service." As a result, when Ameranth attempted to broadly define the Accused System to include all revisions, versions, and different systems, it broadened the definition only in relation to "the Starbucks *ordering* system/product/service . . . ." (*id.* (emphasis added)), not Starbucks's separate, stand-alone payment processing system. Mobile Payment has no ordering functionality or capability. Thus even though Mobile Payment predated Mobile Order & Pay, it cannot be said to be a different version or revision of Starbucks's *ordering* system, which was a wholly new function of the mobile app that did not exist until Starbucks introduced Mobile Order & Pay in 2015.[5]

The issue with Ameranth's position is the lack of specificity with respect to identification of Mobile Payments in its infringement contentions. The Patent Local Rules were designed to streamline discovery and "require parties to crystallize their theories early in the case to prevent the shifting sands approach to claim construction." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (internal quotations and citation omitted). Patent Local Rule 3 accordingly requires Ameranth to "be as *specific* as possible" when identifying the accused system and requires its identification by name,

---

hospitality application information to be displayed." (*Id.* at 140 (Claim 13(b); emphasis added).) This certainly does not accuse Mobile Payment, which does not allow consumers to do any such thing. These are just a few examples of the myriad references to ordering and menu display within the claims chart as a whole and in the portion that specifically addresses claim 13.

[5] Nor does Ameranth's reference to prior versions since 2012 save the day. Since "the Starbucks ordering system/product/service"—i.e., Mobile Order & Pay—did not exist in the years between 2012 and 2015, there are no prior versions of this specifically-defined system to which this reference could apply. As discussed, *infra*, Mobile Payment is a payment system, not an ordering system. Thus, Ameranth referencing years prior to 2015 does not sweep separate systems that do not fit Ameranth's own definition into this case when Ameranth failed to name those systems in accordance with the Patent Local Rules.

if known.[6]  S.D. Cal. Patent L.R. 3(1)(b) (emphasis added).  "The burden is therefore on the plaintiff to make a good faith pre-suit investigation to identify all infringing products and list them as specifically as possible."  *SPH Am., LLC v. Huawei Techs., Co.*, No. 13CV2323-CAB(KSC), 2016 U.S. Dist. LEXIS 119345, at *7 (S.D. Cal. July 5, 2016).  In the end, words have meaning.  That is especially the case in patent litigation where parties spend considerable effort and resources litigating precise meanings of specific words and phrases.  Specificity is paramount and lack thereof may potentially be fatal.  While it may be tempting to broadly define a claim or infringement contention in order to capture as many accused systems as possible, it also poses a risk when specificity is lacking.  Here, Ameranth attempted to broadly define Starbucks's accused system, but failed to follow through or recognize earlier in this litigation that it self-limited the scope of its case against Starbucks to the Mobile Order & Pay system that came into existence in 2015.  Prior to 2015, Starbucks simply had no previous version of any "ordering system/product/service" accused in Ameranth's infringement contentions.  Though Ameranth knew about Mobile Payment, it did not identify it as an accused product, choosing instead to identify only Mobile Oder & Pay.  *See Meidatek, Inc. v. Freescale Semiconductor, Inc.*, No. 11-5341-YGR(JSC), 2013 U.S. Dist. LEXIS 19568, at *3-5, *10-11 (N.D. Cal. Feb. 13, 2013) (denying motion to compel discovery into products that were not specifically identified as accused products under similar local patent rule and when products names were ascertainable through publicly-available sources.).  Permitting discovery into Mobile Payment now would pose precisely the shifting sands approach to claim construction that the Patent Local Rules seek to prevent.

       Finally, Ameranth's inclusion of "different systems" in its definition does not bring Mobile Payment into Ameranth's definition.  Again, "ordering" modifies and constrains

---

[6] Exhibits A and B to Ameranth's counsel's declaration demonstrate Ameranth knew Mobile Payment's name.  *See*, *supra*, n.3.  However, Ameranth identified only Mobile Order & Pay in its infringement contentions.

the scope of "different systems." Thus, while there can be more than one system that comes within this definition, they must as an initial matter be *ordering* systems. A different system that is not an ordering system does not come within Ameranth's definition. Mobile Payment is, to be sure, a different system, but it is purely a *payment* system that lacks any *ordering* functionality. It is in no way an "ordering" system. Thus, Ameranth's definition does not cover Mobile Payment.

The Court finds Mobile Payment falls outside the scope of Ameranth's Accused System definition and accordingly denies Ameranth's request for further discovery or to compel Starbucks to produce for deposition a Rule 30(b)(6) witness who is knowledgeable about Mobile Payment.

IT IS SO ORDERED.

DATED: August 9, 2018

_____
Hon. William V. Gallo
United States Magistrate Judge