UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: AMERANTH PATENT LITIGATION CASES, | Case No.:  11cv1810 DMS (WVG)<br><br>**ORDER GRANTING CLAIM 4/5 DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF UNPATENTABILITY OF CLAIMS 4 AND 5** |

In a December 27, 2021 Order, this Court set a briefing schedule on the viability of Ameranth's claims that certain Defendants were infringing claims 4 and 5 of the '077 Patent. Defendants against whom such claims are pending ("the Claim 4/5 Defendants") filed a motion for summary judgment of unpatentability of claims 4 and 5, Ameranth filed an opposition, and the Claim 4/5 Defendants filed a reply. Ameranth thereafter filed a Supplemental Notice of Lodgment of excerpts of the Markman hearing transcript, to which the Claim 4/5 Defendants filed a response, and to which Ameranth then filed an Objection. The Court has reviewed all of the briefing, and now grants the Claim 4/5 Defendants' motion for the reasons set out below.

1

In *Ameranth, Inc. v. Domino's Pizza, LLC*, 782 Fed. App'x 780 (Fed. Cir. Nov. 1, 2019), the Federal Circuit affirmed this Court's decision that claim 1 of the '077 Patent was patent ineligible. Applying the two-step approach set out in *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), the court found at step one that claim 1 was directed to an abstract idea, namely, "the concept of synchronous communications and automatic formatting for different handheld devices[.]" *Ameranth*, 792 F. App'x 780 at 787. At step two, the court found claim 1 failed to disclose an inventive concept.

For context, claim 1 recites the following:

An information management and real time synchronous communications system for configuring and transmitting hospitality menus comprising:

    a.    a central processing unit,

    b.    a data storage device connected to said central processing unit,

    c.    an operating system including a first graphical user interface,

    d.    a master menu including at least menu categories, menu items and modifiers, wherein said master menu is capable of being stored on said data storage device pursuant to a master menu file structure and said master menu is capable of being configured for display to facilitate user operations in at least one window of said first graphical user interface as cascaded sets of linked graphical user interface screens, and

    e.    menu configuration software enabled to generate a programmed handheld menu configuration from said master menu for wireless transmission to and programmed for display on a wireless handheld computing device, said programmed handheld menu configuration comprising at least menu categories, menu items and modifiers and wherein the menu configuration software is enabled to generate said programmed handheld menu configuration by utilizing parameters from the master menu file structure defining at least the menu categories, menu items and modifiers of the master menu such that at least the menu

categories, menu items and modifiers comprising the programmed handheld menu configuration are synchronized in real time with analogous information comprising the master menu,

wherein the menu configuration software is further enabled to generate the programmed handheld menu configuration in conformity with a customized display layout unique to the wireless handheld computing device to facilitate user operations with and display of the programmed handheld menu configuration on the display screen of a handheld graphical user interface integral with the wireless handheld computing device, wherein said customized display layout is compatible with the displayable size of the handheld graphical user interface wherein the programmed handheld menu configuration is configured by the menu configuration software for display as programmed cascaded sets of linked graphical user interface screens appropriate for the customized display layout of the wireless handheld computing device, wherein said programmed cascaded linked graphical user interface screens for display of the handheld menu configuration are configured differently from the cascaded sets of linked graphical user interface screens for display of the master menu on said first graphical user interface, and

wherein the system is enabled for real time synchronous communications to and from the wireless handheld computing device utilizing the programmed handheld menu configuration including the capability of real time synchronous transmission of the programmed handheld menu configuration to the wireless handheld computing device and real time synchronous transmissions of selections made from the handheld menu configuration on the wireless handheld computing device, and

wherein the system is further enabled to automatically format the programmed handheld menu configuration for display as cascaded sets of linked graphical user interface screens appropriate for a customized display layout of at least two different wireless handheld computing device display sizes in the same connected system, and

wherein a cascaded set of linked graphical user interface screens for a wireless handheld computing device in the system includes a different number of user

> interface screens from at least one other wireless handheld computing device in the system.

'077 Patent at 15:56-16:61.  The claims at issue here, claims 4 and 5, depend from claim 1, and read as follows:

> 4.  The information management and real time synchronous communication system in accordance with claim 1, wherein the said Hospitality Applications include at least reservation applications.
>
> 5.  The information management and real time synchronous communication system in accordance with claim 1, wherein the said Hospitality Applications include at least a Ticketing applications.

*Id.* at 17:8-15.

In the present motion, the Claim 4/5 Defendants move for summary judgment that claims 4 and 5 are patent ineligible for the same reasons as claim 1, namely that they are directed to the same abstract idea as claim 1, and also fail to disclose an inventive concept. Ameranth does not appear to dispute that claims 4 and 5 are directed to the same abstract idea as claim 1, and that the first step of the *Alice* test is therefore satisfied as to claims 4 and 5.

The dispute here centers on *Alice* step two, and whether claims 4 and 5 disclose an inventive concept that renders the claims patent eligible.  The Claim 4/5 Defendants argue claims 4 and 5 are field of use restrictions, which do not confer patentability.  Ameranth disagrees, and asserts the limitations contained in claims 4 and 5 are substantive, and therefore supply an inventive concept that renders the claims patent eligible.

The Court agrees with the Claim 4/5 Defendants.  According to the plain language of the claims, the only additional limitation set out in claim 4 is that the "Hospitality Applications include at least reservation applications[,]" and the only additional limitation set out in claim 5 is that the "Hospitality Applications include at least a Ticketing applications."  By their plain terms, these claims simply restrict the invention described in

claim 1 to the fields of reservations and ticketing, respectively. As such, they do not disclose an inventive concept, and thus do not make the claims patent eligible. *See Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) (quoting *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981)) (reiterating "the proposition that the prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity.'"); *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) ("The Supreme Court and this court have repeatedly made clear that merely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract."); *Intell. Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("An abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment ….")

Ameranth raises a number of arguments in an effort to avoid this conclusion, but none is persuasive. First, Ameranth argues that reservation and ticketing applications are different from the food ordering applications the Court considered when analyzing claim 1. Specifically, Ameranth asserts that unlike food ordering applications in which "theoretically every customer can place exactly the same food order[,]" every customer in a reservations or ticketing application must place a unique order for a particular table, room, or seat. Ameranth contends this distinction "presents particular technological 'equilibrium' challenges when the reservation and ticket purchases can be processed remotely by customers using different handheld devices." (Opp'n to Mot. at 4-5.) However, Ameranth's proposed distinction between food ordering and reservations and ticketing is one without a difference. Clearly, each meal placed through a food ordering application is unique in the same way that each table, room, or seat is unique. No customer is receiving the same food, or reserving the same table, room, or seat. Ameranth's proposed

distinction is illusory, and thus there is no additional problem or "challenge" for claims 4 and 5 to solve.

Second, Ameranth suggests the reservation and ticketing limitations in claims 4 and 5 are separate software limitations, and therefore substantive limitations as opposed to field of use restrictions. However, Ameranth fails to cite to any portion of the '077 Patent to support this suggestion. On the contrary, the specification describes reservation and ticketing applications as simply a subspecies of "hospitality applications." '077 Patent at 5:16-19 ("The communication module also provides a single point of entry for all hospitality applications, e.g., reservations, frequent customer ticketing, wait lists, etc. to communicate with one another wirelessly and over the Web.")

Third, Ameranth attempts to paint claims 4 and 5 as disclosing elements not found in claim 1, namely "reflective technology," "equilibrium," and a "single point of entry" system. However, as the Claim 4/5 Defendants point out, Ameranth's arguments ignore the dependent nature of claims 4 and 5, and the axiom "that a dependent claim cannot be broader than the claim from which it depends." *Alcon Research, Ltd. v. Apotex Inc.*, 687 F.3d 1362, 1367 (Fed. Cir. 2012). Ameranth's arguments also ignore Ameranth's previous descriptions of the invention described in the '077 Patent as a unitary concept with application to a wide variety of industries. (*See* Transcript of Markman Hearing at 11-12, ECF No. 906) (counsel stating "although the inventive idea arose first in the context of restaurant menus and food ordering, it has application to a wide variety of hospitality industry uses, including restaurant reservations, event ticketing, hotel reservations, et cetera.") Furthermore, and perhaps most importantly, none of these elements is mentioned in either claim 4 or claim 5, which is contrary to *Alice*'s teaching that "[t]o save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v.*

*Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).[1] Finding these elements absent from claims 4 and 5, there is no inventive concept in the claims sufficient to render them patent eligible at *Alice* step two.

For all of these reasons, the Court finds claims 4 and 5 are patent ineligible. Accordingly, the Claim 4/5 Defendants are entitled to summary judgment that claims 4 and 5 are unpatentable. The parties shall meet and confer on proposed judgments in each individual case, and submit either an agreed-upon proposed judgment or competing proposed judgments on or before **March 25, 2022**.

**IT IS SO ORDERED**.

Dated: March 14, 2022

Hon. Dana M. Sabraw, Chief Judge
United States District Court

---

[1] The opinion of Ameranth's expert, Ricardo Valerdi, suffers from this same flaw, *i.e.*, it is not based on the language of the claims. Dr. Valerdi's opinion therefore fails to create a genuine issue of material fact sufficient to defeat summary judgment at step two of the *Alice* analysis. *Kaavo Inc. v. Amazon.com Inc.*, 323 F.Supp.3d 630, 643-44 (D. Del. 2018) ("Plaintiff's reliance on contrary expert opinion alone is insufficient to create a genuine issue of material fact.")